**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| DOCTOR JOHN'S, INC., an Iowa Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF SIOUX CITY, IOWA, and PAUL ECKERT, in his official capacity as City Manager,<br><br>    Defendants. | No. C 03-4121-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT ON OCTOBER 2003 AND JANUARY 2004 ORDINANCES** |

---

**TABLE OF CONTENTS**

*I.* **INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *1.* *Claims by Doctor John's* . . . . . . . . . . . . . . . . . . . . . 3
      *2.* *The motion for a preliminary injunction* . . . . . . . . . . . . . . . 4
      *3.* *The cross-motions for summary judgment and the motion to strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      *4.* *Subsequent amendments and motions* . . . . . . . . . . . . . . . . . 6
      *5.* *Oral arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      *1.* *The Doctor John's store in Sioux City* . . . . . . . . . . . . . . . 8
      *2.* *Sioux City zoning ordinances and amendments* . . . . . . . . . . 12
         *a.* *Pre-existing ordinances* . . . . . . . . . . . . . . . . . . . 12
         *b.* *The series of amendments* . . . . . . . . . . . . . . . . . . 15
            *i.* *The "Moratorium" Amendments* . . . . . . . . . . 15
            *ii.* *The January 2004 Amendments* . . . . . . . . . . . 16
            *iii.* *The December 2004 Amendments* . . . . . . . . . . 23

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
   A. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . 24
   B. Mootness And Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . 25
      2. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   C. Nature Of The Constitutional Challenges . . . . . . . . . . . . . . . . . 30
   D. The "Combination" Definition Of A "Sex Shop" . . . . . . . . . . . . 31
      1. The provision in question . . . . . . . . . . . . . . . . . . . . 31
      2. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . 32
      3. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         a. Applicable law . . . . . . . . . . . . . . . . . . . . . . . . 34
         b. Application of the law . . . . . . . . . . . . . . . . . . . . 36
            i. Time, place, and manner regulation . . . . . . . . 36
            ii. Content neutrality . . . . . . . . . . . . . . . . . . 36
            iii. Strict scrutiny . . . . . . . . . . . . . . . . . . . . 42
            iv. Intermediate scrutiny . . . . . . . . . . . . . . . . 48
            v. Non-media provisions . . . . . . . . . . . . . . . . 52
   E. The Two "Sex Toys" Definitions Of "Sex Shop" . . . . . . . . . . . . 54
      1. The provisions in question . . . . . . . . . . . . . . . . . . . . 54
      2. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . 54
      3. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
   F. The Motion To Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Several months after this court enjoined enforcement of amendments to city zoning ordinances regulating the location of "adult entertainment businesses" in Sioux City, Iowa—which were passed just in time to bar the plaintiff's new store, a putative "adult entertainment business," from opening—the plaintiff moved for

summary judgment to make the preliminary injunction permanent. The plaintiff contends that nothing has changed and that the court should, therefore, confirm that the amended zoning ordinances violate First Amendment guarantees of free speech, leaving the only issue for trial the amount of damages to the plaintiff for the delay in opening its business caused by the unconstitutional amendments to the pertinent ordinances. In response, the defendant city filed its own motion for summary judgment, asserting that another round of amendments has "mooted" the plaintiff's claims and that, in any event, the plaintiff's sale of "sex toys," for which no First Amendment protection is available, would have brought it within the purview of the first round of amended ordinances and would have constitutionally barred it from opening in its chosen location. The court must decide whether either party is entitled to summary judgment or whether this matter will, instead, proceed to trial on issues pertaining to the first round of ordinance amendments.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

#### 1. Claims by Doctor John's

Plaintiff Doctor John's, Inc. (Doctor John's), a putative "adult entertainment business," filed its original Complaint in this action on December 9, 2003, against the City of Sioux City, Iowa (the City), and Paul Eckert, in his official capacity as Sioux City's City Manager, challenging Sioux City's municipal ordinances imposing a moratorium on new "adult entertainment businesses" enacted in October and amended in November 2003. On January 20, 2004, Doctor John's filed an Amended Complaint, and on February 10, 2004, filed a Second Amended Complaint challenging further amendments to Sioux City's zoning ordinances concerning "adult entertainment businesses," enacted in January 2004. In its Second Amended Complaint, Doctor John's alleged that these ordinances violated

its right to free expression protected by the First Amendment to the United States Constitution and constituted prior restraints on free expression; failed to allow reasonable alternative means of expression; resulted in a taking of its business property without due process of law; infringed First Amendment freedoms in a manner greater than necessary to further any valid interests of the City; lacked adequate procedural safeguards and failed to provide for prompt judicial review; and denied equal protection. The City denied these claims.

### 2. *The motion for a preliminary injunction*

On January 5, 2004, Doctor John's filed a Motion For Preliminary Injunction in which it requested that the court enjoin the City from enforcing the temporary moratorium on adult entertainment businesses enacted in October 2003. However, that moratorium had expired by the time of the evidentiary hearing on the motion for preliminary injunction on February 20, 2004. At the evidentiary hearing, the court allowed Doctor John's to amend orally its Motion For Preliminary Injunction to seek an injunction against enforcement of the amended "adult entertainment business" ordinances enacted at the expiration of the moratorium in January 2004 (the January 2004 Amendments).

In a published ruling, *Doctor John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022 (N.D. Iowa 2004), filed February 26, 2004, the court entered a preliminary injunction enjoining the City from pursuing, instituting, continuing, or completing any and all enforcement actions pursuant to the municipal code employing the definition of "adult entertainment business" in the January 2004 Amendments, until such time as the preliminary injunction was dissolved or vacated, by this court or a reviewing court. The preliminary injunction has remained in effect until this time.

### *3.    The cross-motions for summary judgment and the motion to strike*

Some ten months after the court's preliminary injunction ruling, on December 20, 2004, Doctor John's filed a Motion For Partial Summary Judgment (docket no. 48) asserting that the January 2004 Amendments are facially invalid, because they violate the free expression guarantees of the First Amendment to the United States Constitution. Somewhat more specifically, Doctor John's asserts in its supporting brief that the January 2004 Amendments do not withstand either strict or intermediate scrutiny. Consequently, Doctor John's seeks summary judgment granting permanent injunctive and declaratory relief barring enforcement of the January 2004 Amendments and leaving for trial only the issue of the damages that Doctor John's suffered because the opening of its store in Sioux City, Iowa, was delayed by the unconstitutional ordinances.

On February 22, 2005, the City filed its own Motion For Summary Judgment (docket no. 55) and a combined Brief In Resistance To Plaintiff's Motion For Summary Judgment And In Support Of Defendants' Motion For Summary Judgment (docket no. 56). In its own motion and in resistance to the motion by Doctor John's, the City asserts that challenges to the January 2004 Amendments are "mooted," because further amendments repealing the January 2004 Amendments were filed in December 2004 (the December 2004 Amendments); because Doctor John's would have been a "sex shop" under the "sex toys" definitions in the January 2004 Amendments, which did not implicate First Amendment protections, and consequently, Doctor John's could have been lawfully excluded from its chosen location on that basis; and because, if the challenge to the "combination" provision of the January 2004 Amendments involving "adult media" is not moot, that provision was constitutional under the applicable level of scrutiny for regulation of speech, which the City contends is "intermediate scrutiny," so that Doctor John's could have been lawfully excluded from its chosen location under that provision, as well.

On April 14, 2005, Doctor John's filed a resistance to the City's Motion For Summary Judgment and a Reply in further support of Doctor John's own Motion For Partial Summary Judgment (docket no. 59). On May 31, 2005, the City filed a Reply in support of its own Motion For Summary Judgment (docket no. 66). On June 9, 2005, Doctor John's filed a motion to strike the supplemental appendix filed by the City with its reply (docket no. 67). These summary judgment motions, which pertain to the January 2004 Amendments, as well as Doctor John's motion to strike, are now before the court.

### 4. *Subsequent amendments and motions*

As mentioned above, in December 2004, while the present cross-motions for summary judgment on the January 2004 Amendments were pending, the City enacted additional amendments to its ordinances redefining "adult entertainment businesses" and repealing the January 2004 Amendments. Those amendments are referred to herein, for the sake of convenience, as the December 2004 Amendments. Doctor John's raised challenges to the December 2004 Amendments in its *Third* Amended Complaint (improperly denominated its *Second* Amended Complaint), filed June 20, 2005 (docket no. 70), and in its August 22, 2005, Supplemental Motion For Summary Judgment (docket no. 76). Disposition of the Supplemental Motion For Summary Judgment relating to the December 2004 Amendments has been held in abeyance pending further discovery. *See* Order of September 1, 2005 (docket no. 78). Thus, only the issues pertaining to the January 2004 Amendments and the motion to strike filed by Doctor John's concerning the City's supplemental appendix are now before the court.

### 5. *Oral arguments*

The court was occupied during April, May, and June with the trial of the second of two death-penalty cases on its docket, and has since been occupied with the backlog of criminal cases with speedy trial requirements resulting from the lengthy trials in both of

its death-penalty cases, as well as with preparation of an extensive ruling, filed at the end of July, on the complicated issues in the post-trial motions in the first death-penalty case.[1] Therefore, the court was unable to set oral arguments on the motions presently before the court in this case until September 15, 2005. At those oral arguments, Doctor John's was represented by W. Andrew McCullough of McCullough and Associates, L.L.C., in Midvale, Utah, and Brian B. Vakulskas of Vakulskas Law Firm, P.C., in Sioux City, Iowa. The City of Sioux City and Paul Eckert were represented by Scott D. Bergthold of Chattanooga, Tennessee, and by Sioux City Attorney James L. Abshier and Assistant Sioux City Attorney Connie E. Anstey. The motions presently before the court are now fully submitted.

### B. Factual Background

In support of its motion for summary judgment, Doctor John's initially relied almost entirely on the evidence presented at the preliminary injunction hearing. The City, however, submitted copious materials purportedly demonstrating the reasonableness of its conclusion that "secondary effects" warranted its regulation of "adult entertainment businesses," including the Doctor John's store in Sioux City, Iowa. In reply, Doctor John's submitted new materials in an attempt to rebut the relevance of any such "secondary effects" to its Sioux City store. Finally, the City submitted a supplemental appendix of additional "expert" materials, which Doctor John's has moved to strike. These materials,

---

[1]The death-penalty cases that have required so much of the court's time and attention during the last year, because of pre-trial, trial, and post-trial matters, are *United States v. Honken*, CR 01-3047-MWB (N.D. Iowa), and *United States v. Angela Johnson*, CR 01-3046-MWB (N.D. Iowa). In the course of the litigation of these cases, the court filed twenty-nine published rulings.

taken as a whole, do not significantly change the factual background concerning the attempt by Doctor John's to open a store in Sioux City and the City's response, as set forth in the court's preliminary injunction ruling. Nevertheless, the court will reprise that factual background, amplifying it where appropriate with additional facts drawn from the summary judgment record. The court will not, however, attempt a dissertation of undisputed and disputed facts, but only a statement of sufficient facts to put in context the parties' arguments concerning their cross-motions for summary judgment.

### 1.    *The Doctor John's store in Sioux City*

At some time in the fall of 2003, Doctor John's leased property located at 3507 Singing Hills Boulevard, Sioux City, Iowa, for one of its stores, its first such store in Iowa. After delays caused by City enforcement of its amended zoning ordinances, Doctor John's opened that store in late February or early March 2004, pursuant to the court's preliminary injunction enjoining enforcement of the January 2004 Amendments. The Doctor John's store in Sioux City is in a commercial area across from a Wal-Mart, adjacent to a strip mall, a chiropractor's office, and a nail salon, and near various restaurants and motels, a minor league baseball stadium, a park with little league or softball fields, a bowling alley, and an ice-skating rink. The store is located in an area zoned as General Business-Commercial Planned Development ("BG-C") under the Sioux City Municipal Code. That is, it is in a General Business ("BG") zone, with a Commercial Planned Development Overlay ("-C").

The Doctor John's store in Sioux City sells a variety of merchandise, including primarily lingerie, swim wear, women's shoes, lotions, and oils, as well as games, novelty items, and "marital aids" or "adult toys," including, for example, vibrators, "dildos," "masturbation toys," and blow up dolls (some described as "anatomically correct"). Doctor John's reiterates in the litigation of the summary judgment motions its contention

that its stores, in Sioux City and elsewhere, sell a variety of products designed to appeal to couples who wish to enhance their love lives. Consequently, Doctor John's opines that it is more properly described as a "romance shop" than a "sex shop."

This court observed in its ruling on the motion by Doctor John's for a preliminary injunction that several photographs of the Doctor John's store in Sioux City, which were shown to the court for "illustrative" purposes during the preliminary injunction hearing, revealed a handsome freestanding building with an interior display of swimsuits and lingerie that dominates the first impression of the store. This merchandise is presented very much in the same manner as it would be in most national brand name clothing stores, which have become ubiquitous at malls across urban and suburban America. Thus, the first impression of the store is a far cry from the first image that most people would likely have of an "adult book store" or "sex shop." There is nothing seedy about the neighborhood, store building, or store front. In fact, from a quick drive-by, one would likely assume that the business was a rather upscale retail store for women's clothing and accessories. There are no "adult" signs or banners proclaiming "peep shows," "live entertainment booths," "XXX movies," "live models," "adult massage," or any of the other tasteless come-ons all too familiar from adult entertainment stores that exist in virtually every American city of any size and which one may find scattered along interstates and highways even in rural America.

The store has approximately 6,000 square feet of retail space and Ms. Bolton, who testified that she "run[s] the stores" for Doctor John's, testified at the preliminary injunction hearing that 75 to 80 percent of the store would be devoted to lingerie and swim wear, somewhere around 20 percent to lotions, oils, etc., and 5 percent or less of the floor space, at the back of the store, would be devoted to videos. Although Doctor John's contends that its Sioux City store is not primarily a video store, the Sioux City store, like

the ten Doctor John's stores in other states, sells videotapes, DVDs, magazines, and books, which Doctor John's concedes depict or describe nude or partially clothed persons and/or sexual activity. Ms. Bolton testified that all or nearly all of the videos at the Sioux City store would be "adult videos," and Doctor John's has submitted no additional evidence to the contrary as part of the summary judgment record. Although Ms. Bolton did not testify to an estimated percentage of total stock-in-trade that would be devoted to "novelties" or "adult toys," and explained that she could not say what percentage of "novelties" would be considered "adult," she did testify that 75 to 80 percent of the store's total stock would be "non-adult products." Ms. Bolton also testified that Doctor John's would be willing to adhere to any limitation imposed by the court or the City on the percentage of "adult" items that could be sold in the store at its present location. Doctor John's has not retreated from that position in the litigation of the current cross-motions for summary judgment.

The parties dispute whether Ms. Bolton's projections about the stock at the Sioux City store are borne out by the actual merchandise now in that store. For example, an affidavit of an investigator sent to the Doctor John's store by the City states that the investigator "find[s] that more than 5% of the gross public floor area is devoted to the display of sexually oriented toys or novelties as defined in the [January 2004 Amendments]"; that the investigator "estimate[s] that approximately 8% of the store's stock in trade, or inventory items, consists of sexually oriented toys or novelties"; and that the investigator "estimate[s] that approximately 10% of the stock in trade, or inventory items, consists of adult media, as that term is defined in [the January 2004 Amendments]." Defendants' Appendix (docket no. 56), Vol. I, Ex. 1, at 1. Inexplicably, Doctor John's did not submit any affidavit countering these estimates with specific estimates of its own concerning either percentages of stock-in-trade or retail floor space devoted to the display

of certain categories of items, leaving the court to infer from other evidence what the percentages might be. The court notes that the record is also silent as to how either party computed percentages of stock-in-trade, whether by number of actual inventory items, by dollar value (wholesale or retail), by net or gross sales receipts, or by some other calculation.

The only photographs of the merchandise in the Doctor John's store in Sioux City submitted by the City as part of the summary judgment record are close-ups of packages of "sex toys," including phallus-shaped "ribbed massagers," vibrators and similar devices, male masturbation devices, "anal sleeves," "clit jewelry," nipple jewelry, sex videos featuring "foreplay," "oral" sex, "anal" sex, and "cumshots," and racks of such items.[2] *See id.*, Vol. 1., Ex. 2, at 4-15. On the other hand, the only photographs of the merchandise in the store submitted by Doctor John's as part of the summary judgment record are panoramic shots of the store's interior showing racks and racks of swimsuits, lingerie, shoes, purses, knick-knacks in the shapes of cavorting dolphins, etc., candles, perfumes, and oils, and wall racks of videos of indecipherable content.[3] *See* Plaintiff's Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment, And Reply Memorandum In Support Of Plaintiff's Motion For Summary Judgment (docket no. 56), Vol. II, at unnumbered pages 2-6.

---

[2]The court is not impressed by such a transparent attempt to scandalize the court or to give the court the skewed perception that these are the *only* sorts of items in the Doctor John's store.

[3]The court is equally unimpressed with this transparent attempt to portray the store as just another strip mall retail outlet for women's clothing and accessories. However, the court recognizes that the photographs submitted by Doctor John's were submitted in response to the grossly misleading photographs submitted by the City.

Minors are not admitted to Doctor John's stores, because as Ms. Bolton testified at the preliminary injunction hearing, Doctor John's "d[oesn't] believe that children should be in a store that carries adult material." Ms. Bolton testified that Doctor John's checks for proof of age and identity of everyone who comes into its stores to enforce its self-imposed ban on minors. The parties do not dispute that Doctor John's has actually enforced the "no minors" rule at the Sioux City store.

### 2.    *Sioux City zoning ordinances and amendments*

### a.    *Pre-existing ordinances*

Sioux City Municipal Code 25.56.010, which has not been amended during the period of interest in this litigation, states the purpose of a General Business ("BG") Zone, such as the one in which Doctor John's Sioux City is located, to be the following:

> The BG zone is intended to provide business locations for retail, service and wholesale uses serving a city-wide clientele. The zone is intended to be located in areas characterized by good accessibility, including those areas which are heavily exposed to automobile traffic.

SIOUX CITY MUNICIPAL CODE 25.56.010, Defendants' Summary Judgment Appendix (docket no. 14) at 3.[4] The Commercial Planned Development Overlay Zone ("-C") does not generally change the permitted uses in a BG zone:

> The permitted uses, permitted accessory uses and the permitted conditional uses shall be the same as the zone upon which the -C zone is overlaid, except that this range of uses may be reduced by the terms of an approved planned development

---

[4]The parties did not resubmit copies of the ordinances defining the various zones in any of the appendices relating to the present cross-motions for summary judgment. Therefore, the court has relied on previous submissions to the record, where necessary, to provide a more complete context for the zoning ordinance amendments at issue here.

> concept plan or an approved planned development site plan if
> no concept plan is required.

SIOUX CITY MUNICIPAL CODE 25.74.212, Defendants' Summary Judgment Appendix (docket no. 14) at 6. Principal uses permitted in a BG zone are designated in Sioux City Municipal Code 25.56.020. However, Sioux City Municipal Code 25.56.030 expressly prohibits certain uses in a BG zone, including, *inter alia*, the following:

> 5.    Adult entertainment businesses, as defined in chapter 25.04 of this title. All nonconforming uses in the BG business zone may continue in operation under the provisions of Chapter 25.98 of the municipal code. All permits required herein shall be applied for within thirty days from the effective date of the ordinance codified in this chapter;
>
> 6.    All uses not specifically enumerated as permitted uses in the BG zone are prohibited, subject to the right, set forth in Subchapter VII of Chapter 25.12, of an applicant to seek use interpretation by the director of building inspection.

SIOUX CITY MUNICIPAL CODE 25.56.030, Defendants' Summary Judgment Appendix (docket no. 14) at 4.

Prior to October 27, 2003, "adult entertainment businesses"—which are banned from a general commercial zone, such as the zone where Doctor John's has since opened its Sioux City store—were defined by the Sioux City Municipal Code as follows:

> [B]usinesses which, as a part of or in the process of delivering goods and services, displays to its patrons specified sexual activities or specified anatomical areas in printed form or through any form of photographic medium or by use of male or female models. The following are examples of adult entertainment businesses but the list is not to be considered exclusive: adult book stores; adult motion picture theaters;

adult video stores, model studios, introductory services, and escort service bureaus.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2), Defendants' Summary Judgment Appendix (docket no. 14) at 9. Prior to October 27, 2003, "adult book store" was defined as follows:

> [A]n establishment having as *a substantial portion* of its stock in trade any of the following: books, periodicals, or magazines for sale when said stock in trade is distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2)(a), Defendants' Summary Judgment Appendix (docket no. 14) at 9 (emphasis added). Similarly, prior to October 27, 2003, an "adult video store" was defined as follows:

> [A]n establishment which, having as *a substantial portion* of its video inventory for sale or rental for either on-premises or off-premises viewing, has films and/or videotapes having as a dominant theme material distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. Such inventory must be offered in an area segregated by a gate or door and monitored and indicated as being off-limits to minors.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2)(c), Defendants' Summary Judgment Appendix (docket no. 14) at 9 (emphasis added). Under this ordinance, "substantial" was defined to mean "more than twenty-five percent of the book, periodical, magazine or video inventory are [sic] distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas." *Id.* at 25.04.02 (A-2)(i). Thus, this ordinance defined "adult entertainment businesses" by

14

application of a "25-percent rule," under which businesses with twenty-five percent or more of their media stock-in-trade in "adult" media were "adult entertainment businesses," and consequently, were banned from general commercial zones of Sioux City.

### b. *The series of amendments*

Prior to setting up its store in Sioux City, Doctor John's representatives had some contact with the City Attorney concerning zoning requirements for the intended location of that store, in the course of which Doctor John's representatives indicated a willingness to adhere to the then-existing "25-percent rule." *See* Plaintiff's Appendix (docket no. 48-2) at 59-62 (Complaint, Exhibit C (on-line copy of Sioux City Journal article dated November 11, 2003), and Exhibit B (Request For City Council Action for November 10, 2003, meeting)). However, before Doctor John's could complete preparations to open its store in Sioux City, Sioux City's zoning requirements for "adult entertainment businesses" underwent significant amendment.

### i. *The "Moratorium" Amendments*. Specifically, on October 27, 2003, the City Council for the City of Sioux City passed Ordinance 2003-000953, which imposed a moratorium on the opening of any "adult" businesses up to and including January 5, 2004. Defendants' Summary Judgment Appendix (docket no. 14) at 21. In a newspaper article published November 11, 2003, the City Attorney, James Abshier, was quoted as saying, "What prompted [the moratorium] was some discussion I had with Doctor John's representatives" in which those representatives "told me they would be happy to live with the 25 percent limitation instead of stocking their business with all adult items." Plaintiff's Appendix (docket no. 48-2) at 61-62 (Plaintiff's Complaint, Exhibit C). Similarly, a "Request For City Council Action" from Mr. Abshier, dated November 10, 2003, indicates that Doctor John's had represented that its store would comply with the "25-percent rule" imposed by the existing ordinances and suggested that a moratorium would

be appropriate to "preserve the integrity of the review process." *Id.* at 59-60 (Plaintiff's Complaint, Exhibit B). The moratorium amendment itself indicates that it was based on the City Council's findings that it had been advised and believed that the existing ordinance was "incomplete and inadequate in that it fails to regulate all aspects of the adult entertainment business," that the existing ordinance inadequately regulated the locations at which adult entertainment businesses might locate, and that it was in the public interest to study zoning regulations to ensure their effectiveness, validity, and constitutionality. Defendants' Summary Judgment Appendix (docket no. 14) at 21. Ordinance 2003-000953 was amended on November 10, 2003, by Ordinance 2003-000985, but that amendment did not alter the "sunset" date of January 5, 2004, for the moratorium.

Doctor John's contends that the "Moratorium" Amendments were designed to stop the issuance of a building permit and certificate of occupancy to its Sioux City store, pointing to the Request For City Council Action for November 10, 2003, meeting from the City Attorney, *see* Plaintiff's Appendix (docket no. 48-2) at 59-60 (Plaintiff's Complaint Exhibit B), and the newspaper article quoting the City Attorney. *See id.* at 61-62 (Plaintiff's Complaint, Exhibit C (on-line copy of Sioux City Journal article dated November 11, 2003)). The City, however, disputes that contention as mere opinion, and instead, points to the purpose stated in these Amendments as an intent to address the zoning of adult entertainment businesses as a category.

*ii.* **The January 2004 Amendments**. At the end of the moratorium period, the City Council again made significant amendments to its zoning ordinances with regard to adult entertainment businesses, consisting of the amendments identified herein for the sake of convenience as the January 2004 Amendments. Unlike the "Moratorium" Amendments, the January 2004 Amendments did not include any statement of findings by the City Council or any explanation of the impetus or rationale for those Amendments.

Nevertheless, on January 5, 2004, the "sunset" date for the moratorium, the City Council adopted Ordinance 2004-0004, Section 1 of which provides, in pertinent part, as follows:

A-2 "Adult Entertainment Business" means businesses which as a part of or in the process of delivering goods and services displays to its patrons specified sexual activities, specified anatomical areas through the use of adult media or male or female models, or offers for sale sexually oriented toys or novelties. The following are examples of adult entertainment business [sic] but the list is not to be considered exclusive: adult media store, adult motion picture theater, adult internet store, a sex shop, a video-viewing booth, a lingerie modeling studio or model studio.

a. "Adult Internet Store" means a store that offers its patrons with or without charge a computer with internet access for the purpose of accessing internet sites or that permits patrons to access internet sites that are characterized as displaying hard-core material or specified sexual activities.

b. "Adult Media" means magazines, books, videotapes, movies, slides, cd-roms or other devices used to record computer images, or other media that are distinguished or characterized by their emphasis on matter depicting, describing, or relating to hard-core material.

c. "Adult Media Store" means an establishment that rents and /or sells media, and that meets any of the following three tests:

(1) 25 percent or more of the gross public floor area is devoted to adult media.

(2) 25 percent or more of the stock-in-trade consists of adult media.

(3) It advertises or holds itself out in any forum as "XXX," "adult," "sex," or otherwise as a sexually oriented business other than an adult media store, or adult motion picture theater.

d. "Adult Motion Picture Theater" means an establishment emphasizing or predominantly showing hard core material.

e. "Establishment" means any business regulated by this title.

f. "Gross Public Floor Area" means the total area of the building accessible or visible to the public, including showrooms, motion picture theaters, motion picture arcades, service areas, behind-counter areas, storage areas visible from such other areas, restrooms (whether or not labeled "public"), areas used for cabaret or similar shows (including stage areas), plus aisles, hallways, and entryways servicing such areas.

g. "Hard-core Material" means media characterized by sexual activity that includes one or more of the following: erect male organ; contact of the mouth of one person with the genitals of another; penetration with a finger or male organ into any orifice in another person; open female labia; penetration of a sex toy into an orifice; male ejaculation; or the aftermath of male ejaculation. Hard core material also means media characterized by the display of specified anatomical areas or specified sexual activities.

. . .

j. "Media" means anything printed or written, or any picture, drawing, photograph, motion picture, film, videotape or videotape production, or pictorial representation, or any electrical or electronic reproduction of anything that is or may be used as a means of communication. Media includes but shall not necessarily be limited to books, newspapers, magazines, movies, videos, sound recordings, cd-roms, other magnetic media, and undeveloped pictures.

. . .

m. "Sex Shop" means an establishment offering goods for sale or rent and that meets any of the followings tests:

(1) The establishment offers for sale items from any two of the following categories:

    (i) adult media

    (ii) lingerie, or

    (iii) leather goods marketed or presented in a context to suggest their use for sadomasochistic practices;

and the combination of such items constitutes more than 10 percent of its stock in trade or occupies more than 10 percent of its floor area.

(2) More than 5 percent of its stock in trade consists of sexually oriented toys or novelties.

(3) More than 5 percent of its gross public floor area is devoted to the display of sexually oriented toys or novelties.

n. "Sexually Oriented Toys or Novelties" means instruments, devices, or paraphernalia either designed as representations of human genital organs or female breasts, or designed or marketed primarily for use to stimulate human genital organs.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0004, Defendants' Summary Judgment Appendix (docket no. 14) at 30-31.[5] Perhaps the most significant changes from the pertinent ordinances in force prior to October 2003 are the addition of the definition of "sex shop" in subsection (m) and the definition of "sexually oriented toys or novelties" in subsection (n), which have no correlates in earlier versions of the ordinance.

On January 12, 2004, the City Council adopted Ordinance 2004-0024, which amended a subsection of Ordinance 2004-0004 and formally repealed the prior moratorium

---

[5] Doctor John's has included in its appendix in support of its motion for partial summary judgment, as an attachment to a copy of its amended complaint, what it purports to be a copy of Ordinance 2004-0004. *See* Plaintiff's Appendix To Motion For Partial Summary Judgment (docket no. 48-2) at 35-37. However, the version of the ordinance submitted by Doctor John's with its motion for partial summary judgment does not match the signed and certified copy of Ordinance 2004-0004 submitted by the City in January 2004 with the City's first motion for summary judgment. The same problem obtains with the copy of Ordinance 2004-0024, as submitted by Doctor John's with its present motion for partial summary judgment, as compared to the version submitted by the City in February 2004 with the City's supplemental brief in support of its first motion for summary judgment. Whenever the court could find in the record signed and certified copies of the ordinances in question, the court has relied on and cited to those signed and certified copies.

on "adult entertainment businesses," which had expired on January 5, 2004. The amended ordinance provides as follows:

> Section 1: Subsection 25.04.020(A-2)(c) of the Sioux City Municipal Code is amended to read as follows:
>
> c. "Adult Media Store" means an establishment that rents and/or sells media, and that meets any of the following three tests:
>
>> (1) 25 percent or more of the gross public floor area is devoted to adult media.
>>
>> (2) 25 percent or more of the *media* stock-in-trade consists of adult media.
>>
>> (3) It advertises or holds itself out in any forum as "XXX," "adult," "sex," or otherwise as a sexually oriented business other than an adult media store, or adult motion picture theater.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0024, Attachment "A" to Defendants' Supplemental Brief (docket no. 23) (emphasis added). Thus, ordinance 2004-0024 clarified the twenty-five percent limitation on adult media in the definition of an "adult media store" by inserting the word "media" before "stock-in-trade" in Section 1(c)(2), so that the definition would be triggered at 25 percent of the "*media* stock-in-trade," not 25 percent of *all* stock-in-trade.

Doctor John's has not sought rezoning of the intended location of its Sioux City store to permit an "adult entertainment business" as defined in these amended ordinances at that location. Nor does the record indicate that Doctor John's has sought to relocate its Sioux City store to an area where "adult entertainment businesses" are permitted, such as a General Business—Metropolitan (BG-M) zone, like the downtown area of Sioux City, where the City contends that there are a number of vacant locations. One of the underlying issues in this lawsuit, of course, is whether there is any reason that Doctor John's should have to take such steps.

Doctor John's contends that the purpose and "effect" of the January 2004 Amendments were to classify its Sioux City store as an "adult entertainment business." The City disputes allegations that it intended to tailor the ordinances to bar the Doctor John's store from Sioux City. Whatever its intent behind the January 2004 Amendments, the City contends that the Doctor John's store in Sioux City is an "adult entertainment business" as defined by those Amendments; thus, the City contends that Doctor John's could not properly operate its Sioux City store in its present location absent the court's preliminary injunction.

Almost completely absent from the preliminary injunction record was evidence of the kind that the City now submits in an attempt to demonstrate that both citizens and City Council members had become concerned about the "secondary effects" of "adult entertainment businesses," including Doctor John's, during the fall of 2003 and winter of 2003-2004. The "secondary effects" the City identifies are negative impacts on surrounding businesses, neighborhoods, property values, and crime. Doctor John's disputes that its store in Sioux City has or could produce any such "secondary effects." What was also entirely absent from the preliminary injunction record was evidence that the City's decisionmakers considered any such materials concerning the "secondary effects" of "adult entertainment businesses" in the course of drafting, debating, and passing the "Moratorium" Amendments and the January 2004 Amendments. The City now contends that the decisionmakers did consider such materials, pointing to affidavits of various City Council members. The City also contends that the January 2004 Amendments are modeled on, indeed, almost verbatim copies from, suggested ordinances in an American Planning Association Planning Advisory Service Report (The APA Report) by Eric Camina Kelly and Connie Cooper, both of whom are former presidents of the American Planning Association (APA).

Almost none of the material submitted by the City in support of its contention that its amendments to the "adult entertainment business" ordinances were motivated by a concern about possible "secondary effects" of such businesses is information about any such "adult entertainment businesses" or "secondary effects" of such businesses *in Sioux City, Iowa.* Rather, they are studies, incident reports, and expert opinions relating to "adult entertainment businesses" and "secondary effects" in *other* cities. The exceptions include three affidavits by an investigator, Ray Matousek, hired by the City to "observe activities" at four "adult" businesses in Sioux City, Iowa. The City submitted the investigator's affidavits concerning activities on October 23, 2004, at a club with female dancers, at which the investigator, *inter alia*, enjoyed a "lap dance" with one of the dancers; activities at an "Adult Emporium," with private video viewing booths, on October 30, 2004, and November 22, 2004; and activities at another business selling "adult" magazines, books, and videos, and also equipped with private viewing booths, on October 31, 2004, and November 4, 2004. Defendants' Appendix To Motion For Summary Judgment And In Resistance To Plaintiff's Motion For Summary Judgment (docket no. 56), Vol. II, 579-85. The City has also submitted two affidavits of other persons sent to the Doctor John's store in Sioux City, Iowa, both on February 17, 2005, concerning their estimates about stock-in-trade, accompanied by photographs. *Id.*, Vol. I, 1-15. Doctor John's also submitted a fourth affidavit by the City's investigator, Ray Matousek, which the City did not include in its Appendix, detailing his visit on October 30, 2004, to another club in Sioux City, Iowa, featuring female dancers, at which the investigator enjoyed another "lap dance." Plaintiff's Appendix To Memorandum In Opposition To Defendants' Motion For Summary Judgment, And Reply Memorandum In Support Of Plaintiff's Motion For Summary Judgment at 29-31. Although these affidavits concerning "investigations" of purported "adult entertainment businesses" in Sioux City,

Iowa, detail activities observed *in* the businesses, most do not mention the "secondary effects" identified by the City, such as negative impacts on surrounding businesses, neighborhoods, property values, and crime. The exception is one affidavit, concerning the October 30, 2004, visit to the "Adult Emporium," in which the investigator suggests that a person in an adjacent viewing booth attempted to "entice [the investigator] with his lips and tongue through [a] hole [in the wall]," and that a female in the parking lot asked if the investigator "want[ed] a date." Defendants' Appendix at 582. There are no police reports concerning any incidents near any of these four businesses or near the Doctor John's store in Sioux City. Finally, none of the "investigations" of purported "adult entertainment businesses" in Sioux City, Iowa, was conducted prior to the enactment of the January 2004 Amendments.

   ***iii.***  ***The December 2004 Amendments***. To put in context the City's arguments, the court also notes that, in December 2004, the City passed additional amendments to the pertinent ordinances regulating "adult entertainment businesses," which are identified herein for the sake of convenience as the December 2004 Amendments. *See* Appendix To Defendants' Motion For Summary Judgment And In Resistance To Plaintiff's Motion For Summary Judgment (docket no. 56), Vol. 1, No. 7, Exs. 4 (SIOUX CITY MUNICIPAL ORDINANCE 2004-1059) & 5 (SIOUX CITY MUNICIPAL ORDINANCE 2004-1060), at 79-89. What is significant about the December 2004 Amendments, for present purposes, is that they supersede the January 2004 Amendments. Doctor John's contends that, at the time that the December 2004 Amendments were passed, the City Council simultaneously "grandfathered" the Sioux City Doctor John's store at its present location, allowing it to continue operations there. There is, however, an on-going dispute concerning licensing requirements, which may be at issue in a later ruling. The court also notes that, unlike the

January 2004 Amendments, the December 2004 Amendments contain extensive statements of the purposes and findings upon which those Amendments are based.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

At the preliminary injunction hearing, Doctor John's, as the movant, bore the burden of showing that it had, *inter alia*, a likelihood of success on the merits, based on the evidence that it presented, and the court was required to make findings of fact and conclusions of law in its ruling granting Doctor John's a preliminary injunction enjoining enforcement of the January 2004 Amendments. However, "'the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.'" *United States v. Barnes*, 912 F. Supp. 1187, 1191 (N.D. Iowa 1996) (quoting *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995)) (citation and quotation omitted). Nor are they somehow binding in a subsequent decision on cross-motions for summary judgment. Indeed, as this court has often explained, applying the standards of Rule 56 of the Federal Rules of Civil Procedure, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). Thus, the function of the court at this stage of the proceedings is quite different from its function as preliminary factfinder in preliminary injunction proceedings.

The parties' functions are also different. The movant for summary judgment must make sufficient showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the opposing party's claims. *See Hartnagel v.*

*Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (on a motion for summary judgment pursuant to Rule 56, the moving party bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). To defeat a motion for summary judgment, the opposing party must then meet its countervailing burden under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995).

With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment regarding the constitutionality of the January 2004 Amendments.

## B. Mootness And Standing

### 1. Arguments of the parties

The first issues that the court must consider are ones raised by the City in its resistance and cross-motion for summary judgment. Those issues are whether the claims by Doctor John's that the January 2004 Amendments are unconstitutional are now moot and whether Doctor John's has standing to assert some of its claims.

The City contends that the claims by Doctor John's are moot, because the January 2004 Amendments have been superseded by the December 2004 Amendments. The City

contends that the general rule is that legislative repeal of a statute renders a case moot, and such a legislative repeal of the January 2004 Amendments has taken place in this case. The City contends that the only exception to mootness here might be the portion of the claim by Doctor John's that it is entitled to damages for the period that the January 2004 Amendments unconstitutionally prevented Doctor John's from opening its store in Sioux City. In addition, the City contends that Doctor John's does not have standing to challenge the portion of the January 2004 Amendments that defines a "sex shop" on the basis of the sale of a combination of items, SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), because Doctor John's was also a "sex shop" on the basis of its sale of an excessive number of "sexually oriented toys and novelties," within the meaning of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(2) and (m)(3).

Doctor John's contends that it is precisely the issue of damages for the delay to the opening of its business caused by the unconstitutional amendments that keeps its claim as to the January 2004 Amendments alive, whichever provision of the January 2004 Amendments purportedly made it a "sex shop." However, Doctor John's contends that the court should find, as a matter of law, that the January 2004 Amendments were unconstitutional, leaving only the issue of damages arising from delays in the opening of its store caused by the unconstitutional Amendments.

### 2.    *Analysis*

The City's contention that the general rule is that repeal of an ordinance moots challenges to that ordinance is contrary to Supreme Court precedent. The Supreme Court rejected a similar contention in *Northeastern Florida Chapter of Associated General Contractors Of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993):

> [T]he mootness question is controlled by *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S. Ct. 1070, 71 L.

26

Ed. 2d 152 (1982), where we applied the "well settled" rule that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.*, at 289, 102 S. Ct., at 1074. Although the challenged statutory language at issue in *City of Mesquite* had been eliminated while the case was pending in the Court of Appeals, we held that the case was not moot, because the defendant's "repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *Ibid.*

This is an *a fortiori* case. There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite* does not stand for the proposition that it is only the possibility that the selfsame statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect. The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts. The new ordinance may disadvantage them to a lesser degree than the old one, but insofar as it accords preferential treatment to black- and female-owned contractors—and, in particular, insofar as its "Sheltered Market Plan" is a "set aside" by another name—it disadvantages them in the same fundamental way.

*City of Jacksonville*, 508 U.S. at 661-62.

While it is true that the City has dropped from the December 2004 Amendments the provision found in the January 2004 Amendments defining a "sex shop" on the basis of sales of a combination of any two of three specified categories of goods—adult media, lingerie, and leather goods, where the "combination" exceeds ten percent of stock-in-trade or floor area, *see* SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1) (the so-called

"combination" provision)—nothing precludes the City from reenacting precisely the same provision if the court's preliminary injunction is vacated. *See id.* Moreover, as Doctor John's contends, and the City concedes, the issue of the constitutionality of the "combination" portion of the definition of "sex shop" in the January 2004 Amendments is not moot, precisely because Doctor John's seeks damages for the period that this provision precluded Doctor John's from opening its store in Sioux City: The trier of fact cannot determine that Doctor John's is entitled to any damages, *unless* the ordinance was unconstitutional in a respect that delayed the Doctor John's store from opening.

Nor is the court persuaded by the City's argument that Doctor John's lacks standing. In *City of Jacksonville*, the Supreme Court also summarized the requirements of standing as follows:

> The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992), which itself "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded," *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984). It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan, supra,* 504 U.S., at 560, 112 S. Ct., at 2136 (citations, footnote, and internal quotation marks omitted); (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426

U.S. 26, 41-42, 96 S. Ct. 1917, 1926, 48 L. Ed. 2d 450 (1976); and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative," *Allen v. Wright, supra,* 468 U.S., at 752, 104 S. Ct., at 3325. These elements are the "irreducible minimum," *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982), required by the Constitution.

*City of Jacksonville*, 508 U.S. at 663-64.

Here, the City appears to assert that Doctor John's cannot meet the third requirement of standing, likelihood that injuries will be redressed, *see id.*, because a holding that the "combination" provision, SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), was unconstitutional would not redress any injury to Doctor John's. The City contends that this is so, because Doctor John's would still have been barred from opening at its chosen location on the ground that it was also a "sex shop" within the meaning of the "sexually oriented toys" provisions, SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(2) and (m)(3), and the "sexually oriented toys" provisions do not run afoul of First Amendment limitations on the regulation of free expression. This argument simply proves too much: Where the City asserted, and continues to assert, that the "combination" provision and the "sexually oriented toys" provisions are *all* constitutional, and that any one of these provisions would have barred Doctor John's from opening its store in Sioux City, Doctor John's has standing to challenge *all* of those provisions, because it must prove that *none of them* is constitutional before its can claim that it has injuries from unconstitutional regulation for which it is entitled to redress.

The City is not entitled to summary judgment on the claims at issue here either because those claims are moot or because Doctor John's does not have standing to assert

29

them. Therefore, the court turns to substantive issues raised in the parties' cross-motions for summary judgment.

## C. Nature Of The Constitutional Challenges

At least in the first instance, Doctor John's casts its challenges to the "Moratorium" Amendments and the January 2004 Amendments in terms of violations of the First Amendment right to free expression. Thus, Doctor John's asserts that these Amendments fail either "strict" or "intermediate" scrutiny, because they improperly impinge upon the expressive content of the store's merchandise. The City, however, contends that the Amendments must be parsed more finely, because the First Amendment protection that may apply to the regulation of businesses selling *adult media* does not apply to businesses selling *sexual devices*. Thus, the City contends that it could properly regulate Doctor John's as a business selling sexual devices subject only to rational basis scrutiny. Somewhat more specifically, the City draws a distinction between the constitutionality of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), which defines "sex shops" on the basis of the sale of a "combination" of adult merchandise, including "adult media," and thus, implicates the First Amendment, and SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(2) and (m)(3), which define "sex shops" on the basis of the sale of "sex toys," and thus, do not implicate the First Amendment. In reply, Doctor John's asserts that the sale of sexual devices implicates "privacy" issues that should be put on a constitutional par with First Amendment "free expression" issues applicable to adult media.

The court finds it useful to consider the "combination" definition of a "sex shop," in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), separately from the "sex toys" definitions of a "sex shop," in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-

2(m)(2) and (m)(3). Therefore, the court begins its substantive analysis with the question of whether summary judgment is appropriate on the constitutionality or unconstitutionality of the "combination" definition of "sex shops" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), which the court finds may involve both First Amendment "free expression" issues and "substantive due process" right to "privacy" issues. The court will then turn to the question of whether summary judgment is appropriate on the constitutionality or unconstitutionality of the "sex toys" definitions of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(2) and (m)(3), which may involve only "privacy" issues.

## D. The "Combination" Definition Of A "Sex Shop"

### 1. The provision in question

As noted above, in the January 2004 Amendments, the *first* definition of a "sex shop," was the following:

> The establishment offers for sale items from any two of the following categories:
>> (i) adult media
>> (ii) lingerie, or
>> (iii) leather goods marketed or presented in a context to suggest their use for sadomasochistic practices;
> and the combination of such items constitutes more than 10 percent of its stock in trade or occupies more than 10 percent of its floor area.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1).[6] The parties dispute whether or not this provision is constitutional, and as explained above, that dispute is not moot, even though the provision has been repealed, because of the contention by Doctor John's that the unconstitutional provision caused damages to Doctor John's by delaying the opening of the Doctor John's store in Sioux City.

##### 2. *Arguments of the parties*

Doctor John's contends that this portion of the January 2004 Amendments is "content based," and consequently, must be subject to "strict scrutiny." This is so, Doctor John's contends, because there is no adequate evidence that there would be any "secondary effects" from the sale of a "combination" of items, consisting of a single item of "adult media" and either "lingerie" or "sadomasochistic leather goods,"[7] where the "combination" exceeds ten percent of a business's stock-in-trade or floor area. Doctor John's repeats its mantra that it simply isn't the kind of business identified in Supreme Court cases as capable of generating "secondary effects." Thus, Doctor John's contends that the real target of the ordinance was the content of the "adult media" that Doctor

---

[6] The court believes that, at least in the course of litigating the motion for a preliminary injunction, Doctor John's read this provision to apply the "ten percent" requirements only to a "combination" including "leather goods marketed or presented in a context to suggest their use for sadomasochistic practices," rather than to the combination of "any two categories" of merchandise. Nevertheless, the court finds that, while not a model of clarity, the plain meaning of the ordinance is that the *combination* of *any* two categories of items (not just a combination including "leather goods") must exceed ten percent of the business's stock-in-trade or floor area. While this has always been the court's reading of the ordinance, this reading may not have been entirely clear from the court's preliminary injunction ruling.

[7] The court will use "sadomasochistic leather goods" as a convenient shorthand for the more cumbersome ordinance language, which is "leather goods marketed or presented in a context to suggest their use for sadomasochistic practices."

John's sells. As such, Doctor John's argues that the ordinance unconstitutionally burdened expression, because it was not narrowly drawn to fight "secondary effects." Doctor John's contends that, while "secondary effects" might arise, for example, from a store with on-premises facilities for viewing sexually-oriented media, there are no such "secondary effects" from a business, such as the Doctor John's store in Sioux City, which does not have such on-premises viewing facilities. Next, Doctor John's contends that, even if the court were to conclude, as a matter of law, that this portion of the January 2004 Amendments is "content neutral," and therefore, subject only to "intermediate scrutiny," the Amendments fail even that level of scrutiny. Doctor John's argues that the City has not articulated a substantial interest separate from suppression of expression; that there was no link to "secondary effects" to show a purpose unrelated to expression; and that the ordinance was not narrowly drawn, but was an overbroad act of censorship.

The City, however, contends that, if the court reaches the issue, SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1) was constitutional, even to the extent that it regulated "adult media" in combination with other "adult" stock, because it was not "content based" and satisfied "intermediate scrutiny." The City argues that a business can run afoul of the ordinance without selling *any* expressive media, if it sells a combination of "lingerie" and "sadomasochistic leather goods," and the combination exceeds ten percent of the store's stock-in-trade or floor area. Moreover, the City argues that the regulation is not "content based," because combining "adult media" with either "lingerie" or "sadomasochistic leather goods" suggests that the store is "selling sex," which makes it different from a store selling expressive media, some of which is sexually-oriented. The City contends that its reasoning is consistent with the APA Report and the findings of other cities. The City also argues that the "content neutrality" of an ordinance may be justified by *post-enactment* evidence of "secondary effects." The issue, the City contends, is

whether there is *presently* a substantial governmental interest that can be perceived for the ordinance. The City points to what it calls "voluminous" evidence that there would be, or that the City decisionmakers reasonably believed that there would be, negative "secondary effects" from locating a store like the Doctor John's store in Sioux City in a general business zone.

In resistance to the City's summary judgment motion and in reply in support of its own summary judgment motion, Doctor John's reiterates that there is absolutely no evidence of "secondary effects" from its business in Sioux City nor of "secondary effects" from any similar business elsewhere. Doctor John's asserts that the supposedly "voluminous" evidence on which the City relies does not create any "reasonable belief" that the ordinance in question would have prevented "secondary effects."

### 3. Analysis

#### a. Applicable law

In its preliminary injunction ruling, the court noted that, in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), the United States Supreme Court explained that it had used the following three-step analysis of the constitutional validity, *under the First Amendment*, of a municipal zoning ordinance regulating adult entertainment businesses in its prior decision in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986):

> *First*, we found that the ordinance did not ban adult theaters altogether, but merely required that they be distanced from certain sensitive locations. The ordinance was properly analyzed, therefore, as a time, place, and manner regulation. *[Renton*, 475 U.S.], at 46, 106 S. Ct. 925. We *next* considered whether the ordinance was content neutral or content based. If the regulation were content based, it would be considered presumptively invalid and subject to strict

> scrutiny. *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118, 112 S. Ct. 501, 116 L. Ed.2d 476 (1991); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 230-231, 107 S. Ct. 1722, 95 L. Ed.2d 209 (1987). We held, however, that the Renton ordinance was aimed not at the content of the films shown at adult theaters, but rather at the secondary effects of such theaters on the surrounding community, namely, at crime rates, property values, and the quality of the city's neighborhoods. Therefore, the ordinance was deemed content neutral. *Renton, supra*, at 47-49, 106 S. Ct. 925. *Finally*, given this finding, we stated that the ordinance would be upheld so long as the city of Renton showed that its ordinance was designed to serve a substantial government interest and that reasonable alternative avenues of communication remained available. 475 U.S., at 50, 106 S. Ct. 925. We concluded that Renton had met this burden, and we upheld its ordinance. *Id.*, at 51-54, 106 S. Ct. 925.

*Alameda Books, Inc.*, 535 U.S. at 433-34 (emphasis added). Thus, this court must likewise apply the "*Renton* analysis" to the constitutionality of the "combination" provision under the First Amendment, as follows: (1) determine whether the City's amended ordinances constitute a ban on "adult entertainment businesses," or only a "time place and manner regulation"; (2) determine whether the amended ordinances are "content neutral" or "content based"; and (3)(a) if the amended ordinances are found to be "content neutral," determine whether they are "designed to serve a substantial government interest" and whether "reasonable alternative avenues of communication remain available," or (b) if the amended ordinances are found to be "content based," apply "strict scrutiny" to determine the validity of the amended ordinances.

### b.    *Application of the law*

*i.    Time, place, and manner regulation*.  For the same reason that the court concluded, in the preliminary injunction ruling, that the January 2004 Amendments are "time place and manner" regulations, the court now reiterates that conclusion.  As the Supreme Court has explained, an ordinance that does not ban adult businesses altogether, but merely requires that they be distanced from certain sensitive locations, *see Renton*, 475 U.S. at 46, or not allowed to concentrate *en masse* in a single area, *see Alameda Books, Inc.*, 535 U.S. 430 & 435, is a "time, place, and manner" regulation.  In the present case, the "Moratorium" Amendments imposed a complete, but only temporary, ban on new "adult" businesses.  Thus, the "Moratorium" Amendments were, at most, a "time" regulation.  Similarly, the January 2004 Amendments only barred "adult entertainment businesses," as redefined, *from the General Business (BG) Zones*, not from the entire City.  Because "adult entertainment businesses," however defined, were still permitted by the January 2004 Amendments within General Business—Metropolitan (BG-M) zones, such as the downtown area, the regulations at issue here were "time, place, and manner" restrictions.

*ii.    Content neutrality*.  As this court also explained in the preliminary injunction ruling, at the second step in the *Renton* analysis, determination of "[c]ontent neutrality focuses on the City's purpose in enacting the ordinance."  *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir.) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), *cert. denied*, 513 U.S. 1017 (1994); *see also Renton*, 475 U.S. at 48 (considering whether the purpose of the ordinance is "unrelated to the suppression of free expression" and "*justified* without reference to the content of the regulated speech'") (quoting *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976), with emphasis added in *Renton*).  In *Renton*, the Supreme Court

concluded that the ordinance at issue treated "adult motion picture theatres" differently from other kinds of theaters, but the ordinance was nevertheless "content neutral," because it was not aimed at the *content* of the films shown at the "adult motion picture theatres," but rather at the *secondary effects* of such businesses on the surrounding community. *Renton*, 475 U.S. at 47. The ordinance, "by its terms," was designed "to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views." *Id.* at 48. Consequently, the Eighth Circuit Court of Appeals has read *Renton* to mean that the "content neutrality" required to avoid strict scrutiny under the First Amendment "means simply that the regulation is *justified* by the legitimate government purpose of reducing or eliminating adverse secondary effects." *SOB, Inc. v. County of Benton*, 317 F.3d 856, 860 (8th Cir.) (emphasis in the original) (citing *Renton*, 475 U.S. at 47-50), *cert. denied*, 540 U.S. 820 (2003).

Moreover, the City argues that it is not required to prove that it relied on a purpose of eliminating such "secondary effects" at the time that it enacted the ordinance, as long as it shows that the ordinance is subsequently justified by regulation of "secondary effects." The City points to Justice Souter's explanation in his opinion concurring in the judgment in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), that whether an Indiana law furthered the interest in preventing secondary effects was not dependent on any evidence that the Indiana legislature had acted with that specific intent, because "[the Court's] appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *Barnes*, 501 U.S. at 582-83. In this case, the City appears to advocate a rule that there is a

presumption, and very nearly an unrebuttable presumption at that, that any ordinance regulating adult businesses is "content neutral," as long as the municipality articulates, even *post hoc*, that the purpose for the ordinance is to address "secondary effects."

This court is persuaded that a more telling explanation of the test of "content neutrality" is found in *Alameda Books, Inc.*, where a plurality of the Court explained that, at the "content-neutrality" stage of the analysis, the inquiry is *not* "whether the municipality can demonstrate a connection between the speech regulated by the ordinance and secondary effects that motivated the adoption of the ordinance"; rather, the inquiry at this stage "requires courts to verify that the 'predominate concerns' motivating the ordinance 'were with the secondary effects of adult [speech], and not with the content of adult [speech].'" *Alameda Books, Inc.*, 535 U.S. at 440-41 (quoting *Renton*, 475 U.S. at 47); *see also ILQ Investments, Inc.*, 25 F.3d at 1416 (rejecting an argument that the city had failed to prove that the city's adult businesses caused secondary effects, and its ordinance, therefore, was not "content neutral," because "[t]hat argument impermissibly confuses distinct aspects of the *City of Renton* test," where "[c]ontent neutrality focuses on the City's purpose in enacting the ordinance"); *Ambassador Books & Video, Inc. v. City of Little Rock, Ark.*, 20 F.3d 858, 863 (8th Cir.) (rejecting a quest for a "hidden purpose" or unstated "motivating factor" behind an ordinance regulating adult businesses), *cert. denied*, 513 U.S. 867 (1994).

At the preliminary injunction stage in this case, this court found that Doctor John's had sufficient likelihood of success on its showing that the January 2004 Amendments were "content based," because, in contrast to the ordinance at issue in *Renton*, 475 U.S. at 47, the January 2004 Amendments do not, by their terms, state *any* purpose to combat "secondary effects" of "adult entertainment businesses," or indeed, any purpose at all. The court noted that the only evidence of the City's intent in the preliminary injunction

record was that the series of amendments to the ordinances, beginning in October 2003, was in direct response to Doctor John's intention to open a store in Sioux City, Iowa, and, more specifically still, in direct response to Doctor John's statement of its intent to comply with existing content requirements for businesses allowed to locate in a BG zone. This court also noted that the shifting nature of the definition of "adult entertainment businesses"—to the point where a business selling *any* item of "adult media" in combination with "lingerie" or "sadomasochistic leather goods," where the combination exceeded ten percent of the business's stock-in-trade or floor area, would qualify as a "sex shop" within the meaning of Sioux City Municipal Ordinance 2004-0004(A-2)(m)—and the tailoring of the shifting responses to Doctor John's profession that it was prepared to comply with existing content limitations, was sufficient for this court to infer that the purpose of the amendments was to ban the Doctor John's store on the basis of its *content*.

The court recognizes that the City has attempted to remedy this problem by papering the record with evidence that purportedly shows that the City was, indeed, attempting to combat "secondary effects" when it enacted the January 2004 Amendments, or, at least, that the Amendments can be justified by regulation of "secondary effects," including copies of various studies of sexually oriented businesses generated by other municipalities and by affidavits of members of the City Council. Such evidence probably would do no more than generate genuine issues of material fact as to the City's *actual* intent in enacting the January 2004 Amendments. However, where the City's *actual* intent is not the target of the inquiry, *see Barnes*, 501 U.S. at 582-83, the question is whether that evidence shows, as a matter of law, that "the 'predominate concerns' motivating the ordinance 'were with the secondary effects of adult [speech], and not with the content of adult [speech].'" *Alameda Books, Inc.*, 535 U.S. at 440-41 (quoting *Renton*, 475 U.S. at 47).

Again, at this stage of the inquiry, the court is *not* concerned with "whether the municipality can demonstrate a connection between the speech regulated by the ordinance and secondary effects that motivated the adoption of the ordinance." *Id.*

This court has found little guidance on what evidence demonstrates or disproves that the "predominate concern" of an ordinance was with regulating "secondary effects" rather than the content of protected expression. *Id.* For example, in *ILQ Investments*, the Eighth Circuit Court of Appeals held that it was "clear" that a city council had "targeted not the content of the [adult business's] materials, but the anticipated impact of adult businesses on their surrounding communities," and that, on the record presented, the ordinance in question was "indisputably content-neutral." *See ILQ Investments, Inc.*, 25 F.3d at 1416. However, the court in *ILQ Investments* identified absolutely no evidence or language of the ordinance that made such a conclusion "clear" or "indisputable." Certainly, the court did not identify *any* language in the ordinance stating a purpose of regulating "secondary effects," nor did it identify any evidence that the municipality had considered the need to address "secondary effects" of adult entertainment businesses. Instead, the court simply recited that "'[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *Id.* (quoting *Ward*, 491 U.S. at 791). The decision in *ILQ Investments* seems to suggest that little, if anything, more is required for an ordinance to be "content neutral" than for its target to be adult entertainment businesses.[8] On the other hand, in *Jake's,*

_____

[8]The holding in *ILQ Investments* is difficult to square with the subsequent holding of the Eighth Circuit Court of Appeals in another case that an ordinance prohibiting the conduct of "fortune-telling" businesses was "content based." *See Argello v. City of Lincoln*, 143 F.3d 1152, 1152 (8th Cir. 1998). The ordinance in *Argello*, like the ordinance in *ILQ Investments*, identified a specific kind of business as its target, but stated

(continued...)

*Ltd., Inc. v. City of Coates*, 284 F.3d 884 (8th Cir. 2002), *cert. denied*, 537 U.S. 948 (2002), the Eighth Circuit Court of Appeals recognized that, at least theoretically, "an adult entertainment license fee may be so large or so discriminatory as to demonstrate that it is not content neutral." *Jake's, Ltd.*, 284 F.3d at 891. This observation suggests that unreasonable or "discriminatory" conduct by the municipality may undermine "content neutrality." In *Jake's, Ltd.*, the court observed that, "in other contexts, the prospective licensee has the burden of establishing that a license fee is unreasonable." *Id.* Ultimately, however, the court concluded that the plaintiff adult entertainment business had not offered any evidence on the issue, and upheld the portion of the trial court's summary judgment ruling holding that the ordinance in question was "content neutral." *Id.*

Here, Doctor John's has offered evidence that the January 2004 Amendments were enacted for a discriminatory reason: Doctor John's has pointed to evidence that the January 2004 Amendments were enacted for the very purpose of excluding Doctor John's from its chosen location, based on the "adult" content of its merchandise, rather than to address the "secondary effects" of adult entertainment businesses generally, because the City adjusted the ordinances to exclude Doctor John's when Doctor John's professed itself willing to abide by current limitations on adult content used to define adult entertainment businesses. This evidence suggests that "the 'predominate concerns' motivating the ordinance" were *not* "'with the secondary effects of adult [speech],'" but *were* "'with the content of adult [speech]'" in media sold by Doctor John's. *Alameda Books, Inc.*, 535 U.S. at 440-41 (quoting *Renton*, 475 U.S. at 47). Thus, although the showing may be

---

[8](...continued)
no purpose of regulating "secondary effects" of such businesses. Indeed, the only difference in the outcome between *ILQ Investments* and *Argello* on the "content neutrality" issue appears to be the nature of the businesses regulated in each case.

tenuous, the court concludes that Doctor John's has generated a genuine issue of material fact that the January 2004 Amendments were "content based."

Even so, the court will analyze the constitutionality of the January 2004 Amendments under *both* the "strict scrutiny" standard applicable to a "content based" ordinance and the "intermediate scrutiny" standard applicable to a "content neutral" ordinance. *Alameda Books, Inc.*, 535 U.S. at 433-34 ("If the regulation were content based, it would be considered presumptively invalid and subject to strict scrutiny," but if the regulation were "content neutral," "intermediate scrutiny" would be appropriate).

 ***iii.***  ***Strict scrutiny.***  "Strict scrutiny" requires that, to be constitutional, a regulation must be "*narrowly tailored* to serve a *compelling* state interest." *See, e.g., Republican Party of Minnesota v. White*, 536 U.S. 765, 775 (2002) (emphasis added). As it did in its preliminary injunction ruling, the court will assume, for present purposes, that the City has a "compelling interest" in its exercise of police powers to regulate adult entertainment businesses to combat "secondary effects" of such businesses. *Cf., e.g., Jake's, Ltd., Inc.*, 284 F.3d at 888 ("It is well-settled that a city's interest in preserving the quality of urban life and the character of its neighborhoods justifies zoning restrictions intended to minimize such effects.") (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) (plurality opinion)); *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997) ("The question of whether the ordinance serves a *significant* governmental interest is easily resolved, because, as a matter of settled law, regulations aimed at minimizing the secondary effects of sexually oriented businesses serve a *significant* and *substantial* governmental interest.") (emphasis added) (citing *Renton*, 475 U.S. at 50; *ILQ Invs., Inc.*, 25 F.3d at 1416; *Holmberg v. City of Ramsey*, 12 F.3d 140, 143 (8th Cir.1993), *cert. denied*, 513 U.S. 810 (1994); and *Young*, 427 U.S. at 71

(plurality opinion)), *cert. denied*, 522 U.S. 1077 (1998). The critical question here is whether the January 2004 Amendments are "narrowly tailored" to serve that interest.

In determining whether the January 2004 Amendments are "narrowly tailored" to address "secondary effects," the court must first examine what is meant by "secondary effects" and how a municipality may determine whether or not certain adult entertainment businesses have such "secondary effects." At this point in the analysis, it is appropriate for the court to assess "whether the municipality can demonstrate a connection between the speech regulated by the ordinance and secondary effects that motivated the adoption of the ordinance." *Alameda Books, Inc.*, 535 U.S. at 441 (adding that "[o]nly at this stage did *Renton* contemplate that courts would examine evidence concerning regulated speech and secondary effects") (citing *Renton*, 475 U.S. at 50-52).

"Secondary effects" that may properly be the basis for zoning ordinances affecting adult entertainment businesses include crime, prostitution, and economic blight or depressed property values. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 860 (8th Cir. 2003); *see also Renton*, 475 U.S. at 48 (an ordinance addresses "secondary effects" if it is designed "to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views."). However, "[t]he city d[oes] not need to offer evidence of localized secondary effects of an adult entertainment business, but rather can rely upon the experiences of other communities in which such deleterious secondary effects have been discerned." *Ways v. City of Lincoln*, 331 F.3d 596, 599 (8th Cir. 2003) (citing *Farkas v. Miller*, 151 F.3d 900, 903 (8th Cir. 1998)); *Jake's, Ltd., Inc.*, 284 F.3d at 888 ("[A] city need not conduct its own studies to demonstrate that a proposed ordinance will serve to reduce adverse secondary effects, 'so long as whatever evidence the city relies upon is

reasonably believed to be relevant to the problem that the city addresses.'") (citing *Renton*, 475 U.S. at 51-52; *City of Erie v. Pap's A.M.*, 529 U.S. 277, 297 (2000); and *Young*, 427 U.S. at 55). To put it another way, "the city is not required to prove that a particular adult use creates secondary effects before regulating that use, so long as the city reasonably believes that the use is related to other uses that have been shown to cause secondary effects." *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 606 (8th Cir. 2001) (citing *Holmberg*, 12 F.3d at 143), *cert. denied*, 536 U.S. 904 (2002). However, "[t]his is not to say that a municipality can get away with shoddy data or reasoning." *Alameda Books, Inc.*, 535 U.S. at 438. In *Alameda Books*, the Supreme Court explained that the burdens upon the parties concerning the legitimacy of the municipality's reliance on "secondary effects" to justify its regulation are the following:

> The municipality's evidence must fairly support the municipality's rationale for its ordinance. If the plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. If the plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Alameda Books, Inc.*, 535 U.S. at 438-39.

Doctor John's contends that there is no legitimate connection between the regulation of "adult media" in the "sex shop" provisions of the January 2004 Amendments and the "secondary effects" feared by the City. This is a reiteration of Doctor John's mantra that it simply is not the kind of business that can produce "secondary effects." The City contends that it reasonably believed that a business fitting the definition of a "sex shop"

on the basis of a combination of "adult media" and one or more other categories of items, as defined in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004 A-2(m)(1), would have such "secondary effects."

The record at this point provides, at best, "shoddy data" in support of contentions that the January 2004 Amendments are based on some reasonable connection between the speech regulated by the Amendments and "secondary effects," that the City "reasonably believed" there was such a connection, and that the January 2004 Amendments are "narrowly tailored" to serve the purpose of addressing "secondary effects." The record simply does not support the contention that the "combination" provision—which requires only *one* item of "adult media" in combination of either "lingerie" or "sadomasochistic leather goods," where the combination exceeds ten percent of the business's stock-in-trade or floor area—has any reasonable "connection" to the regulation of "secondary effects." The City has not pointed to any part of its "voluminous" evidence that demonstrates any "secondary effects" from a business meeting this definition. FED. R. CIV. P. 56(e) (to defeat a motion for summary judgment, the opposing party must go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). Rather, the City's "voluminous" evidence makes an unwarranted leap of faith from evidence that some "sexually oriented businesses" have "secondary effects" to the conclusion that *any* business that is a "sex shop" based on whatever definition it pleases lawmakers to write has such "secondary effects."

More specifically, the City points to the assertion in excerpts from the APA Report that "[m]ixing lingerie, leather goods, and sexually oriented media or adding sex toys to the product mix of a retail outlet causes it to take on the image of selling sex, which makes it very different from a store that sells books or videos, some of which happen to be sexually oriented." Defendants' Appendix at 70. However, the City has not provided any portion of the APA Report demonstrating any empirical basis for such a conclusion. Instead, the cited conclusion in the APA Report appears to be based on a "survey" of *opinions* of property owners concerning what kinds of business "is a problem or [is] not good for your neighborhood," or "should not be in your neighborhood," or "adversely affects your ability to sell or rent your property," or has "affected your ability to hire or retain employees." *Id.* at 71. Self-reinforcing opinions about the effects of "adult entertainment businesses" are not the same as *data* demonstrating actual "secondary effects" of such businesses. Also, contrary to the City's contentions, the "combination" definition of a "sex shop" in the January 2004 Amendments is *not* the same as the definition used to analyze the results of the opinion survey. The APA Report, instead, defined "sex shops" as "includ[ing] a variety of sexually oriented goods, usually featuring sex toys, some media, and, in some cases, very racy lingerie, leather goods, and other accessories." *Id.* Conspicuous by their absence are any references in the APA Report to any percentages of such items, individually or in combination, and the pertinent "lingerie" and "leather goods" are not defined in the same way as in the Amendments.[9] In short, there is no reasonable basis on which to conclude that the APA Report demonstrates that

---

[9]The January 2004 Amendments do not even limit the "lingerie" in question to "very racy lingerie." The notion that a women's shop that sold "lingerie," or the "lingerie" department of a department store, would suddenly become a source of "secondary effects" on the basis of the sale of one item of "adult media" is absurd.

the "sex shop" definition in the January 2004 Amendments somehow addresses the "secondary effects" of "adult entertainment businesses," because there is no legitimate basis to believe that the APA Report demonstrates "secondary effects" of "sex shops" as defined in the APA Report, let alone as defined differently in the January 2004 Amendments. Nor could the City have reasonably believed that a "sex shop" as defined in the January 2004 Amendments would have "secondary effects" based merely on an unsupported opinion in a study.

Moreover, even supposing that there is, at some point, a genuine issue of material fact that there is a reasonable "connection" between the sale of a "combination" of "adult media" with either "lingerie" or "sadomasochistic leather goods" and the "secondary effects" attributable to other kinds of "adult entertainment businesses," the January 2004 Amendments are not "narrowly tailored" to address that "connection." In the context of "strict scrutiny" of a "content based" regulation, the enacting entity must show that the regulation "does not 'unnecessarily circumscrib[e] protected expression.'" *Republican Party of Minn. v. White*, 536 U.S. 765, 775-76 (2002) (quoting *Brown v. Hartlage*, 456 U.S. 45, 54 (1982).[10] The City cannot make the required showing as to the

---

[10]The Eighth Circuit Court of Appeals explained the "narrowly tailored" standard rather differently for purposes of "intermediate scrutiny" of a "content neutral" regulation:

> "'[T]he requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial interest that would be achieved less effectively absent the regulation' and the means chosen does not 'burden substantially more speech than is necessary to further' the city's content-neutral interest." *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997) (*Excalibur Group*) (quoting *Ward [v. Rock Against Racism]*, 491 U.S. [781,] 799, 109 S. Ct. 2746 [(1989)] (internal quotations omitted)), *cert. denied*, 522 U.S.

(continued...)

"combination" definition of a "sex shop" in the January 2004 Amendments, because that definition effectively bans *all* adult media from a business that also sells either "lingerie" or "sadomasochistic leather goods" exceeding ten percent of its stock-in-trade or floor area. The court is not aware of, and the City certainly has not identified, any study that suggests that the sale of a single item of adult media has engendered, or could engender, the "secondary effects" that the January 2004 Amendments purportedly were always intended to address. Therefore, the City cannot hide behind language in Supreme Court cases suggesting that "a city must have latitude to experiment, at least at the outset," with regulation of adult entertainment businesses, or that "very little evidence is required," *see Alameda Books, Inc.*, 535 U.S. at 428 (plurality opinion) (citing *Renton*, 475 U.S. at 51-52), when there is *no* evidence of "secondary effects" upon which to base the "experiment" in question.

Therefore, because the court finds, as a matter of law, that the January 2004 Amendments were "content based," Doctor John's is entitled to summary judgment to the effect that the "combination" provision of the definition of a "sex shop" in the January 2004 Amendments, now superseded, fails "strict scrutiny."

*iv.* ***Intermediate scrutiny***. In the alternative, the court concludes that, even if the January 2004 Amendments are "content neutral," those Amendments likewise fail "intermediate scrutiny" as to the "combination" definition of "sex shop," to the extent that the "combination" involves "adult media." "Intermediate scrutiny" requires the City to

---

[10](...continued)
1077, 118 S. Ct. 855, 139 L. Ed. 2d 755 (1998). *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1219 (8th Cir. 1998), *cert. denied*, 527 U.S. 1037 (1999). The Eighth Circuit Court of Appeals has also stated that "the regulation need not be the least restrictive means of serving the city's content-neutral interest." *Excalibur Group, Inc.*, 116 F.3d at 1221.

show that "the ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50; *see also Alameda Books, Inc.*, 535 U.S. at 434. Even though, as the City contends, "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest,'" *Alameda Books, Inc.*, 535 U.S. at 438, the court again finds that, as a matter of law, the City relied merely on "shoddy data or reasoning." *Id.*

Here, the court must agree that an interest in regulating "secondary effects" is "substantial." *See, e.g., Jake's, Ltd., Inc.*, 284 F.3d at 888 ("It is well-settled that a city's interest in preserving the quality of urban life and the character of its neighborhoods justifies zoning restrictions intended to minimize such effects.") (citing *Young*, 427 U.S. at 71 (plurality opinion)); *Excalibur Group, Inc.*, 116 F.3d at 1221 ("The question of whether the ordinance serves a significant governmental interest is easily resolved, because, as a matter of settled law, regulations aimed at minimizing the secondary effects of sexually oriented businesses serve a significant and substantial governmental interest.") (citing *Renton*, 475 U.S. at 50; *ILQ Invs., Inc.*, 25 F.3d at 1416; *Holmberg*, 12 F.3d at 143; and *Young*, 427 U.S. at 71 (plurality opinion)). The court also recognizes that the City has tried mightily to remedy the failing of the record at the preliminary injunction hearing, where the court found that the record was absolutely devoid of any evidence that the City even considered the need to exercise police powers to combat or limit "secondary effects," to the point that the City had cited no evidence fairly supporting such a rationale for its amendments. *Alameda Books, Inc.*, 535 U.S. at 438 (the municipality's initial burden is to point to evidence that fairly supports its rationale for the ordinance).

The critical question, on the motions for summary judgment, is whether the January 2004 Amendments were designed to serve the "substantial interest" identified by the City,

*i.e.*, the "secondary effects" of adult entertainment businesses. *Id.* ("intermediate scrutiny" requires a showing that the regulation was designed to serve a "substantial" governmental interest). The court recognizes, again, that "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51-52. Even so, the court finds, for purposes of "intermediate scrutiny" as it did for purposes of "strict scrutiny," that the evidence of "secondary effects" on which the City purportedly relied has no reasonable connection whatsoever to a store that is a "sex shop" only by virtue of selling a combination of a single item of "adult media" with either "lingerie" or "sadomasochistic leather goods," where the combination exceeded ten percent of the business's stock-in-trade or floor area. The City has not identified *any* portion of *any* study of actual "secondary effects" arising from such a business in any municipality, and the logic that such "secondary effects" could arise from such a business because they arise from totally different kinds of businesses is so painfully strained that it cannot be accepted. *Alameda Books, Inc.*, 535 U.S. at 438 (although "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest,' . . . [t]his is not to say that a municipality can get away with shoddy data or reasoning"). The present record shows that the City is relying on mere speculation regarding the potential for "secondary effects" of stores that would fit the "combination" definition of a "sex shop" on the basis of a combination of a single item of "adult media" with either "lingerie" or "sadomasochistic leather goods" to justify a purportedly "content neutral" ordinance regulating the sale of "adult media," if, indeed, the City was not simply targeting the content of the "adult media" in the Doctor John's store in Sioux City.

Nor can the City find any comfort in the rather different explanation of the scrutiny applicable to a purportedly "content neutral" regulation set forth in *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1219 (8th Cir. 1998), *cert. denied*, 527 U.S. 1037 (1999), and *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998). That test examines whether "'"the regulation promotes a substantial interest that would be achieved less effectively absent the regulation" and the means chosen . . . "burden substantially more speech than is necessary to further" the city's content-neutral interest.'" *Krantz*, 160 F.3d at 1219 (quoting *Excalibur Group, Inc.*, 116 F.3d at 1221, in turn quoting *Ward*, 491 U.S. at 799). The Eighth Circuit Court of Appeals has also stated that "the regulation need not be the least restrictive means of serving the city's content-neutral interest." *Excalibur Group, Inc.*, 116 F.3d at 1221. The January 2004 Amendments fail even this level of scrutiny. Because there is no showing that the "combination" provision of the definition of a "sex shop" in the January 2004 Amendments is effective at all in regulating "secondary effects," it cannot be shown that the substantial interest of regulating "secondary effects" would be achieved less effectively absent the regulation. *See id.* (first part of the test). Moreover, the regulation burdens "substantially more speech than necessary" to further the City's purported "content neutral" interest, because it effectively bans *all* adult media from a business that also sells either "lingerie" or "sadomasochistic leather goods" exceeding ten percent of its stock-in-trade or floor area.

Therefore, the "combination" definition of a "sex shop" in Sioux City Municipal Ordinance 2004-0004(A-2)(m)(1) was unconstitutional under the First Amendment as a matter of law to the extent that it defined a "sex shop" on the basis of a "combination" of merchandise including "adult media."

*v.*     ***Non-media provisions***.  The City's contention that a business could be a "sex shop" within the meaning of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) without selling any "adult media" does not save the ordinance from the possible violation of the First Amendment, because the First Amendment violation would remain if "adult media" were unconstitutionally regulated.  However, that argument does highlight the fact that some portions of the "combination" provision may *not* implicate the First Amendment, and therefore, could be separately viable.  Consequently, the court must consider whether or not there are genuine issues of material fact, under applicable law, as to the constitutional viability of a definition of a "sex shop" based on a "combination" that does not involve "adult media."

Here, the ordinance defined a "sex shop," in the alternative, based on a "combination" of "lingerie" and "sadomasochistic leather goods," where the "combination" exceeds ten percent of the store's stock-in-trade or floor area.  *See* SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) (defining a "sex shop" as a business selling "any two of the following categories:  (i) adult media, (ii) lingerie, or (iii) leather goods marketed or presented in a context to suggest their use for sadomasochistic practices," and the "combination" exceeds ten percent of the business's stock-in-trade or floor area).  Doctor John's asserts that such a definition of "sex shop" also violates the Constitution, because it violates a "substantive due process" right to "privacy."  The City counters that no decision recognizing such a "substantive due process" right to "privacy" has ultimately been affirmed.

The question of whether or not the sale of "sex toys" implicates a "substantive due process" right to "privacy" on a par with the First Amendment protection of free expression is intriguing.  However, the court finds it unnecessary to answer that question at this juncture, because there are genuine issues of material fact in the record as to

whether Doctor John's would have fallen within the definition of a "sex shop" based on sales of a combination of "lingerie" and "sadomasochistic leather goods" exceeding ten percent of the business's stock-in-trade or floor area.

Specifically, while the court acknowledges that there can be no dispute that Doctor John's currently stocks, and has always intended to stock, well in excess of ten percent of its stock-in-trade or floor area at its Sioux City store in "lingerie," neither the preliminary injunction record nor the summary judgment record clarifies the percentage of either stock-in-trade or floor area of the Doctor John's store in Sioux City that is devoted to "sadomasochistic leather goods." Similarly, there is a factual issue as to whether Doctor John's would have continued to sell *any* "sadomasochistic leather goods" at all, if its regulation as a "sex shop" hinged upon sales of a "combination" of such goods and "lingerie" (or "adult media"). Representatives of Doctor John's repeatedly stated that Doctor John's was willing to comply with existing ordinances, in order to open at its chosen location, before the City undertook its series of amendments. Ms. Bolton also testified at the preliminary injunction hearing that Doctor John's would be willing to adhere to any limitation imposed by the court or the City on the percentage of "adult" items that could be sold in the store at its present location. Consequently, there is a genuine issue of material fact as to whether or not the portions of this provision that did not involve "adult media" would even have applied to the Doctor John's store in Sioux City.

Therefore, neither party is entitled to summary judgment in its favor on the constitutionality of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) to the extent that the ordinance defined a "sex shop" on the basis of sales of a "combination" of *non-media* merchandise.

### E. The Two "Sex Toys" Definitions Of "Sex Shop"

#### 1.    The provisions in question

Also in dispute are the two definitions of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(2) and (m)(3), both of which were based on sale of what the court will describe, for shorthand purposes, as "sex toys." Those provisions were as follows:

> m.  "Sex Shop" means an establishment offering goods for sale or rent and that meets any of the followings tests:
> * * *
> (2)  More than 5 percent of its stock in trade consists of sexually oriented toys or novelties.
> (3)  More than 5 percent of its gross public floor area is devoted to the display of sexually oriented toys or novelties.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(2) & (m)(3). The ordinance also defined "sexually oriented toys or novelties" to mean "instruments, devices, or paraphernalia either designed as representations of human genital organs or female breasts, or designed or marketed primarily for use to stimulate human genital organs." *Id.* at (A-2)(n).

#### 2.    Arguments of the parties

The constitutionality of this provision again involves the parties' arguments about whether or not a "substantive due process" right to "privacy," on a par with the First Amendment right to free expression, is implicated by the ordinance. Again, intriguing as this question is, the court finds it unnecessary to answer it at this juncture, because there are genuine issues of material fact in the record as to whether the Doctor John's store in Sioux City would have fallen within either of the definitions of a "sex shop" based on sale of "sex toys."

### 3.    *Analysis*

The court recognizes that an affidavit of an investigator sent to the Doctor John's store by the City states that the investigator "find[s] that more than 5% of the gross public floor area is devoted to the display of sexually oriented toys or novelties as defined in the [January 2004 Amendments]" and that the investigator "estimate[s] that approximately 8% of the store's stock in trade, or inventory items, consists of sexually oriented toys or novelties." Defendants' Appendix (docket no. 56), Vol. I, Ex. 1, at 1. The court also recognizes that, inexplicably, Doctor John's did not submit any affidavit countering these estimates with specific estimates of its own concerning either percentages of stock-in-trade or retail floor space devoted to the display of "sex toys."

Even so, the court also notes that the record is silent as to how the City's investigator computed percentages of stock-in-trade for purposes of his affidavit or how representatives of Doctor John's computed such percentages in other contexts, whether by number of actual inventory items, by dollar value (wholesale or retail), by net or gross sales receipts, or by some other calculation. The investigator's failure to explain how he calculated percentage of stock-in-trade or floor area devoted to particular categories of items would be sufficient for a reasonable fact finder to reject his estimates entirely. The court also finds that there are genuine issues of material fact as to the percentages of stock-in-trade or floor area devoted to "sex toys" in the Doctor John's Sioux City store based on the photographs submitted by the parties and, again, by Ms. Bolton's testimony at the preliminary injunction hearing that Doctor John's would be willing to adhere to any limitation imposed by the court or the City on the percentage of "adult" items that could be sold in the store at its present location.

Because there are genuine issues of material fact as to whether or not the Doctor John's store would even have come within the "sex toys" definitions of "sex shops" in

Sioux City Municipal Ordinance 2004-0004(A-2)(m)(2) & (m)(3), the court need not reach the question of the constitutionality of those provisions. On the present record, neither party is entitled to summary judgment in its favor on the constitutionality of Sioux City Municipal Ordinance 2004-0004(A-2)(m)(2) or (m)(3), both of which based the definition of a "sex shop" on the sale of "sex toys."

### F. The Motion To Strike

On June 9, 2005, Doctor John's filed a motion (docket no. 67) to strike the supplemental appendix, containing expert materials, filed by the City with its reply. In support of this motion, Doctor John's contends that the City had made no mention of an expert witness report prior to the filing of the City's reply. Doctor John's contends that it is inappropriate to inject in this way an entirely new expert report and companion arguments, when Doctor John's does not have a fair opportunity to rebut the expert's evidence. Doctor John's also claims that it is inappropriate to file an unverified expert's report in support of a motion for summary judgment. In a response filed June 29, 2005 (docket no. 73), the City contends that the expert's report is an appropriate response to the arguments by Doctor John's that appeared for the first time in the response by Doctor John's to the City's motion for summary judgment. The City contends that Doctor John's could have sought additional time to respond to the expert's report. The City contends that the expert evidence included in its supplemental appendix is appropriate to respond to the criticism by Doctor John's of the City's evidence of "secondary effects." In a reply in support of its motion to strike, filed July 14, 2005 (docket no. 75), Doctor John's reiterates its contention that it is inappropriate for the City to inject new expert evidence and arguments in support of a *reply* to a summary judgment motion. Doctor John's also attacks the expert's evidence as too general to be of any use in the present dispute.

The motion to strike will be denied. The disposition of the cross-motions for summary judgment demonstrates that Doctor John's was not prejudiced by the City's inclusion in its reply of new expert evidence. Moreover, the extension of the deadline for discovery in this case leaves Doctor John's with ample opportunity to respond to the expert's evidence at the time of trial.

## III. CONCLUSION

The present record allows the court to resolve only some of the issues asserted by the parties in their cross-motions for summary judgment concerning now superseded provisions of the City's ordinances relating to "adult entertainment businesses." Contrary to the City's contentions, the court finds that the claims of Doctor John's that the pertinent provisions of the ordinances are unconstitutional are not moot, nor does Doctor John's lack standing to assert those claims. The court also concludes that, as a matter of law, the "combination" definition of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) was unconstitutional under the First Amendment to the extent that it defined a "sex shop" on the basis of a "combination" of merchandise including "adult media." The City has utterly failed to show, or to generate a genuine issue of material fact, that a "sex shop" so defined would have the "secondary effects" upon which it relies to justify the ordinance.

On the other hand, neither party is entitled to summary judgment in its favor on the constitutionality of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) to the extent that the ordinance defined a "sex shop" on the basis of sales of a "combination" of non-media merchandise. Nor is either party entitled to summary judgment in its favor on the constitutionality of SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(2) or (m)(3), which base the definition of a "sex shop" on the sale of "sex toys." Genuine

issues of material fact exist as to whether the Doctor John's store in Sioux City would have fallen within these provisions. Therefore, it is unnecessary for the court to determine, at this time, whether or not these provisions, which may or may not implicate "substantive due process" rights to "privacy" on a par with First Amendment rights to free expression implicated by the regulation of "adult media," are constitutional.

The motion by Doctor John's to strike the City's Supplemental Appendix will also be denied, because Doctor John's was not prejudiced by inclusion of the challenged material in the Supplemental Appendix and Doctor John's now has an adequate opportunity to respond to that material.

THEREFORE,

1.      The December 20, 2004, Motion For Partial Summary Judgment filed by plaintiff Doctor John's (docket no. 48) is **granted in part and denied in part**, to the extent explained herein. Pursuant to this disposition, it is further ordered as follows:

a.      The court **finds and declares** that the "combination" definition of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) was unconstitutional under the First Amendment, as a matter of law, to the extent that it defined a "sex shop" on the basis of a "combination" of two or more categories of items including "adult media"; and

b.      The City of Sioux City, and any of its subdivisions or administrative departments, agents, or officials, are hereby **permanently enjoined** from pursuing, instituting, continuing, or completing any and all enforcement actions or otherwise barring business activities of any business on the basis of the definition of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1), or any subsequently enacted ordinance, to the extent that the definition of a "sex shop" is

58

based on the "combination" of any two or more categories of items including "adult media."

2.     The February 22, 2005, Motion For Summary Judgment filed by the defendant City (docket no. 55) is **denied in its entirety**.

3.     The June 9, 2005, Motion To Strike Defendants' Supplemental Appendix filed by plaintiff Doctor John's (docket no. 67) is **denied in its entirety**.

4.     To the extent that its provisions have not been made permanent, pursuant to paragraph (1)(b) above, the Preliminary Injunction entered in this case on February 26, 2004, **shall continue in full force and effect**.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2005.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA