# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DOCTOR JOHN'S, INC., an Iowa
Corporation,

        Plaintiff,

vs.

CITY OF SIOUX CITY, IOWA,

        Defendant.

No. C 03-4121-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT; THE DEFENDANT'S MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT ON OCTOBER 2003 AND JANUARY 2004 ORDINANCES; THE DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT RE: NON-MEDIA PORTIONS OF ORDINANCE 2004-0004 AND CONSTITUTIONALITY OF ORDINANCE 2004-1061; and THE PLAINTIFF'S MOTION TO BIFURCATE DAMAGES**

---

## TABLE OF CONTENTS

**I. INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 4
    **A. Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *1. Claims by Doctor John's* . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *2. The motion for a preliminary injunction* . . . . . . . . . . . . . . . 5
        *3. The first round of summary judgment motions* . . . . . . . . . . . 5

   **4.**  *Subsequent amendments and motions* . . . . . . . . . . . . . . . . . . 6
   **5.**  *The first summary judgment ruling* . . . . . . . . . . . . . . . . . . 7
   **6.**  *The second round of summary judgment motions* . . . . . . . . 8
  **B.** *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   **1.**  *The Doctor John's store in Sioux City* . . . . . . . . . . . . . 10
   **2.**  *Sioux City zoning ordinances and amendments* . . . . . . . . 13
     **a.**  *Pre-existing ordinances* . . . . . . . . . . . . . . . . . . . . . 13
     **b.**  *The "Moratorium" Amendment* . . . . . . . . . . . . . . 15
     **c.**  *The January 2004 Amendments* . . . . . . . . . . . . . . 16
       **i.**  *Amended Ordinance 2004-0004* . . . . . . . . . . 16
       **ii.**  *Amended Ordinance 2004-0024* . . . . . . . . . . 19
       **iii.**  *Background to the summary judgment motions
          on the January 2004 Amendments* . . . . . . . . 20
     **d.**  *The December 2004 Amendments* . . . . . . . . . . . . . 22
       **i.**  *Amended Ordinance 2004-1059* . . . . . . . . . . 23
       **ii.**  *Amended Ordinance 2004-1060* . . . . . . . . . . 26
       **iii.**  *Amended Ordinance 2004-1061* . . . . . . . . . . 29

**II. *LEGAL ANALYSIS*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
  **A.** *Standards For Summary Judgment And Reconsideration* . . . . . . . . 31
  **B.** *Issues Relating To The January 2004 Amendments* . . . . . . . . . . . . 34
   **1.**  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 35
   **2.**  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
     **a.**  *Constitutionality issues* . . . . . . . . . . . . . . . . . . 38
       **i.**  *Did the "media" provisions satisfy the
          applicable level of scrutiny?* . . . . . . . . . . . . 38
       **ii.**  *Were the "non-media" provisions independently
          constitutional?* . . . . . . . . . . . . . . . . . . . . . 42
     **b.**  *Applicability issues* . . . . . . . . . . . . . . . . . . . . . 50
     **c.**  *Damages issues* . . . . . . . . . . . . . . . . . . . . . . . . 53
   **3.**  *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
  **C.** *The Motion To Bifurcate Damages Issues* . . . . . . . . . . . . . . . . . 56
   **1.**  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 56
   **2.**  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
  **D.** *Issues Relating To The December 2004 Amendments* . . . . . . . . . . . 60
   **1.**  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 60
   **2.**  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

2

       *a.*     **The "adult bookstore or adult video store"**
            **provisions** . . . . . . . . . . . . . . . . . . . . . . . . . . 64
           *i.*     **"Constitutionality" of the provisions** . . . . . . . . 65
           *ii.*    **"Applicability" of the provisions** . . . . . . . . . 73
       *b.*     **The "sexual device shop" provisions** . . . . . . . . . . . 74
           *i.*     **The "equal protection" challenge**. . . . . . . . 76
           *ii.*    **The "substantive due process" challenge** . . . . . 79
       *c.*     **The licensing "civil disability" provision** . . . . . . . . . . 80
           *i.*     **"Constitutionality" of the provision** . . . . . . . . 81
           *ii.*    **"Applicability" of the provision** . . . . . . . . . . . 83

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

S ince late 2003, the plaintiff, a putative "adult entertainment business," and the defendant, the City of Sioux City, Iowa, have been embroiled in a dispute over the constitutionality and applicability of a string of amendments to city zoning ordinances regulating the location of "adult entertainment businesses" within the City's limits. The initial amendments to the pertinent ordinances were passed just in time to bar the plaintiff's new store from opening in a developing retail area near the southern edge of the City. Only a preliminary injunction issued by this court permitted the plaintiff to commence business at its chosen location. The court subsequently granted in part and denied in part the plaintiff's request to make the preliminary injunction permanent, denied the City's motion for summary judgment in its entirety, and directed that the preliminary injunction previously issued continue in full force and effect, to the extent that its provisions had not been made permanent. As trial approaches, the plaintiff seeks summary judgment in its favor on its claims that subsequent amendments to the pertinent City

ordinances are unconstitutional and unenforceable against it, while the City seeks reconsideration of parts of the court's prior summary judgment ruling as to the earlier round of amendments, summary judgment in its favor on the constitutionality of provisions of one of those earlier amendments that purports to regulate "adult entertainment businesses" on the basis of "non-media" inventory, and summary judgment in its favor on the constitutionality of one of its later amendments that imposes certain licensing requirements for "adult entertainment businesses." The court must decide which, if any, of the many issues presented can be resolved prior to trial.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

#### 1. Claims by Doctor John's

Plaintiff Doctor John's, Inc. (Doctor John's), a putative "adult entertainment business," filed its original Complaint in this action on December 9, 2003, against the City of Sioux City, Iowa (the City), and Paul Eckert, in his official capacity as Sioux City's City Manager, challenging Sioux City's municipal ordinances imposing a moratorium on new "adult entertainment businesses" enacted in October 2003 and amended in November 2003. On January 20, 2004, Doctor John's filed an Amended Complaint, and on February 10, 2004, filed a Second Amended Complaint challenging further amendments to Sioux City's zoning ordinances concerning "adult entertainment businesses," enacted in January 2004 (the January 2004 Amendments). In its Second Amended Complaint, Doctor John's alleged that these ordinances violated its right to free expression protected by the First Amendment to the United States Constitution and constituted prior restraints on free expression; failed to allow reasonable alternative means of expression; resulted in a taking of its business property without due process of law; infringed First Amendment freedoms

in a manner greater than necessary to further any valid interests of the City; lacked adequate procedural safeguards and failed to provide for prompt judicial review; and denied equal protection. The City denied these claims.

### 2. *The motion for a preliminary injunction*

On January 5, 2004, shortly after filing its original Complaint, Doctor John's filed a Motion For Preliminary Injunction in which it requested that the court enjoin the City from enforcing the temporary moratorium on adult entertainment businesses enacted in October 2003. The moratorium had expired by the time of the evidentiary hearing on the motion for preliminary injunction on February 20, 2004. At the evidentiary hearing, however, the court allowed Doctor John's to amend orally its Motion For Preliminary Injunction to seek an injunction against enforcement of the amended "adult entertainment business" ordinances enacted at the expiration of the moratorium in January 2004 (the January 2004 Amendments).

In a published ruling, *Doctor John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022 (N.D. Iowa 2004) (*Doctor John's I*), filed February 26, 2004, the court entered a preliminary injunction enjoining the City from pursuing, instituting, continuing, or completing any and all enforcement actions pursuant to the municipal code employing the definition of "adult entertainment business" in the January 2004 Amendments, until such time as the preliminary injunction was dissolved or vacated, by this court or a reviewing court. With the exception of certain provisions subsequently made permanent, the preliminary injunction has remained in effect until this time.

### 3. *The first round of summary judgment motions*

Some ten months after the court's preliminary injunction ruling, on December 20, 2004, Doctor John's filed a Motion For Partial Summary Judgment (docket no. 48) in which Doctor John's asserted that the January 2004 Amendments are facially invalid,

because they violate the free expression guarantees of the First Amendment to the United States Constitution. On February 22, 2005, the City filed its own Motion For Summary Judgment (docket no. 55) and a combined Brief In Resistance To Plaintiff's Motion For Summary Judgment And In Support Of Defendants' Motion For Summary Judgment (docket no. 56). In its own motion and in resistance to the motion by Doctor John's, the City asserted that challenges to the January 2004 Amendments were "mooted," because further amendments repealing the January 2004 Amendments were enacted in December 2004 (the December 2004 Amendments). In the alternative, if the challenges to the January 2004 Amendments were not "mooted," the city argued that Doctor John's would have been a "sex shop" under the "sex toys" definitions in the January 2004 Amendments, which did not implicate First Amendment protections, and that the "combination" provision of the January 2004 Amendments involving "adult media" was constitutional under the applicable level of scrutiny for regulation of expression, which the City contended was "intermediate scrutiny," so that Doctor John's could have been lawfully excluded from its chosen location under those provisions.

### 4. *Subsequent amendments and motions*

As mentioned above, in December 2004, the City enacted additional amendments to its ordinances redefining "adult entertainment businesses" and repealing the January 2004 Amendments. Those amendments are referred to herein, for the sake of convenience, as the December 2004 Amendments. Doctor John's raised challenges to the December 2004 Amendments in its *Third* Amended Complaint (improperly denominated its *Second* Amended Complaint), filed June 20, 2005 (docket no. 70), and in its August

22, 2005, Second Motion For Summary Judgment (docket no. 76).◘[1] Disposition of the Second Motion For Summary Judgment relating to the December 2004 Amendments was held in abeyance, however, pending further discovery. *See* Order of September 1, 2005 (docket no. 78). Therefore, only the issues pertaining to the January 2004 Amendments were before the court at the time of its ruling on the first round of summary judgment motions.

### 5.     *The first summary judgment ruling*

The court was occupied during April, May, and June of 2005 with the trial of the second of two death-penalty cases on its docket and was thereafter occupied with the backlog of other criminal cases with speedy trial deadlines. Eventually, the court heard oral arguments on the first round of summary judgment motions in this case on September 15, 2005, and entered a lengthy ruling on those motions on September 28, 2005. *See Doctor John's, Inc. v. City of Sioux City, Iowa*, 389 F. Supp. 2d 1096 (N.D. Iowa 2005) (*Doctor John's II*). In that ruling, the court granted in part and denied in part the

---

[1]In the Amended Complaint filed June 20, 2005 (docket no. 70), Doctor John's continued to identify City Manager Paul Eckert, in his official capacity, as a defendant in this action in the caption, but ceased identifying him as a party in the body of the Complaint and ceased pleading any conduct on his part as the basis for relief. No Answer has ever been filed by Mr. Eckert, separately or in conjunction with the City, and the first Answer filed by any defendant, the March 9, 2004, Answer To Amended Complaint (docket no. 41) was filed only by the City of Sioux City. At oral arguments on the motions presently before the court, Doctor John's stated that it understood the court to have stricken claims against Mr. Eckert during the preliminary injunction hearing, but the court noted that there had been opportunities for Doctor John's to demonstrate that it had claims against him in subsequent amendments to its Complaint. Doctor John's then represented that it did not intend to attempt to do so. Under the circumstances, the court concludes that Mr. Eckert has been effectively dropped from this lawsuit by voluntary dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

December 20, 2004, Motion For Partial Summary Judgment filed by Doctor John's (docket no. 48). More specifically, the court found and declared that the "combination" definition of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1) was unconstitutional under the First Amendment, as a matter of law, to the extent that it defined a "sex shop" on the basis of a "combination" of two or more categories of items including "adult media." Consequently, the court permanently enjoined the City of Sioux City, and any of its subdivisions or administrative departments, agents, or officials, from pursuing, instituting, continuing, or completing any and all enforcement actions or otherwise barring business activities of any business on the basis of the definition of a "sex shop" in SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(1), or any subsequently enacted ordinance, to the extent that the definition of a "sex shop" is based on the "combination" of any two or more categories of items including "adult media." The court also denied in its entirety the City's February 22, 2005, Motion For Summary Judgment filed by the defendant City. Finally, the court directed that, to the extent that provisions of the court's February 26, 2004, preliminary injunction had not been made permanent by its ruling, that preliminary injunction would continue in full force and effect.

### 6. *The second round of summary judgment motions*

The parties eventually completed discovery pertaining to issues raised in the Second Motion For Summary Judgment filed by Doctor John's, that is, issues pertaining to the December 2004 Amendments to the City's "adult entertainment businesses" ordinances, and filed a proposed scheduling order for disposition of that motion, deadlines for any other dispositive motions, and a proposed date for trial. Trial was (and remains) set to begin on September 11, 2006.

Before the briefing was completed on the Second Motion For Summary Judgment filed by Doctor John's, Doctor John's filed its January 12, 2006, Motion To Bifurcate

Damages (docket no. 94). The City resisted that motion on January 16, 2006 (docket no. 95), and Doctor John's filed a reply in further support of that motion on January 20, 2006 (docket no. 104). The court, however, deemed the issues in the motion to bifurcate to be largely contingent on the disposition of the Second Motion For Summary Judgment by Doctor John's and any cross-motion for summary judgment that the City might file. Therefore, the motion to bifurcate remains pending at this time.

On April 12, 2006, the City filed a Motion To Reconsider Memorandum Opinion And Order Regarding Cross-Motions For Summary Judgment On October 2003 And January 2004 Ordinances (docket no. 115), and its Second Motion For Summary Judgment Re: Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061 (docket no. 117), and accompanied these motions with a combined brief that also incorporated the City's resistance to the Second Motion For Summary Judgment by Doctor John's. On May 25, 2006, Doctor John's filed a combined Memorandum In Opposition To Defendant's Motion For Summary Judgment And Reply Memorandum In Support Of Plaintiff's Second Motion For Summary Judgment (docket no. 122). On June 27, 2006, the City filed its Reply Brief In Support Of Motion To Reconsider And Second Motion For Summary Judgment (docket no. 129). Finally, on June 28, 2006, Doctor John's filed certain supplements to its briefing on the cross-motions for summary judgment (docket nos. 130 & 131).

By order dated June 23, 2006 (docket no. 126), the court denied a motion to continue trial by Doctor John's and set oral arguments on the pending motions for July 6, 2006. At those oral arguments, Doctor John's was represented by W. Andrew McCullough of McCullough and Associates, L.L.C., in Midvale, Utah, who argued the motions, and Brian B. Vakulskas of Vakulskas Law Firm, P.C., in Sioux City, Iowa. The City of Sioux City was represented by Scott D. Bergthold of Chattanooga, Tennessee, who

argued the motions, and by Assistant Sioux City Attorney Connie E. Anstey. In the course of the hearing, the court afforded the parties the opportunity to submit additional authority on certain issues by subsequent letter. Both parties submitted such letters. The motions presently before the court are now fully submitted.

### B. Factual Background

The court will reprise here some of the factual background set forth in its prior rulings, and will also amplify its statement of the facts with additional facts drawn from the record provided by the parties in support of the second round of summary judgment motions and the City's motion to reconsider. As in its prior rulings, however, the court will not attempt a dissertation of undisputed and disputed facts, but only a statement of sufficient facts to put in context the parties' arguments concerning their cross-motions for summary judgment and the City's motion to reconsider. For example, the court will set aside, for the moment, the parties' various contentions concerning percentage of inventory and sales receipts attributable to certain kinds of items in the Doctor John's store in Sioux City, Iowa, until those issues become pertinent to the court's disposition of issues presented in the parties' motions.

### 1. The Doctor John's store in Sioux City

At some time in the fall of 2003, Doctor John's leased property with approximately 6,000 square feet of retail space located at 3507 Singing Hills Boulevard, Sioux City, Iowa, for one of its stores, its first such store in Iowa. The property leased by Doctor John's for its Sioux City store is in a relatively new and still developing commercial area across from a Wal-Mart, adjacent to a strip mall, a chiropractor's office, and a nail salon, and near various restaurants, bars, and motels, a new car dealership, a minor league baseball stadium, a park with little league or softball fields, a bowling alley, and an ice-

skating rink.   The store is located in an area zoned as General Business-Commercial Planned Development ("BG-C") under the Sioux City Municipal Code.   That is, it is in a General Business ("BG") zone, with a Commercial Planned Development Overlay ("-C").

As in its stores in other states, Doctor John's intended to sell at its Sioux City store a variety of merchandise, including primarily lingerie, swim wear, women's shoes, lotions, and oils, as well as videos (both "adult" and otherwise), games, novelty items, and "marital aids" or "adult toys," including, for example, vibrators, "dildos," "masturbation toys," and blow up dolls (some described as "anatomically correct").   Doctor John's has maintained throughout this litigation that its stores, in Sioux City and elsewhere, sell a variety of products designed to appeal to couples who wish to enhance their love lives. Consequently, Doctor John's has opined that it is more properly described as a "romance shop" than a "sex shop," and has asserted that, unlike what is typically identified as an "adult entertainment business," it caters primarily to women rather than to men. Nevertheless, Doctor John's has admitted that a majority of the customers of its Sioux City store have still been male, ranging from as high as 65% to as low as 53% of the store's customers, depending upon who is doing the counting and during what time frame.

Prior to setting up its store in Sioux City, Doctor John's representatives had some contact with the City Attorney concerning zoning requirements for the intended location of that store, in the course of which Doctor John's representatives indicated a willingness to adhere to (or to avoid application of) then-existing ordinances defining and limiting the location of "adult entertainment businesses" by modifying or limiting its inventory.   Before Doctor John's could complete preparations to open its store in Sioux City, however, Sioux City's zoning requirements for "adult entertainment businesses" underwent significant amendment (including the January 2004 Amendments, described in more detail below).

Those amendments prevented Doctor John's from opening its store at its chosen location. The amendments also prompted Doctor John's to file this lawsuit and to seek the preliminary injunction mentioned above. After delays caused by the City's enforcement of its amended zoning ordinances, Doctor John's opened its Sioux City store in late February or early March 2004 pursuant to the court's preliminary injunction enjoining enforcement of the January 2004 Amendments.

The court has observed in its prior published rulings in this case that the Doctor John's store in Sioux City is in a handsome freestanding building with an interior display of swimsuits and lingerie that dominates the first impression of the store. This merchandise is presented very much in the same manner that it would be in most national brand name clothing stores, which have become ubiquitous at malls across urban and suburban America. Thus, the first impression of the store is a far cry from the first image that most people would likely have of an "adult book store" or "sex shop." There is nothing seedy about the neighborhood, store building, or store front. In fact, from a quick drive-by, one would likely assume that the business was a rather upscale retail store for women's clothing and accessories. There are no "adult" signs or banners proclaiming "peep shows," "live entertainment booths," "XXX movies," "live models," "adult massage," or any of the other tasteless come-ons all too familiar from adult entertainment stores that exist in virtually every American city of any size and which one may find scattered along interstates and highways even in rural America.

Minors are not admitted to any Doctor John's stores, because as a representative of Doctor John's testified at the preliminary injunction hearing, Doctor John's "d[oesn't] believe that children should be in a store that carries adult material." The parties do not dispute that Doctor John's has actually enforced the "no minors" rule at the Sioux City store.

## 2.    *Sioux City zoning ordinances and amendments*◻[2]

### a.    *Pre-existing ordinances*

Sioux City Municipal Code 25.56.010, which has not been amended during the period of interest in this litigation, states the purpose of a General Business ("BG") Zone, such as the one in which Doctor John's Sioux City is located, to be the following:

> The BG zone is intended to provide business locations for retail, service and wholesale uses serving a city-wide clientele. The zone is intended to be located in areas characterized by good accessibility, including those areas which are heavily exposed to automobile traffic.

SIOUX CITY MUNICIPAL CODE 25.56.010. The Commercial Planned Development Overlay Zone ("-C") does not generally change the permitted uses in a BG zone:

> The permitted uses, permitted accessory uses and the permitted conditional uses shall be the same as the zone upon which the -C zone is overlaid, except that this range of uses may be reduced by the terms of an approved planned development concept plan or an approved planned development site plan if no concept plan is required.

SIOUX CITY MUNICIPAL CODE 25.74.212. Principal uses permitted in a BG zone are designated in Sioux City Municipal Code 25.56.020. Sioux City Municipal Code 25.56.030 expressly prohibits certain uses in a BG zone, however, including, *inter alia*, the following:

> 5.    Adult entertainment businesses, as defined in chapter 25.04 of this title. All nonconforming uses in the BG business zone may continue in operation under the provisions of Chapter 25.98 of the municipal code. All

---

[2]Unless otherwise specified, the court has relied on previous submissions to the record for the text of the original zoning ordinances and the various amendments to those ordinances at issue here.

permits required herein shall be applied for within thirty days from the effective date of the ordinance codified in this chapter;

6.    All uses not specifically enumerated as permitted uses in the BG zone are prohibited, subject to the right, set forth in Subchapter VII of Chapter 25.12, of an applicant to seek use interpretation by the director of building inspection.

SIOUX CITY MUNICIPAL CODE 25.56.030.

Prior to October 27, 2003, "adult entertainment businesses"—which are banned from a general commercial zone, such as the zone where Doctor John's has since opened its Sioux City store—were defined by the Sioux City Municipal Code as follows:

> [B]usinesses which, as a part of or in the process of delivering goods and services, displays to its patrons specified sexual activities or specified anatomical areas in printed form or through any form of photographic medium or by use of male or female models. The following are examples of adult entertainment businesses but the list is not to be considered exclusive: adult book stores; adult motion picture theaters; adult video stores, model studios, introductory services, and escort service bureaus.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2). Prior to October 27, 2003, "adult book store" was defined as follows:

> [A]n establishment having as a substantial portion of its stock in trade any of the following: books, periodicals, or magazines for sale when said stock in trade is distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2)(a). Similarly, prior to October 27, 2003, an "adult video store" was defined as follows:

> [A]n establishment which, having as a substantial portion of its video inventory for sale or rental for either on-premises or off-premises viewing, has films and/or videotapes having as a dominant theme material distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. Such inventory must be offered in an area segregated by a gate or door and monitored and indicated as being off-limits to minors.

SIOUX CITY MUNICIPAL CODE 25.04.020(A-2)(c). Under this ordinance, "substantial" was defined to mean "more than twenty-five percent of the book, periodical, magazine or video inventory are [sic] distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas." *Id.* at 25.04.02 (A-2)(i). Thus, this ordinance defined "adult entertainment businesses" by application of a "25-percent rule," under which businesses with twenty-five percent or more of their media stock-in-trade in "adult" media were "adult entertainment businesses," and consequently, were banned from general commercial zones of Sioux City.

### b. The "Moratorium" Amendment

Once City officials got wind of the intention of Doctor John's to open a store in Sioux City, the City's zoning requirements for "adult entertainment businesses" underwent a series of amendments. The first such amendment was the "Moratorium" Amendment passed on October 27, 2003, Ordinance 2003-000953, which imposed a moratorium on the opening of any "adult" businesses up to and including January 5, 2004. In a newspaper article published November 11, 2003, the City Attorney, James Abshier, was quoted as saying, "What prompted [the moratorium] was some discussion I had with Doctor John's representatives" in which those representatives "told me they would be happy to live with the 25 percent limitation instead of stocking their business with all adult items." Plaintiff's

Appendix To [First] Summary Judgment Motion (docket no. 48-2) at 61-62 (Plaintiff's Complaint, Exhibit C). Similarly, a "Request For City Council Action" from Mr. Abshier, dated November 10, 2003, indicates that Doctor John's had represented that its store would comply with the "25-percent rule" imposed by the existing ordinances and suggested that a moratorium would be appropriate to "preserve the integrity of the review process." *Id.* at 59-60 (Plaintiff's Complaint, Exhibit B). The "Moratorium" Amendment itself indicates that it was based on the City Council's findings that it had been advised and believed that the existing ordinance was "incomplete and inadequate in that it fails to regulate all aspects of the adult entertainment business," that the existing ordinance inadequately regulated the locations at which adult entertainment businesses might locate, and that it was in the public interest to study zoning regulations to ensure their effectiveness, validity, and constitutionality. Defendants' [First] Summary Judgment Appendix (docket no. 14) at 21. Ordinance 2003-000953 was amended on November 10, 2003, by Ordinance 2003-000985, but that amendment did not alter the "sunset" date of January 5, 2004, for the moratorium.

### c. The January 2004 Amendments

At the end of the moratorium period, the City Council again made significant amendments to its zoning ordinances with regard to adult entertainment businesses, consisting of the amendments identified herein for the sake of convenience as the January 2004 Amendments. Unlike the "Moratorium" Amendment, the January 2004 Amendments did not include any statement of findings by the City Council or any explanation of the impetus or rationale for those Amendments.

*i.* ***Amended Ordinance 2004-0004***. On January 5, 2004, the "sunset" date for the moratorium, the City Council adopted Ordinance 2004-0004, Section 1 of which provides, in pertinent part, as follows:

A-2 "Adult Entertainment Business" means businesses which as a part of or in the process of delivering goods and services displays to its patrons specified sexual activities, specified anatomical areas through the use of adult media or male or female models, or offers for sale sexually oriented toys or novelties. The following are examples of adult entertainment business [sic] but the list is not to be considered exclusive: adult media store, adult motion picture theater, adult internet store, a sex shop, a video-viewing booth, a lingerie modeling studio or model studio.

a. "Adult Internet Store" means a store that offers its patrons with or without charge a computer with internet access for the purpose of accessing internet sites or that permits patrons to access internet sites that are characterized as displaying hard-core material or specified sexual activities.

b. "Adult Media" means magazines, books, videotapes, movies, slides, cd-roms or other devices used to record computer images, or other media that are distinguished or characterized by their emphasis on matter depicting, describing, or relating to hard-core material.

c. "Adult Media Store" means an establishment that rents and /or sells media, and that meets any of the following three tests:

(1) 25 percent or more of the gross public floor area is devoted to adult media.

(2) 25 percent or more of the stock-in-trade consists of adult media.

(3) It advertises or holds itself out in any forum as "XXX," "adult," "sex," or otherwise as a sexually oriented business other than an adult media store, or adult motion picture theater.

d. "Adult Motion Picture Theater" means an establishment emphasizing or predominantly showing hard core material.

e. "Establishment" means any business regulated by this title.

f.  "Gross Public Floor Area" means the total area of the building accessible or visible to the public, including showrooms, motion picture theaters, motion picture arcades, service areas, behind-counter areas, storage areas visible from such other areas, restrooms (whether or not labeled "public"), areas used for cabaret or similar shows (including stage areas), plus aisles, hallways, and entryways servicing such areas.

g.  "Hard-core Material" means media characterized by sexual activity that includes one or more of the following: erect male organ; contact of the mouth of one person with the genitals of another; penetration with a finger or male organ into any orifice in another person; open female labia; penetration of a sex toy into an orifice; male ejaculation; or the aftermath of male ejaculation.  Hard core material also means media characterized by the display of specified anatomical areas or specified sexual activities.

. . .

j.  "Media" means anything printed or written, or any picture, drawing, photograph, motion picture, film, videotape or videotape production, or pictorial representation, or any electrical or electronic reproduction of anything that is or may be used as a means of communication.  Media includes but shall not necessarily be limited to books, newspapers, magazines, movies, videos, sound recordings, cd-roms, other magnetic media, and undeveloped pictures.

. . .

m.  "Sex Shop" means an establishment offering goods for sale or rent and that meets any of the followings tests:

(1)  The establishment offers for sale items from any two of the following categories:

(i)  adult media

(ii)  lingerie, or

(iii)  leather goods marketed or presented in a context to suggest their use for sadomasochistic practices;

and the combination of such items constitutes more than 10 percent of its stock in trade or occupies more than 10 percent of its floor area.

(2) More than 5 percent of its stock in trade consists of sexually oriented toys or novelties.

(3) More than 5 percent of its gross public floor area is devoted to the display of sexually oriented toys or novelties.

n. "Sexually Oriented Toys or Novelties" means instruments, devices, or paraphernalia either designed as representations of human genital organs or female breasts, or designed or marketed primarily for use to stimulate human genital organs.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0004.◼[3] Perhaps the most significant changes from the pertinent ordinances in force prior to October 2003 are the addition of the definition of "sex shop" in subsection (m) and the definition of "sexually oriented toys or novelties" in subsection (n), which have no correlates in earlier versions of the ordinance.

*ii.* ***Amended Ordinance 2004-0024.*** On January 12, 2004, the City Council adopted Ordinance 2004-0024, which amended a subsection of Ordinance 2004-0004 and formally repealed the prior moratorium on "adult entertainment businesses," which had expired on January 5, 2004. The amended ordinance provides as follows:

Section 1: Subsection 25.04.020(A-2)(c) of the Sioux City Municipal Code is amended to read as follows:

c. "Adult Media Store" means an establishment that rents and/or sells media, and that meets any of the following three tests:

(1) 25 percent or more of the gross public floor area is devoted to adult media.

---

[3]As was the case in prior published rulings in this case, whenever the court could find in the record signed and certified copies of the ordinances in question, the court has relied on and cited to those signed and certified copies, whether or not they were submitted or resubmitted in support of the motions presently pending before the court.

> (2) 25 percent or more of the *media* stock-in-trade consists of adult media.
>
> (3) It advertises or holds itself out in any forum as "XXX," "adult," "sex," or otherwise as a sexually oriented business other than an adult media store, or adult motion picture theater.

SIOUX CITY MUNICIPAL ORDINANCE 2004-0024, Attachment "A" to Defendants' Supplemental Brief (docket no. 23) (emphasis added). Thus, ordinance 2004-0024 clarified the twenty-five percent limitation on adult media in the definition of an "adult media store" by inserting the word "media" before "stock-in-trade" in Section 1(c)(2), so that the definition would be triggered at 25 percent of the "*media* stock-in-trade," not 25 percent of *all* stock-in-trade.

*iii.* ***Background to the summary judgment motions on the January 2004 Amendments***. Almost completely absent from the preliminary injunction record was evidence of the kind that the City submitted in the course of litigating the first round of summary judgment motions in the City's attempt to demonstrate that both citizens and City Council members had become concerned about the "secondary effects" of "adult entertainment businesses," including Doctor John's, during the fall of 2003 and winter of 2003-2004. The "secondary effects" the City identified were negative impacts on surrounding businesses, neighborhoods, property values, and crime. Doctor John's has continually disputed the suggestion that its store in Sioux City has or could produce any such "secondary effects."

What was also entirely absent from the preliminary injunction record was evidence that the City's decisionmakers considered any such materials concerning the "secondary effects" of "adult entertainment businesses" in the course of drafting, debating, and passing the "Moratorium" Amendment and the January 2004 Amendments. In the course

20

of litigating the first round of summary judgment motions, however, the City contended that the decisionmakers did consider such materials, pointing to affidavits of various City Council members. The City also contended that the January 2004 Amendments are modeled on, indeed almost verbatim copies from, suggested ordinances in an American Planning Association Planning Advisory Service Report (The APA Report) by Eric Camina Kelly and Connie Cooper, both of whom are former presidents of the American Planning Association (APA).

Almost none of the material submitted by the City in the course of litigating the first round of summary judgment motions was information about any such "adult entertainment businesses" or "secondary effects" of such businesses *in Sioux City, Iowa.* Rather, the information submitted was studies, incident reports, and expert opinions relating to "adult entertainment businesses" and "secondary effects" in *other* cities. The exceptions included three affidavits by an investigator, Ray Matousek, hired by the City to "observe activities" at four "adult" businesses in Sioux City, Iowa. Those "adult" businesses did not include the Doctor John's store at the center of this controversy, however. The City also submitted two affidavits of other persons sent to the Doctor John's store in Sioux City, Iowa, both on February 17, 2005, concerning their estimates about stock-in-trade, accompanied by photographs. Defendants' Appendix To [First] Motion For Summary Judgment And In Resistance To Plaintiff's Motion For Summary Judgment (docket no. 56), Vol. I, 1-15.

Although these affidavits concerning "investigations" of purported "adult entertainment businesses" in Sioux City, Iowa, detailed activities observed *in* the businesses, most did not mention the "secondary effects" identified by the City, such as negative impacts on surrounding businesses, neighborhoods, property values, and crime. The exception is one affidavit, concerning the October 30, 2004, visit to the "Adult

Emporium," in which the investigator suggests that a person in an adjacent viewing booth attempted to "entice [the investigator] with his lips and tongue through [a] hole [in the wall]," and that a female in the parking lot asked if the investigator "want[ed] a date." Defendants' Appendix [To First Motion For Summary Judgment] at 582. There were no police reports concerning any incidents near any of these four businesses or near the Doctor John's store in Sioux City. Finally, none of the "investigations" of purported "adult entertainment businesses" in Sioux City, Iowa, was conducted prior to the enactment of the January 2004 Amendments.

Doctor John's has not sought rezoning of the intended location of its Sioux City store to permit an "adult entertainment business" as defined in these amended ordinances at that location. Nor does the record indicate that Doctor John's has sought to relocate its Sioux City store to an area where "adult entertainment businesses" are permitted, such as a General Business—Metropolitan (BG-M) zone, like the downtown area of Sioux City, where the City contends that there are a number of vacant locations. One of the underlying issues in this lawsuit, of course, is whether there is any reason that Doctor John's should have to take such steps.

### d. The December 2004 Amendments

In December 2004, some time after the court had enjoined enforcement of the January 2004 Amendments, the City passed additional amendments to the pertinent ordinances regulating "adult entertainment businesses," which are identified herein for the sake of convenience as the December 2004 Amendments. The December 2004 Amendments expressly superseded the January 2004 Amendments. Doctor John's contends that, at the time that the December 2004 Amendments were passed, the City Council simultaneously "grandfathered" the Sioux City Doctor John's store at its present location, allowing it to continue operations there. There is, however, an on-going dispute

22

concerning licensing requirements, which are now at issue in this ruling. The court also notes that, unlike the January 2004 Amendments, the December 2004 Amendments contain extensive statements of the purposes and findings upon which those Amendments are based.

*i.* ***Amended Ordinance 2004-1059***. The first of the December 2004 Amendments, SIOUX CITY MUNICIPAL ORDINANCE 2004-1059, enacted on December 13, 2004, states, *inter alia*, as part of the basis for enactment of that amendment, that

> there is documented evidence that sexually oriented and adult entertainment businesses are inappropriate land uses for certain areas of the community, and have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them, and are often associated with negative aesthetics, secondary effects including crime, blight, litter, and the downgrading of property values. . . .

SIOUX CITY MUNICIPAL ORDINANCE 2004-1059, Appendix To Defendant's [First] Motion For Summary Judgment (docket no. 56) at 79 (third "whereas" paragraph); *see also id.*, § 25.02.027 ("Purpose and findings with respect to sexually oriented businesses"). The amended ordinance excludes "sexually oriented businesses," as defined therein, from areas zoned in various classifications, including BG and -C overlay areas, such as the area in which the Doctor John's Sioux City store is located. *Id.* §§ 3-5.

In pertinent part, the definitional provisions of this amendment provide as follows:

> <u>Section 2</u>: Section 25.04.020(S-12) of the Sioux City Municipal Code is amended by adding the following new definitions:
>> S-12 "Sexually oriented business" means a "sexual device shop," "sexual encounter center," or "sexual escort agency."
>> * * *

c. "Features" means to offer the goods or services so modified by that term to the public as one of the intended profit-making objectives of the commercial enterprise, which enterprise holds itself forth to the public, through marketing, advertising, signage, promotions, or merchandise display, as a place where said goods or services may be obtained.

* * *

g. "Regularly" means and refers to the consistent and repeated doing of the act so described.

* * *

i. "Sexual Device" means any three (3) dimensional object designed and marketed for stimulation of the male or female human genital organ or anus or for sadomasochistic use or abuse of oneself or others and shall include devices such as dildos, vibrators, penis pumps, and physical representations of the human genital organs, and shall also include certain devices with non-sex related utility, such as leather whips, straps, and ligatures when said devices are marketed in a context promoting sexual or sadomasochistic uses. Nothing in this definition shall be construed to include devices primarily intended for protection against sexually transmitted diseases or for preventing pregnancy.

j. "Sexual Device Shop" means a commercial establishment that regularly features sexual devices. Nothing in this definition shall be construed to include any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services, nor shall this definition be construed to include commercial establishments which do not restrict access to any portion of their premises by reason of age.

*Id.* at § 2. "Sexual Device Shop" is not a category of "adult entertainment business" that previously appeared in any Sioux City ordinances. Moreover, where the January 2004

Amendments defined a "sex shop," *inter alia*, in terms of a store in which "[m]ore than 5 percent of its stock in trade consists of" or "[m]ore than 5 percent of its gross public floor area is devoted to" sexually oriented toys or novelties, *see* SIOUX CITY MUNICIPAL ORDINANCE 2004-0004(A-2)(m)(2) & (m)(3), this December 2004 Amendment does not include any triggering percentage. Instead, it defines a "sexual device shop" as a store that "regularly features" even *one* "sexual device," and also adds specific exceptions for "any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services," and still more critically here, any "commercial establishments which do not restrict access to any portion of their premises by reason of age." SIOUX CITY MUNICIPAL ORDINANCE 2004-1059 § 2 ((S-12)(j)). Interestingly, there is no "combination" definition of a "sexually oriented business," based on "combinations" of two or more specified categories of "non-media" merchandise, such as "lingerie" and "sadomasochistic leather goods," or "non-media" and "media" merchandise, in any of the December 2004 Amendments, as there was in the January 2004 Amendments.

This amended ordinance includes a "severability clause," which provides as follows:

> This ordinance and each section and provision hereunder are hereby declared to be independent divisions and subdivisions and, notwithstanding any other evidence of legislative intent, it is hereby declared to be the controlling legislative intent that if any provisions of this ordinance, or the application thereof to any person or circumstance is held to be invalid, the remaining sections or provisions and the application of such sections and provisions to any person or circumstances other than those to which it is held invalid, shall not be affected thereby, and it is hereby declared that such sections and

provisions would have been passed independently of such
section or provision so known to be invalid.

SIOUX CITY MUNICIPAL ORDINANCE 2004-1059 § 6.

  *ii.*   ***Amended Ordinance 2004-1060***. SIOUX CITY MUNICIPAL ORDINANCE 2004-

1060, also enacted on December 13, 2004, also contains statements of purpose and

findings supporting its enactment, including, *inter alia*, the following:

> [T]he City Council desires to minimize and control the adverse
> effects of the enterprises regulated herein and thereby protect
> the health, safety, and welfare of the citizenry; protect the
> citizens from crime; preserve the quality of life and the urban
> setting; preserve the property values and character of
> surrounding neighborhoods and deter negative aesthetics and
> the spread of urban blight. . . .

SIOUX CITY MUNICIPAL ORDINANCE 2004-1060, Appendix To Defendant's [First] Motion

For Summary Judgment (docket no. 56) at 84.

  The substantive portions of this amendment of interest here amend Section

25.04.020(A-2) of the Sioux City Municipal Code to redefine "adult bookstore or adult

video store," as follows:

>   A-2 "Adult Entertainment Business" shall mean an
> "adult bookstore or adult video store," "adult cabaret," "adult
> model studio," "adult motel," "adult motion picture theater,"
> or "adult theater."
>   a. "Adult Bookstore or Adult Video Store" means a
> commercial establishment that:
>   (1) has a substantial portion of its displayed
> merchandise which consists of, or
>   (2) has a substantial portion of the wholesale value of its
> displayed merchandise which consists of, or
>   (3) has a substantial portion of the retail value of its
> displayed merchandise which consists of, or

(4) derives a substantial portion of its revenues from the sale or rental, for any form of consideration of, or

(5) maintains a substantial section of its sales or display space for the sale or rental, for any form of consideration, of any one or more of the following: books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, digital video discs, slides, or other visual representations which are characterized by their emphasis upon the exhibition or description of "specified sexual activities" or "specified anatomical areas."

The term "Adult Bookstore or Adult Video Store" shall also include a commercial establishment which regularly maintains one or more "Adult Arcades." "Adult Arcade" means any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices regularly show images distinguished or characterized by their emphasis upon matter exhibiting or describing "specified sexual activities" or specified "anatomical areas," and where the booth(s) or room(s) in which such images are shown contain less than twenty (20) individual seats for patrons.

* * *

g. "Distinguished or Characterized by their Emphasis Upon" means the dominant or principal theme of the object described by such phrase. For instance, when the phase [sic] refers to films "which are distinguished or characterized by their emphasis upon the exhibition or description of Specified Sexual Activities or Specified Anatomical [A]reas," the films so described are those whose dominant or principal character and theme are the exhibition or description [of] "specified anatomical areas" or "specified sexual activities."

h. "Established" shall mean and include any of the following:

(1) The opening or commencement of any adult entertainment business as a new business; or

(2) The conversion of an existing business, whether or not an adult entertainment business, to another adult entertainment business.

i. "Features" means to offer the goods or services so modified by that term to the public as one of the intended profit-making objectives of the commercial enterprise, which enterprise holds itself forth to the public, through marketing, advertising, signage, promotions, or merchandise display, as a place where said goods or services may be obtained.

\* \* \*

m. "Regularly" means and refers to the consistent and repeated doing of the act so described.

\* \* \*

o. "Specified Anatomical Areas" shall mean human genitals, anus, cleft of the buttocks, or the female breast.

p. "Specified Sexual Activities" means any of the following:

(1) sex acts, normal or perverted, including intercourse, oral copulation, masturbation or sodomy; or

(2) excretory functions as a part of or in connection with any of the activities described in (1) above.

q. "Substantial" means more than twenty-five percent (25%) of the item so modified.

SIOUX CITY MUNICIPAL ORDINANCE 2004-1060, Appendix To Defendant's [First] Motion For Summary Judgment (docket no. 56) at 86-87. Thus, this amendment refines the definitions of "adult bookstore" and "adult video store" found in previous ordinances. As with SIOUX CITY MUNICIPAL ORDINANCE 2004-1059, this amendment also excludes "adult entertainment businesses," as defined therein, from areas zoned in various classifications, including BG and -C overlay areas, such as the area in which the Doctor John's Sioux City store is located. *Id.* §§ 4-6, 8. This amended ordinance also includes a "severability clause" essentially identical to the one found in SIOUX CITY MUNICIPAL ORDINANCE 2004-1059. *See* SIOUX CITY MUNICIPAL ORDINANCE 2004-1060 § 9.

*iii.*     ***Amended Ordinance 2004-1061****.*  The final December 2004 Amendment at issue here is SIOUX CITY MUNICIPAL ORDINANCE 2004-1061, which adds a new chapter to the Sioux City Municipal Code establishing licensing requirements and regulations for "adult oriented businesses" with the City.  *See* SIOUX CITY MUNICIPAL ORDINANCE 2004-1061, Appendix To Defendant's Second Motion For Summary Judgment (docket no. 117) at 148-59.  This amendment is also based on extensive "findings" and a statement of "purpose."  *See id.*, "Whereas" clauses, § 1 (4.75.010).  Generally, this amendment incorporates definitions of various categories of "adult entertainment businesses" found in other December 2004 Amendments and requires such businesses to obtain licenses to operate within the City, even in zones where they are otherwise permitted.  *See id.* § 2 (4.75.020 Definitions), § 4 (4.75.040 License required).

Provisions of particular interest here include the following definitions of licensees and other persons with an "influential interest" whom the City may consider in deciding whether or not to grant the required license:

> 11.  "Influential interest" means any of the following:
> a.  The actual power, directly or indirectly, to control the operation, management or policies of a business or entity,
> b.  Ownership of a financial interest of thirty percent (30%) or more of a business or of any class of voting securities of a business; or
> c.  Holding an office (e.g., president, vice president, secretary, treasurer, etc.) or directorship in a legal entity which operates the adult oriented business.
> 12.  "Licensee" shall mean a person in whose name a license to operate an adult oriented business has been issued, as well as the individual or individuals listed as an applicant on the application for an adult oriented business license.
> * * *
> 23.  "Specified Criminal Activity" means any of the following specified crimes for which less than five years

elapsed since the date of conviction, guilty plea, plea of nolo contendere, or the date of release from confinement for the conviction, guilty plea, or plea of nolo contendere, whichever is the later date:

    a.  vice offenses (Iowa Code Ch. 725);

    b.  obscenity offenses (Iowa Code Ch. 728);

    c.  sexual abuse offenses (Iowa Code Ch. 709);

    d.  money laundering (Iowa Code § 706B.2); or

    e.  controlled substances offenses (Iowa Code Ch. 124, Div. IV);

or any offense committed in another jurisdiction that, had the predicate acts been committed in Iowa, would constitute any of the foregoing specified Iowa offenses.

SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 § 2 (4.75.020). This amendment provides, further, that "[i]f a person who wishes to operate an adult oriented business is other than an individual, each person with an influential interest in the business shall sign the application for a license as applicant. Each applicant must be qualified under Section 4.75.050 and each applicant shall be considered a licensee if a license is granted." *Id.* at § 4(4) (4.75.040(4)). This amendment also provides that "The Administrative Services/City Clerk shall issue a license unless: . . . f. [a]n applicant has been convicted of or pled guilty or nolo contendere to a specified criminal activity, as defined in this ordinance." *Id.* § 5 (5.75.050 Issuance of license). This amendment also grants a "*De Facto* Temporary License" to existing adult oriented businesses, as follows:

All existing adult oriented businesses are hereby granted a *De Facto* Temporary License to continue operation for a period of one hundred eighty (180) days following the effective date of this ordinance [December 18, 2004]. By the end of said one hundred eighty days, all adult oriented businesses must conform to and abide by the requirements of this chapter.

SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 § 17 (4.75.160 Applicability of ordinance

to existing businesses). Like the other December 2004 Amendments, this amended ordinance contains a "severability" clause. *See id*. at § 21. The Doctor John's store in Sioux City has never made any attempt to comply with the licensing provisions, but neither has the City made any attempt to enforce those provisions against Doctor John's.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment And Reconsideration

Rule 56 of the Federal Rules of Civil Procedure provides that a prosecuting or defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims at issue. FED. R. CIV. P. 56(a) (summary judgment for claimant) & (b) (summary judgment for defending party). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same). The court is prohibited from making credibility judgments or engaging in fact-finding from conflicting

evidence on a motion for summary judgment. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1075 (8th Cir. 2006); *Yates v. Rexton, Inc.*, 267 F.3d 793, 800 (8th Cir. 2001).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely

measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The motions before the court include the City's motion to reconsider the court's prior summary judgment ruling. In *Wells' Dairy, Inc. v. Travelers Indemnity Company of Illinois*, 336 F. Supp. 2d 906 (N.D. Iowa 2004), this court found that Rule 54(b) provides authority for a court to reconsider any interlocutory order, including a prior ruling on a motion for summary judgment. *Wells' Dairy, Inc.*, 336 F. Supp. 2d at 909 (citing cases). Rule 54(b) provides that, unless the court certifies the order for interlocutory appeal, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b) (emphasis added). This court also noted, "The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be [applicable to] a motion under Federal Rule of Civil Procedure 59(e), which is in turn less exacting than the standards enunciated in Federal Rule of Civil Procedure 60(b)." *Wells' Dairy, Inc.*, 336 F. Supp. 2d at 909. Moreover, this court has repeatedly held that it has the inherent power to reconsider and revise any interlocutory order, such as a summary judgment ruling, up until the time that a final judgment is entered. *Id.* (citing *Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 317 F. Supp. 2d 896, 903 ( N.D. Iowa 2004); *Helm Financial Corp. v. Iowa N. Ry. Co.*, 214 F. Supp. 2d 934, 999 (N.D. Iowa 2002); and *Longstreth v. Copple*, 189 F.R.D. 401, 403 (N.D. Iowa 1999)). Thus, the court finds

that it has authority to reconsider its ruling on the prior round of summary judgment motions.

The question then becomes, what standards apply on such reconsideration?  While the standards for reconsideration of interlocutory orders may be less "exacting" than the standards for reconsideration of final orders under Rules 59(e) and 60(b), this court has held that the court should "look to the kinds of consideration under those rules for guidance." *Id.* (citing *Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D. W.Va. 1998)). In essence, the City contends that the court's prior summary judgment ruling, pertaining to the January 2004 Amendments, was simply erroneous as a matter of fact and law. Under Rule 59(e), a judgment may be amended to correct "clearly" or "manifestly" erroneous findings of fact or conclusions of law.  *See, e.g., Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988); *Baker v. John Morrell & Co.*, 266 F. Supp. 2d 909, 919 (N.D. Iowa 2003).  Similarly, the court concludes that it has the authority to "reconsider" its prior summary judgment ruling in this case to correct any "manifest" errors of law or fact.

The court will apply these standards to the parties' second round of motions for summary judgment and the City's motion to reconsider the court's ruling on the first round of summary judgment motions.  In so doing, the court will consider, first, issues pertaining to the January 2004 Amendments, then consider issues pertaining to the December 2004 Amendments, instead of considering the parties' motions in chronological order.

## B.  Issues Relating To The January 2004 Amendments

The City has raised numerous issues concerning the January 2004 Amendments, in both its April 12, 2006, Motion To Reconsider Memorandum Opinion And Order Regarding Cross-Motions For Summary Judgment On October 2003 And January 2004

Ordinances (docket no. 115), and its April 12, 2006, Second Motion For Summary Judgment Re: Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061 (docket no. 117). The court will first summarize the parties' identification of and arguments on those issues, then turn to analysis of those issues.

### 1. Arguments of the parties

The City argues that the court should reconsider its prior conclusions that the January 2004 Amendments were "content based" and failed "strict scrutiny," as well as the court's alternative conclusion that, if those amendments were "content neutral," they failed "intermediate scrutiny," as to the definition of a "sex shop" based on a combination of "adult media" with another category of "non-media" adult merchandise, because the court held that the evidence of "secondary effects" was too "shoddy" to withstand the applicable level of scrutiny. The City contends that, in light of the evidence previously submitted and the additional evidence now submitted with the second round of summary judgment motions, the court's prior rulings on these issues are erroneous. Central to this argument is the City's contention that the ordinances in question can be found constitutional on the basis of evidence only developed by the City after the January 2004 Amendments were enacted and, indeed, after enforcement of those amended ordinances had been enjoined and the City had repealed the ordinances in their entirety.

In the pertinent portion of the City's second motion for summary judgment, the City argues that the "non-media" portions of the January 2004 Amendments are constitutional as a matter of law and that the genuine issues of material fact that the court previously found concerning applicability of those provisions to the Doctor John's store in Sioux City can now be decided as a matter of law on the supplemented record now before the court. As a result, the City argues that Doctor John's was not barred from its present location by any unconstitutional regulation, because even if the "media" provision was

unconstitutional, the "non-media" provisions were not, and the "non-media" provisions would have independently barred Doctor John's from its chosen location. Therefore, the City asserts that Doctor John's cannot recover any damages for the delay in its opening resulting from the City's enforcement activities. Finally, the City argues that the failure of Doctor John's to designate an expert dooms its claim for damages purportedly caused by the delay in the opening of its Sioux City store, because without expert testimony, Doctor John's cannot satisfy the Iowa "new business rule" for proof of damages.

In response,◘[4] Doctor John's argues that, even supposing that the "media" and "non-media" provisions of the January 2004 Amendments are constitutional, which Doctor John's continues to dispute, Doctor John's also hotly disputes whether it would ever have run afoul of those provisions, based on its representations that it would have modified its inventory to avoid application of such provisions. Doctor John's points to evidence that it has modified its inventory in other locations to avoid the application of limitations in other local ordinances. Doctor John's also points to what it asserts are genuine issues of material fact concerning the items that can properly be counted in various categories of "non-media" merchandise. Doctor John's contends that the City's evidence concerning its inventory is also flawed, because it is based on counts of inventory during a time when

---

[4]The City is technically correct that Doctor John's never filed a separate response to the City's motion to reconsider, or even denominated its response to the City's second summary judgment motion as including a response to the City's motion to reconsider. Nevertheless, the brief denominated by Doctor John's as its "Memorandum In Opposition To Defendant's Motion For Summary Judgment And Reply Memorandum In Support Of Plaintiff's Second Motion For Summary Judgment" (docket no. 122) indicates that Doctor John's was aware of, and attempting to respond to, the City's arguments for reconsideration. Thus, notwithstanding the City's assertions at oral arguments that its motion to reconsider should be treated as unresisted, within the meaning of N.D. IA. L.R. 7.1(f), the court believes that the issues have been fairly joined.

Doctor John's was not subject to the limits that the City now seeks to uphold, owing to the court's preliminary injunction. Finally, Doctor John's argues in its brief that the "non-media" provisions of the January 2004 Amendments violate substantive due process, equal protection, and sexual privacy rights, so that they are subject to the same sort of heightened scrutiny that the court applied to the "media" provisions and that, under that level of scrutiny, they are not "constitutional" alternatives to the "media" provisions that the court has found unconstitutional. At oral arguments, however, Doctor John's conceded that only "rational basis" scrutiny is applicable to the "non-media" provisions, but nevertheless maintained that the "non-media" provisions fail even this low level of scrutiny.

In the pertinent portion of its reply, the City contends that Doctor John's has failed to rebut—and, indeed, even admits—the City's contention that Doctor John's is a regulated business under the January 2004 Amendments, because Doctor John's acknowledges that it has carried merchandise that exceeds the threshold for application of both the "media" and "non-media" provisions in those ordinances. The City contends that the promise by Doctor John's to limit its merchandise so as to avoid applicability of the "media" and "non-media" provisions of City regulations is "illusory," because that promise is contradicted by the very existence of this lawsuit and the actual make up of the merchandise that Doctor John's has stocked in its Sioux City store.

### 2. Analysis

The court finds that the issues concerning the January 2004 Amendments raised by the parties fall into three categories: (1) "constitutionality" issues, including such issues as the level of scrutiny applicable to regulation of the "media" merchandise of a business and the ability of a municipality to regulate "non-media" merchandise; (2) "applicability" issues, concerning whether Doctor John's stocked merchandise that would have brought

37

it within otherwise constitutional ordinances;■[5] and (3) "damages" issues, concerning whether Doctor John's can prove any damages from a delay in the opening of its Sioux City store owing to enforcement of unconstitutional or inapplicable ordinances. The court will consider these issues in turn.

### a.    *Constitutionality issues*

### i.    *Did the "media" provisions satisfy the applicable level of scrutiny?*    The court finds that, notwithstanding the City's invitation to do so, it need not reconsider its finding in its ruling on the first round of summary judgment motions that the January 2004 Amendments were "content-based" regulations that failed "strict scrutiny" as to the regulation of the "media" merchandise of putative "adult entertainment businesses." This is so, because the court concluded that, even if the January 2004 Amendments were "content neutral," those Amendments would fail less demanding "intermediate scrutiny" as to the "combination" definition of a "sex shop," to the extent that the "combination" involved "adult media." *See Doctor John's II*, 389 F. Supp. 2d at 1125.

Moreover, the court finds that the City has advanced nothing to convince the court that it manifestly or clearly erred in concluding that the "combination" definition of a "sex shop" fails "intermediate scrutiny" to the extent that the "combination" involved "adult media." *Wells' Dairy, Inc.*, 336 F. Supp. 2d at 909 (on reconsideration of an interlocutory order under Rule 54(b), the court should look to Rules 59(e) and 60(b) for guidance on the applicable standards); *cf. Hagerman*, 839 F.2d at 414 (pursuant to Rule 59(e), a judgment may be amended if it is "clearly" or "manifestly" erroneous as a matter of fact or law);

---

[5]Thus, by "applicability" issues, the court does not mean "as applied" challenges to the constitutionality of the ordinances in question, but the purely factual issues of whether or not the ordinances, if otherwise "constitutional," would apply to Doctor John's, based on its actual inventory or its promises to limit its inventory.

*Baker*, 266 F. Supp. 2d at 919 (same). Even though "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest,'" *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438 (2002), this court again finds that, as a matter of law, the City relied merely on "shoddy data or reasoning." *Id.*; *see Doctor John's II*, 389 F. Supp. 2d at 1125 (so holding).

More specifically, the critical question, now as in the prior ruling, is whether the January 2004 Amendments were designed to serve the "substantial interest" identified by the City, *i.e.*, limiting the "secondary effects" of adult entertainment businesses. *Id.* ("intermediate scrutiny" requires a showing that the regulation was designed to serve a "substantial" government interest). As this court previously explained,

> The court recognizes, again, that "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *[City of] Renton [v. Playtime Theatres, Inc.]*, 475 U.S. [41,] 51-52, 106 S. Ct. 925 [(1986)]. Even so, the court finds, for purposes of "intermediate scrutiny" as it did for purposes of "strict scrutiny," that the evidence of "secondary effects" on which the City purportedly relied has no reasonable connection whatsoever to a store that is a "sex shop" only by virtue of selling a combination of a single item of "adult media" with either "lingerie" or "sadomasochistic leather goods," where the combination exceeded ten percent of the business's stock-in-trade or floor area. The City has not identified any portion of any study of actual "secondary effects" arising from such a business in any municipality, and the logic that such "secondary effects" could arise from such a business because they arise from totally different kinds of businesses is so

painfully strained that it cannot be accepted. *Alameda Books, Inc.*, 535 U.S. at 438, 122 S. Ct. 1728 (although "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest,' . . . [t]his is not to say that a municipality can get away with shoddy data or reasoning"). The present record shows that the City is relying on mere speculation regarding the potential for "secondary effects" of stores that would fit the "combination" definition of a "sex shop" on the basis of a combination of a single item of "adult media" with either "lingerie" or "sadomasochistic leather goods" to justify a purportedly "content neutral" ordinance regulating the sale of "adult media," if, indeed, the City was not simply targeting the content of the "adult media" in the Doctor John's store in Sioux City.

*Doctor John's II*, 389 F. Supp. 2d at 1126 (also holding that, using the test in *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1219 (8th Cir. 1998), *cert. denied*, 527 U.S. 1037 (1999), to determine the constitutionality of a "content neutral" regulation, there was no showing that the "combination" provision of the definition of "sex shop" in the January 2004 Amendments was effective at all in regulating "secondary effects," so it could not be shown that the substantial interest in regulating such "secondary effects" would be achieved less effectively absent the regulation).

The City contends, however, that it has now shown, from evidence assembled subsequently, that the decisionmakers had always been concerned about the "secondary effects" of "adult entertainment businesses" generally, and that the City now has evidence that a "sex shop" within the "combination" provision *would indeed have* such "secondary effects," such that the City's regulation is substantially justified. That evidence includes a study the City commissioned by University of California Professor Richard McCleary, Ph.D., purportedly demonstrating the negative secondary effects of the Doctor John's store

in Sioux City. The City contends that the issue is not whether the legislative history shows that the enacting body specifically intended to further the interest in regulating "secondary effects," but whether the court can now identify a current substantial government interest in the service of which the ordinance may be constitutional, citing *Farkas v. Miller*, 151 F.3d 900, 905 (8th Cir. 1998). The court finds these arguments unpersuasive.

It may be true that the constitutionality of a regulation addressing activities or merchandise protected by the First Amendment that is *currently in force* and that *currently inhibits* a particular party need only be justified on the basis of "'a *current* governmental interest,'" even in the absence of supporting legislative history demonstrating that the enacting body ever considered a particular government interest at the time the regulation was enacted. *See Farkas*, 151 F.3d at 905 (emphasis added) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring in the judgment). On the other hand, both *Farkas* and the decision in *Barnes* upon which the court in *Farkas* relied involved parties *currently subject to the regulation in question*. *See Barnes*, 501 U.S. at 562 (the respondents were "two establishments in South Bend, Indiana, that *wish[ed]* to provide totally nude dancing as entertainment, and individual dancers who [we]re employed at these establishments," and who were prevented from doing so by a public indecency law of the State of Indiana then in force); *Farkas*, 151 F.3d at 901-02 (owners and operators of "juice bars" offering nude dancing challenged a recently-amended Iowa statute still in force). The court cannot read either *Barnes* or *Farkas* to stand for the proposition that a state or municipality can attempt to demonstrate that a now defunct regulation really was constitutionally sound after that regulation has been repealed, based on evidence developed *after* the regulation was repealed. In other words, the City had its chance to demonstrate that the "media" portion of the "combination" provision of the January 2004 Amendments was constitutional *while it was still in force* and *while Doctor*

*John's was subject to it*, even if its enforcement was then enjoined, but the City failed to do so.  At no time while the ordinance was in force was the City ever able to show that there was "a current governmental interest in the service of which the [ordinance] may [have been] constitutional." *Id.* at 582.  This court will not indulge the City in an advisory ruling on whether or not such a "combination" provision would be constitutional if it were supported by the evidence that the City has now, belatedly, assembled.

In short, the City is not entitled to a different ruling on the constitutionality of the "combination" provision of the January 2004 Amendments to the extent that the "combination" in question involved "media" merchandise protected by the First Amendment.

*ii.*     ***Were the "non-media" provisions independently constitutional?***  In its Second Motion For Summary Judgment, the City reiterates its argument from the first round of summary judgment motions that the "non-media" portions of the January 2004 Amendments—that is, the provisions defining a "sex shop" on the basis of a "combination" of only "non-media" merchandise, defined here as "lingerie" and "sadomasochistic leather goods," or on the basis of the sale of some threshold percentage of stock in trade or public floor area devoted to "sex toys and novelties"—were constitutional, in that those provisions were not subject to any First Amendment or comparable constitutional limitations.  In support of that contention, the City contends that there is no fundamental "privacy" right that would invoke intermediate scrutiny of these provisions.  Thus, the City argues that, to show that the regulation violates substantive due process, based on some non-fundamental right, Doctor John's must do more than show that the regulation is arbitrary, capricious, or in violation of state law, but that Doctor John's cannot make such a showing here.  The City argues that there is no "ban" on the sale of such "non-media" items here, and no regulation of personal relationships arising from

42

regulation of the sale of such items. Finally, the City contends that Doctor John's cannot rely on a purported violation of its right to equal protection, because there is no entity that is similarly situated in all relevant respects that is not subject to the regulation. The City argues that Spencer Gifts, identified by Doctor John's as otherwise similarly situated, but not subject to the regulation, is not similarly situated, because it is in a shop in an enclosed mall, not a stand-alone store; it closes in the evening, instead of remaining open all night or late into the night as does Doctor John's; it admits children, where Doctor John's does not; and it sells only a few items that could be categorized as "sex toys" along with its other merchandise, where the "sex toys" inventory at the Doctor John's store is extensive.

In its brief, Doctor John's did, indeed, assert that the "non-media" provisions of the January 2004 Amendments violate substantive due process on the basis of fundamental privacy rights of its customers, such that the same type of intermediate scrutiny afforded to regulations that affect businesses protected by the First Amendment should be afforded to the regulation of businesses that sell "non-media" adult merchandise. Under that standard, Doctor John's contended that the "non-media" provisions of the January 2004 Amendments should be struck down unless the City shows that the provisions are reasonably related to dealing with "secondary effects," which the City cannot do. Specifically, Doctor John's argued that there are no studies indicating that there are "secondary effects" from selling such "non-media" adult items primarily to a female clientele. Doctor John's also argued that attempts to differentiate Spencer Gifts from its store are arbitrary. At oral arguments, however, Doctor John's conceded that there has been no sea change in the law, as it had anticipated in the wake of *Lawrence v. Texas*, 539 U.S. 558 (2003), recognizing and firmly establishing a fundamental right to privacy. Consequently, Doctor John's conceded that only "rational basis" scrutiny would be applicable to the "non-media" provisions of the January 2004 Amendments. Nevertheless,

Doctor John's maintains that the "non-media" provisions fail even this relaxed level of scrutiny, or alternatively, fail "equal protection" standards.

In its prior ruling, this court acknowledged that "[t]he question of whether or not the sale of 'sex toys' [or other 'non-media' adult merchandise] implicates a 'substantive due process' right to 'privacy' on a par with the First Amendment protection of free expression is intriguing." *Doctor John's II*, 389 F. Supp. 2d at 1127. Nevertheless, this court did not reach that "intriguing" question, because it found that "there are genuine issues of material fact in the record as to whether Doctor John's would have fallen within the definition of a 'sex shop' based on sales of a combination of 'lingerie' and 'sadomasochistic leather goods' exceeding ten percent of the business's stock-in-trade or floor area," *id.*, and because there were also genuine issues of material fact as to whether or not the Doctor John's store in Sioux City would have come within the alternative "sex toys" definition of a "sex shop" in the January 2004 Amendments. *Id.* at 1129. Under those circumstances, the court deemed it inappropriate to reach the question of the constitutionality of the "non-media" provisions. *See, e.g., United States v. Turechek*, 138 F.3d 1226, 1229 (8th Cir. 1998) ("While federal courts are obliged to decide constitutional questions when necessary to the resolution of a dispute before them, 'they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.'") (quoting *County Court v. Allen*, 442 U.S. 140, 154 (1979)).

The question remains "intriguing," and the court has considerable doubt that the "non-media" provisions of the January 2004 Amendments could pass constitutional muster under a heightened level of scrutiny applicable to ordinances that impinge a fundamental right. However, in light of the concession by Doctor John's that there is no clearly

established fundamental right to privacy that is implicated by the "non-media" provisions of the January 2004 Amendments, the court will apply only "rational basis" scrutiny.

Moreover, the court now concludes that the question of the "constitutionality" of the "non-media" provisions must be addressed, because only if the "non-media" provisions are either (1) unconstitutional or (2) constitutional but inapplicable would Doctor John's have been barred from its chosen location by an unconstitutional ordinance (unconstitutional as to its "media" provision or both the "media" and "non-media" provisions of the "combination" definition of a "sex shop"), and only then would Doctor John's be entitled to damages arising from the delay in its opening as a result of the City's enforcement of an unconstitutional ordinance. Otherwise, Doctor John's could have been properly and independently barred from its chosen location by a constitutional and applicable "non-media" provision, notwithstanding the unconstitutionality of the "media" provision, and Doctor John's could not recover any damages for the delay in opening its store.

In the land use or zoning context, to prove an equal protection violation involving neither a suspect classification nor a fundamental right, the plaintiff "must prove he was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006) (land use or zoning case citing cases establishing this standard for "equal protection" claims). To meet these requirements, Doctor John's "must prove similarity to other individuals or entities receiving favorable treatment." *Id.* Doctor John's has nominated Spencer Gifts as the "similarly situated, but more favorably treated" entity in this case. While the court is not impressed with most of the City's attempts to distinguish Spencer Gifts from Doctor John's, the critical failing here is that there is no showing that Spencer Gifts has anything

like the "triggering" percentages of its inventory in "non-media" "adult" merchandise, such as "sadomasochistic leather goods" in combination with "lingerie," or "sex toys and novelties," although it undoubtedly stocks some of these categories of items. *See id.* (the plaintiff's equal protection claim failed, because he "provided no evidence his firearms dealership is similar to any other firearms dealership receiving favorable treatment"). Thus, the "equal protection" argument raised by Doctor John's stands as no impediment to summary judgment in the City's favor on the City's contention that the "non-media" provisions of the January 2004 Amendments are constitutional.

The court, therefore, turns to the "substantive due process" argument raised by Doctor John's. To prove that a land use or zoning regulation that does not touch on a fundamental right or liberty interest violates substantive due process, the plaintiff "must prove the zoning ordinance is not rationally related to a legitimate government interest." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006). There does not appear to be any dispute that the City's interest in enacting the January 2004 Amendments (at least if that interest is not simply to discriminate against Doctor John's) is public welfare, and there can be no genuine dispute that such an interest is legitimate. *Cf. id.* (it was undisputed that the purpose of the city's zoning ordinance concerning the location of retail sales of firearms was to protect public safety and that such an interest was a legitimate government interest). Thus, the question here, as in *Koscielski*, is whether the ordinance serves that legitimate interest.

On that issue, the Eighth Circuit Court of Appeals has explained,

> Due process claims involving local land use decisions must demonstrate the "government action complained of is truly irrational, that is something more than ⋯ arbitrary, capricious, or in violation of state law." *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993) (internal quotation

> omitted). The action must therefore be so egregious or
> extraordinary as to shock the conscience. *See County of
> Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S. Ct. 1708,
> 140 L. Ed. 2d 1043 (1998); *Burton v. Richmond*, 370 F.3d
> 723, 729 (8th Cir. 2004).

*Koscielski*, 435 F.3d at 902. The City argues that Doctor John's cannot make such a showing as a matter of law.

The court cannot agree with the City as to the "rationality" of the provision of the January 2004 Amendments that defines a "sex shop" on the basis of a "combination" of "lingerie" and "sadomasochistic leather goods" where the "combination" of such items constitutes more than ten percent of its stock in trade or occupies more than ten percent of its public floor area. *See* Sioux City Municipal Ordinance 2004-0004(A-2)(m)(1). There is absolutely no basis on which a reasonable person could believe that sale of only a single item of "sadomasochistic leather goods" in combination with "lingerie" that exceeds ten percent of the stock in trade or public floor area would impact public welfare or, as the City suggests, amount to "selling sex." Such an absurd notion does, indeed, shock the conscience. *Koscielski*, 435 F.3d at 902. Thus, the "combination" provision fails even "rational basis" scrutiny to the extent that it could be met by such a lopsided "combination" of "non-media" merchandise.

On the other hand, the court must agree with the City that there is nothing facially "irrational" or "so egregious or extraordinary as to shock the conscience," *id.*, about defining a "sex shop" as an entity with more than five percent of its stock in trade or gross public floor area devoted to sexually oriented toys or novelties. Sioux City Municipal Ordinance 2004-0004(A-2)(m)(2) & (3). This concentration of "adult" items, relatively small though it is, could reasonably be believed to be sufficient to trigger public welfare

concerns. Thus, at first blush, this portion of the "non-media" provisions of the January 2004 Amendments would appear to survive "rational basis" scrutiny.

Doctor John's, however, reiterated as the "theme" of its oral argument its contention that the City has systematically targeted Doctor John's for exclusion and has amended its ordinances for that purpose. In *Koscielski*, the plaintiff made an argument for "irrationality" of the ordinance in question on a similar basis:

> Koscielski also argues the ordinance was "motivated by a personal and political animus, totally unrelated to any legitimate governmental function," thereby making the ordinance "truly irrational." Appellant's Br. at 22. Although this allegation might support a due process violation, *see, e.g., Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983), the allegation lacks evidentiary support. Koscielski argues within two months of opening his firearms dealership in 1995, the City passed a moratorium barring all uses within the City and attempted to apply the moratorium retroactively. Koscielski argues when this failed, the City enacted the zoning ordinance designed to prevent the shop from relocating. Koscielski further argues a "city official then directly touted the fact that, as part of a redevelopment plan at Appellant's location the landlord was being required to cancel Appellant's lease." Appellant's Br. at 22-23. Koscielski doesn't, however, suggest the City forced the cancellation of the lease. Koscielski's other evidence is patently insufficient to support a reasonable inference of improper personal or political motives, let alone conscience-shocking behavior. Accordingly, the district court properly dismissed Koscielski's due process claim with prejudice.

*Koscielski*, 435 F.3d at 903; *see also Iowa Coal Min. Co., Inc. v. Monroe County, Iowa*, 257 F.3d 846, 853 (8th Cir. 2001) (also recognizing that "there may be cases where land-use decisions are 'so corrupted by the personal motives of local government officials that due process rights are implicated,'" quoting *Bituminous Materials, Inc. v. Rice*

*County, Minn.*, 126 F.3d 1068, 1071 (8th Cir. 1997), but finding that the case before it was not such a case, because there was also no evidence that the zoning officials were motivated by any consideration other than the public welfare).

Unlike the situations in *Koscielski* and *Iowa Coal Mining*, this court finds that there *is* sufficient evidence to generate genuine issues of material fact, at the very least, that the ordinances in question here were motivated by a personal or political animus, totally unrelated to any legitimate governmental function, thereby making the January 2004 Amendments "truly irrational." *Cf. id.* (recognizing this standard, but finding it inapplicable to the facts of the case before the court). As this court observed in its previous summary judgment ruling, with regard to whether the "media" provisions of the January 2004 Amendments were "content neutral" or "content based," Doctor John's has offered evidence that the January 2004 Amendments were enacted for the very purpose of excluding Doctor John's from its chosen location, based on the "adult" content of its merchandise, rather than to address any public welfare concern arising from adult entertainment businesses generally. That evidence includes the City Attorney's statement in a newspaper interview that the City only took up the question of modifying its "adult entertainment business" ordinances when Doctor John's contacted the City Attorney and professed itself willing to abide by existing limitations on adult content used to define adult entertainment businesses. Doctor John's has also pointed to evidence that the City kept amending the ordinances, effectively "moving the goal posts," each time it appeared that Doctor John's might adhere to the previous amendment. Coupled to such evidence is the patently "irrational" content of some of the provisions of the amendments, and evidence that those provisions were "tailored" to bar the Doctor John's store in particular, which seriously undermine both the sincerity and the "rationality" of the effort to protect public welfare generally. While the City has provided affidavits of various decisionmakers

attempting to convince the court that the decisionmakers' only motivation was the regulation of adult entertainment businesses generally, those affidavits do no more than confirm that there are genuine issues of material fact and credibility issues to be resolved concerning the motivations of the City in amending its ordinances, and hence, the "rationality" of those amendments.

Therefore, the City is not entitled to summary judgment in its favor on the constitutionality of the "non-media" provisions of the January 2004 Amendments.

### b.    Applicability issues

Because there are genuine issues of material fact as to the constitutionality of the "non-media" provisions of the January 2004 Amendments, the court must also consider the City's contention that, contrary to the court's ruling on the first round of summary judgment motions, there are no genuine issues of material fact that Doctor John's would have come within the scope of the "non-media" definitions of a "sex shop" in the January 2004 Amendments.◘[6] The City contends that there is no dispute that Doctor John's always intended to devote, and has in fact devoted, more than ten percent of its stock in trade and public floor area to lingerie and that there is no dispute that it always intended to sell, and has in fact sold, one or more items of sadomasochistic leather goods, which would have been sufficient to trigger the "combination" provision, even without considering "media" merchandise as part of the "combination." The City also contends that there is no genuine dispute that Doctor John's has always intended to devote, and has in fact devoted, in excess of five percent of its stock in trade and public floor area to "sex toys," notwithstanding pre-injunction professions by Doctor John's representatives of an

---

[6]Because the court has reiterated its conclusion that the "media" portions of the January 2004 Amendments are unconstitutional on their face, the court need not consider whether those provisions are "applicable" to Doctor John's.

intent to comply with any limitation on such items. The City contends that the very existence of this litigation also demonstrates that Doctor John's did not intend to comply with any limitations on its sale of "non-media" adult items.

Doctor John's, on the other hand, argues that the number of "non-media" adult items that it has actually stocked and the amount of public floor area it has actually devoted to such items *when it was not subject to any limitations owing to the preliminary injunction* is not relevant to, and certainly not dispositive of, whether or not it would have complied with any limitation on its merchandise imposed by the court or by a constitutional ordinance. Doctor John's also asserts that, contrary to the court's observation in its prior summary judgment ruling, there was nothing "inexplicable" about its failure to provide evidence of the amount of its stock in trade or public floor area then devoted to "non-media" merchandise, where it was not then subject to any limitations. Instead, what Doctor John's asserts is controlling is its repeated representations that it would have complied with reasonable, constitutional limitations and that it has, in its other stores, modified its inventory to comply with (or to avoid application of) various ordinances.

The court finds that the City is simply wrong to assert that either the filing of this lawsuit by Doctor John's to enjoin the January 2004 Amendments or evidence of what Doctor John's did when it was *not* subject to the January 2004 Amendments, owing to the court's injunction, somehow demonstrates that Doctor John's would never have complied with the limitations on its inventory necessary to avoid application of the January 2004 Amendments. Certainly, a party has a fundamental right to challenge the constitutionality of governmental action; that right would be improperly impinged if it were proper to infer from the constitutional challenge that the party had no intention of complying with the governmental action, if that action was found to be constitutional. Moreover, one cannot legitimately or reasonably infer from a party's "noncompliance" with a governmental

regulation when that party is *not* subject to that regulation—for example, because enforcement of the regulation has been enjoined—that the party had no intention of complying with the regulation if the injunction on its enforcement was lifted, because the party is merely acting within its rights under the injunction. On the other hand, evidence that a party voluntarily complied with a regulation, even while enforcement of that regulation was enjoined, would reasonably suggest that the party was ready, willing, and able to comply with the regulation, if the injunction was lifted.

The record is now replete with genuine issues of material fact as to whether or not Doctor John's would ever have run afoul of the limitations on "non-media" merchandise in the January 2004 Amendments. Specifically, Doctor John's has repeatedly represented that it was willing to comply with existing ordinances, in order to open at its chosen location, before the City undertook its series of amendments, and has continued to represent during this litigation that it would be willing to adhere to any constitutional limitation imposed by the court or the City on the percentage of "adult" items that could be sold in the store at its present location. *See Doctor John's II*, 389 F. Supp. 2d at 1128 (noting these representations). Doctor John's has now added representations that it has, indeed, modified its inventory in stores in other locations to comply with (or to avoid application of) local regulations. Doctor John's has also pointed to evidence that there are genuine disputes between the parties over what "non-media" items must be counted as "adult" merchandise, for purposes of determining whether or not Doctor John's has complied (or would comply) with the limitations on "sadomasochistic leather goods" or "sex toys and novelties." Where, as here, the party opposing summary judgment has gone beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designated "specific facts showing that there is a genuine issue

for trial," the moving party is not entitled to summary judgment. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

Therefore, the City is not entitled to summary judgment on its contention that the "non-media" provisions of the January 2004 Amendments were "applicable" to Doctor John's as a matter of law, if those provisions were also "constitutional."

### c.    *Damages issues*

The last issues concerning the January 2004 Amendments concern whether or not Doctor John's can recover damages for the delay in opening its Sioux City store arising from the City's enforcement of unconstitutional or inapplicable zoning ordinances. The City argues that Doctor John's cannot prove damages, because it failed to designate an expert qualified to testify as to economic damages. The City argues that the law is generally unfavorable to recovery of lost profits in tort actions, citing *Triple R. Indus., Inc. v. Century Lubricating Oils, Inc.*, 912 F.2d 234, 238 (8th Cir. 1990), and that Iowa recognizes the "new business rule," which holds that lost profits from a new business are generally too speculative to be recoverable in the absence of detailed testimony from a well-qualified expert, citing *Harsha v. State Savings Bank*, 346 N.W.2d 791, 797 (Iowa 1984).

As Doctor John's also asserts in a separate motion, Doctor John's argues that the issue of damages should be "bifurcated," until such time as it is apparent that damages can be awarded on its constitutional claims. Doctor John's argues, in the alternative, that it can prove loss of profits from the delay in the opening of its Sioux City store based on the sales and profits of its similar store in Lincoln, Nebraska, and based on its sales and profits in Sioux City for the years that it has been allowed to operate, which will suggest what profits it lost during its "peak" sales season, from before Christmas 2003 to Valentine's

Day 2004, because the City delayed the opening of its store. Thus, Doctor John's argues that it can make an adequate showing of damages without expert testimony.

The court finds that the City's legal challenges to damages are misplaced. Whatever the generally unfavorable view of the courts to lost profits damages in *tort* cases, *see Triple R. Indus., Inc.*, 912 F.2d at 238 (case involving tortious interference with a business relationship), this is *not* a tort case, but a case involving alleged constitutional violations. Similarly, the Iowa "new business rule," which is likewise applicable to tort claims, *see Harsha*, 346 N.W.2d at 797 (applying the rule in a case alleging breach of contract and tortious interference with business relationships), is simply not applicable to claims of federal constitutional violations. Rather, damages for a federal constitutional violation are those damages, including nominal damages, necessary to vindicate the federal constitutional rights of the claimant, even in the absence of actual injury. *See Villanueva v. George*, 659 F.2d 851, 855 (8th Cir. 1981) ("[W]e have . . . held that the violations of certain substantive constitutional rights are redressible by substantial compensatory awards independent of actual injury.") (citing *Herrera v. Valentine*, 653 F.2d 1220, 1227-1231 & nn.6-8 (8th Cir. 1981)); *see also Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986) ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."). In its post-hearing letter, the City conceded that it could find no authority that Iowa law would govern on the question of damages in a "constitutional" action pursuant to 42 U.S.C. § 1983.

In its post-hearing letter, however, the City did assert that principles similar to the "new business rule" are recognized under federal common law, citing *Sambo's of Ohio, Inc. v. City of Toledo*, 466 F. Supp. 177, 181 (N.D. Ohio 1979). This argument, even if accepted, does not mean that Doctor John's cannot prove damages. For example, the

rationale of Iowa's "new business rule" is applicable only to an "untried business." *Harsha*, 346 N.W.2d at 797-98 (specifically involving a business that failed, and noting that the rationale of the rule is that profits from a new business are too speculative, because "'there are no available data of past business from which the fact of anticipated profits could have been established'") (quoting *City of Corning v. Iowa-Nebraska Light & Power Co.*, 225 Iowa 1380, 1389, 282 N.W. 791, 796 (1938)). The Doctor John's store in Sioux City, however, is not an "untried business" or a business with no "track record," but one that has operated for some time pursuant to the court's injunction. Moreover, even supposing that the Iowa "new business rule"—or something like it from federal common law—is applicable, it is not "absolute." *Id.* at 798. Instead, "[i]f factual data are presented which furnish a basis for compilation of probable loss of profits, evidence of future profits should be admitted and its weight, if any, should be left to the jury." *Id.* Doctor John's has pointed to evidence that could demonstrate a basis for compilation of probable loss of profits of the Sioux City store during the winter of 2003-2004, even in the absence of expert testimony, including, for example, evidence showing the performance of that store in subsequent winter "high" seasons and consideration of the profits of other comparable Doctor John's stores. Indeed, the actual track record of sales of the Doctor John's store in Sioux City is the best evidence of the lost profits during that store's "missed" sales season, because it is likely to be much more accurate than the opinion of a hired expert asked to pontificate about lost profits. Thus, whether or not Doctor John's can prove lost profits from the delay in the opening of its Sioux City store should be left to the jury. *Id.*

Therefore, the City is not entitled to summary judgment on the claims of Doctor John's arising from the January 2004 Amendments on the ground that Doctor John's cannot prove damages.

### 3.    Summary

Upon the foregoing, the City's April 12, 2006, Motion To Reconsider Memorandum Opinion And Order Regarding Cross-Motions For Summary Judgment On October 2003 And January 2004 Ordinances (docket no. 115) will be denied in its entirety. In addition, those parts of the City's April 12, 2006, Second Motion For Summary Judgment Re:  Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061 (docket no. 117) seeking summary judgment in the City's favor on the "non-media" provisions of the January 2004 Amendments will also be denied.  This matter will proceed to trial on the issues of whether or not the "non-media" provisions of the January 2004 Amendments were constitutional; whether or not those provisions would have been applicable to the Doctor John's store in Sioux City; and what, if any, damages Doctor John's is entitled to recover for the delay in the opening of its Sioux City store owing to the City's enforcement of unconstitutional or inapplicable ordinances.

### C.  The Motion To Bifurcate Damages Issues

Before considering issues relating to the constitutionality of the December 2004 Amendments, the court will consider the January 12, 2006, Motion To Bifurcate Damages (docket no. 94) filed by Doctor John's, as damages issues relate primarily to the effect of the October 2003 and January 2004 Amendments.  Once again, the court will begin with a summary of the arguments of the parties.

### 1.    Arguments of the parties

In its motion to bifurcate, Doctor John's asserts that the issues of whether the City's earlier amendments validly prohibited the operation of the Doctor John's store in Sioux City will most likely be resolved by the pending motions for summary judgment and that, depending on the court's ruling, damages issues may arise, but at the moment, such

damages claims are "speculative." Doctor John's also asserts that it has had considerable difficulty obtaining an outside accountant to review its accounts and considerable difficulty sifting through the relevant information, most of which is not computerized. Doctor John's wishes to avoid the expense and other burdens of detailed damages calculations until such time as it is clear that damages evidence must be presented. Doctor John's, therefore, suggests that the court bifurcate proceedings and allow a brief period of discovery and an additional trial or hearing on damages, once it is clear that damages are at issue and that the parties cannot settle any such damages issues.

In response, the City contends that Doctor John's has missed the deadline to designate a damages expert and has not sought an extension of its time to do so. Moreover, the City contends that Doctor John's has not articulated any justification for its failure to disclose expert and damages information within the time set forth in the Scheduling Order and Discovery Plan. Thus, the City contends that Doctor John's should be precluded from presenting any expert damages evidence. At the same time, the City argues that it is entitled to discover the evidence Doctor John's has concerning its financial and inventory records prior to trial. At most, the City contends that the parties may be entitled to an extension of the discovery deadline for disclosure of economic evidence before trial.

In reply, Doctor John's argues that it is not possible to produce its financial and inventory records without relying on its expert, who currently has such information. Doctor John's contends that the City also made its expert witness disclosure some seven months late, without ever seeking leave to do so, and that the delays in disposition of the summary judgment motions are largely attributable to extensions requested by the City, making it unreasonable for the City to complain about a tardy expert designation by Doctor

John's.  Under the circumstances, Doctor John's seeks an extension of its deadlines to designate a damages expert and to complete discovery on damages issues.

### 2. *Analysis*

Rule 42(b) of the Federal Rules of Civil Procedure provides for bifurcation of trials, as follows:

> **(b) Separate Trials.**  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b).  The Eighth Circuit Court of Appeals has repeatedly held that the trial court's ruling on a motion to bifurcate "is reviewed for abuse of discretion." *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (citing *Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).

Courts in this Circuit have recognized that many factors may be relevant to the determination of whether or not to bifurcate proceedings pursuant to Rule 42(b).  *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201-02 (8th Cir. 1990) ("In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion."); *accord Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 2006 WL 1026992, *2 (E.D. Mo. 2006) (slip op.) ("Multiple factors govern whether bifurcation is appropriate in any given case, including the separability of the issues; simplification of discovery and conservation of resources; prejudice to the parties; and the effect of bifurcation on the

potential for settlement.") (citing *F & G Scrolling Mouse, LLC v. IBM Corporation*, 190 F.R.D. 385, 387 (M.D.N.C. 1999)); *Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 466 (N.D. Iowa 2003) (citing *O'Dell*, 904 F.2d at 1201-02, as identifying pertinent factors, and noting, further, that Rule 42(b) expressly identifies "expedition" and "economy" as pertinent factors). However, the key issue is whether bifurcation is necessary to avoid prejudice. *Athey*, 234 F.3d at 362 (because the movant could not show prejudice, the district court did not abuse its discretion by refusing to bifurcate claims).

The court finds that Doctor John's has attempted to justify its motion to bifurcate on the basis of burdensomeness of assembling damages evidence and difficulties in finding a damages expert before it is clear that damages issues will go to trial, rather than on the basis of any actual "prejudice." *Id.* On the other hand, the court has now determined that there are issues of fact on "constitutional" issues, for the court to determine, before it is clear that a jury should be empaneled to decide any "damages" issues. The court also concludes that a trial of the "constitutional" issues to the court in conjunction with a trial of "damages" issues to a jury is potentially confusing and prejudicial. Under these circumstances, the court concludes that the proper course is to use the existing trial date of September 11, 2006, for the trial to the court of "constitutional" issues, and then to set a jury trial on damages issues, if necessary, for a later date. *Id.* (whether or not to bifurcate proceedings is committed to the trial court's discretion).

Such a course also provides additional time for the parties to complete discovery on "damages" issues. Also, in light of rescheduling of the jury trial on damages, the court finds that the City would not be prejudiced by a belated designation by Doctor John's of an expert on damages. The court also finds that both parties consider discovery on damages issues to be incomplete, so that it is appropriate to reopen discovery to address damages issues and any report of the damages expert Doctor John's may now designate.

The January 12, 2006, Motion To Bifurcate Damages (docket no. 94) filed by Doctor John's will be granted on these terms.

### D. Issues Relating To The December 2004 Amendments

The parties' second round of summary judgment motions also raises issues pertaining to the City's later round of amendments to its "adult entertainment business" ordinances, which are described for convenience here as the December 2004 Amendments. In its August 22, 2005, Second Motion For Summary Judgment (docket no. 76), Doctor John's seeks summary judgment in its favor that the "sexual device shop" definition in Ordinance 2004-1061 is unconstitutional. In contrast, in the pertinent part of its April 12, 2006, Second Motion For Summary Judgment Re: Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061 (docket no. 117), the City asserts that it is entitled to summary judgment that Ordinance 2004-1061 is constitutional. The court will once again summarize the parties' arguments on pertinent issues.

### 1. Arguments of the parties

Doctor John's asserts that it is a "sexually oriented business" (SOB) subject to regulation under the December 2004 Amendments only by virtue of the definition therein of a "sexual device shop." Doctor John's contends that the "sexual device shop" definition, however, fails even "rational basis" scrutiny. Notwithstanding that Doctor John's concedes that only "rational basis" scrutiny is applicable, most of Doctor John's arguments point to what Doctor John's contends are the weaknesses of the opinions of the City's expert, Dr. McCleary, concerning the "secondary effects" purportedly caused by "sexual device shops" in general and the Doctor John's store in Sioux City in particular. For example, Doctor John's asserts that the most important factor in Dr. McCleary's "secondary effects" analysis is gender of the customers. However, because Doctor John's

contends that it does not attract the same kind of customers at all and, instead, draws a very substantial percentage of women customers (between 35% and 47%, depending upon who was counting and when), the whole basis of Dr. McCleary's theory is missing in this case. Doctor John's also points to what it considers the "irrationality" of the City's dichotomy between businesses that sell "sexual devices," but do not exclude children from their premises, which are exempted from the December 2004 Amendments, and businesses that sell such devices, but exclude children, which are regulated under the December 2004 Amendments.

In response, and in support of its own motion for summary judgment, the City contends that a municipality can regulate trade in sexual devices (sex toys and novelties and other "non-media" merchandise) without implicating First Amendment rights or other constitutional rights of similar stature. Specifically, the City argues that there is no support for Doctor John's theory that there are fundamental privacy rights that are implicated by regulation of sexual devices. Consequently, the City argues that such regulations are not subject to the same intermediate scrutiny on a substantive due process challenge that would be afforded regulations that do implicate First Amendment rights or other fundamental rights. The City then describes the attempt by Doctor John's to point out weaknesses in Dr. McCleary's report as "nitpicking" that is irrelevant, where the provisions in question are not subject to intermediate scrutiny. On "rational basis" review, which the City argues is all that is applicable to the "non-media" provisions here, the City contends that Doctor John's must negate every conceivable basis that might support the ordinance, and that Doctor John's cannot meet this burden. Nor, the City contends, can Doctor John's show that it is similarly situated in all relevant respects to any business that falls outside of the regulation, so that Doctor John's cannot mount a successful "equal protection" argument. The City also argues that Doctor John's *is* an "adult bookstore or

adult video store" within the meaning of the December 2004 Amendments, not merely a "sexual device shop," and that those "media" provisions are "content neutral" and do withstand intermediate scrutiny. Finally, the City also argues that the "civil disability" provisions of Ordinance 2004-1061, which, *inter alia*, prevent an "adult oriented business" from obtaining a license if certain "influential persons" have been convicted of certain "specified criminal activity," are constitutional and applicable to Doctor John's.

In resistance to the City's Second Motion For Summary Judgment and in reply in further support of its own Second Motion For Summary Judgment, Doctor John's asserts that it is not an "adult video store" under Ordinance 2004-1061, because it does not meet the threshold of twenty-five percent of its inventory in "sexually oriented media," and that, in any event, that provision violates the First Amendment. Doctor John's also reiterates its contention that the "sexual device shop" definition, which it repeatedly describes as "banning" the sale of such devices, violates a substantive due process right to privacy and the right to equal protection. Doctor John's also contends that the City is improperly including various items in its count of "sexual devices" that cannot properly be considered "sexual devices." Doctor John's also reiterates that the sale of "sexual devices" does not give rise to the same "secondary effects" that may warrant regulating other kinds of adult businesses. Next, Doctor John's points to what it describes as the "silly" distinction in the licensing ordinance between stores that do admit minors and those that do not and asserts that the City has only identified irrelevant factors to justify its targeting of "sexual devices." Finally, Doctor John's argues that the "civil disability" provision is constitutionally infirm, both facially and as applied to Doctor John's.

In the pertinent part of its own reply brief, the City argues that Ordinance 2004-1061 does not "ban" the sale of sexual devices, but only limits the time, place, and manner in which such items can be sold. The City also disputes the contention by Doctor John's

that sale of such items has no "secondary effects" based on the assertion by Doctor John's that such items attract primarily a female clientele. The City finds no evidence in the record demonstrating that female customers of the Doctor John's store in Sioux City were attracted by or purchased primarily sexual devices, while noting evidence that "masturbation toys for men" are also among the sexual devices sold by Doctor John's. Indeed, the City contends that both parties' customer gender tallies show that a majority of the customers at the Doctor John's store in Sioux City are male. As to "rational basis" review, which the City contends is actually applicable to regulations concerning sexual devices, however, the City argues that Doctor John's has failed to demonstrate that the ordinance is "irrational." The City also argues that the attempts by Doctor John's to discredit Dr. McCleary's report are without legal or evidentiary support. Specifically, the City contends that Dr. McCleary's report indicates that, since the Doctor John's store opened in Sioux City, ambient crime has more than doubled. The City contends that it does not have to show that the increase in ambient crime is attributable to the Doctor John's store, because the City does not bear the burden of ruling out every theory for the link between the store and secondary effects that is inconsistent with its own.

## 2. *Analysis*

The court finds it appropriate to consider separately the constitutionality and applicability of the "media" and "non-media" provisions of the December 2004 Amendments. The court will then turn to the constitutionality of the "disability" provisions of the "licensing" ordinance. Therefore, the court will begin its analysis with the "adult bookstore or adult video store" provisions of the December 2004 Amendments.

### a. The "adult bookstore or adult video store" provisions

Under both SIOUX CITY MUNICIPAL ORDINANCE 2004-1060 and the comparable provisions of SIOUX CITY MUNICIPAL ORDINANCE 2004-1061, there are five "triggers" to a business falling within the definition of an "adult bookstore and adult video store," and hence, being subject to zoning and licensing requirements:

> a. "Adult Bookstore or Adult Video Store" means a commercial establishment that:
>
> (1) has a substantial portion of its displayed merchandise which consists of, or
>
> (2) has a substantial portion of the wholesale value of its displayed merchandise which consists of, or
>
> (3) has a substantial portion of the retail value of its displayed merchandise which consists of, or
>
> (4) derives a substantial portion of its revenues from the sale or rental, for any form of consideration of, or
>
> (5) maintains a substantial section of its sales or display space for the sale or rental, for any form of consideration, of any one or more of the following: books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, digital video discs, slides, or other visual representations which are characterized by their emphasis upon the exhibition or description of "specified sexual activities" or "specified anatomical areas."

SIOUX CITY MUNICIPAL ORDINANCE 2004-1060, Appendix To Defendant's [First] Motion For Summary Judgment (docket no. 56) at 86-87; SIOUX CITY MUNICIPAL ORDINANCE 2004-1061, Appendix To Defendant's Second Motion For Summary Judgment (docket no. 117) at 150 (same definition). "Substantial," in turn, "means more than twenty-five percent (25%) of the item so modified." *Id.* Thus, this provision uses a "twenty-five percent rule" for "media" to determine whether or not a business is regulated, but applies

that "twenty-five percent rule" to various computations of the inventory or revenue of the putative "sexually oriented business."◨[7]

The City contends that one or more of these "triggers" is applicable to the Doctor John's store in Sioux City, based on both record evidence and admissions by Doctor John's. Doctor John's, on the other hand, contends that the "adult bookstore or adult video store" provisions are unconstitutional and, in any event, inapplicable to its Sioux City store.

*i.* *"Constitutionality" of the provisions.* The court will begin its analysis with the assumption that the lowest level of scrutiny applicable to the "adult bookstore or adult video store" provisions is "intermediate scrutiny," accepting for the moment the City's contention that the provisions are "content neutral." As explained more fully above, "intermediate scrutiny" requires a showing that the regulation was designed to serve a "substantial" governmental interest. *Alameda Books, Inc.*, 535 U.S. at 438 (2002). Although "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest,'" the municipality may not rely merely on "shoddy data or reasoning." *Id.* The court will also assume that the City has identified a "substantial"

---

[7]The court notes that prior versions of the City's "adult entertainment business" ordinances used a "stock in trade" yardstick to determine certain percentage limitations, which the court suggested in its prior ruling was sufficiently vague to generate genuine issues of material fact as to whether the stock of the Doctor John's store fell within or outside of those limitations. In contrast, the City has now defined the "twenty-five percent rule" in the December 2004 Amendments much more specifically as applicable to a business's "displayed merchandise," "wholesale value of its displayed merchandise," "retail value of its displayed merchandise," "revenues," or "section of its sales or display space." SIOUX CITY MUNICIPAL ORDINANCE 2004-1060; SIOUX CITY MUNICIPAL ORDINANCE 2004-1061.

government interest in regulating the "secondary effects" and other public welfare problems of "adult entertainment businesses" or "sexually oriented businesses."

There is no question that the City has come much closer to establishing, based on evidence that it "reasonably believed to be relevant," that the "twenty-five percent rule" in the "adult bookstore or adult video store" provisions in the December 2004 Amendments will combat the "secondary effects" of "adult entertainment businesses" or "sexually oriented businesses" than the City ever did as to any challenged provision of the January 2004 Amendments. Setting aside, for the moment, the parties' dispute over the validity of Dr. McCleary's study and opinions concerning the "secondary effects" of the Doctor John's store in Sioux City, the City asserts that other record evidence concerning studies of "secondary effects" of "adult entertainment businesses" in other municipalities could reasonably be deemed to be relevant to the issue of the "secondary effects" of a business selling such a concentration of "adult" media. That does not mean, however, that the issue is necessarily beyond dispute. Doctor John's still asserts that this provision is "unconstitutional," but does not clearly state the pertinent arguments or clearly refer to prior "constitutionality" arguments that it believes are applicable. The court surmises that Doctor John's is relying on its prior contention that, while "secondary effects" might arise, for example, from a store with "on-premises" facilities for viewing sexually-oriented media, there are no such "secondary effects" from a business, such as the Doctor John's store in Sioux City, which does not have such "on-premises" viewing facilities.

There is legal support for such a position. In *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir.), *cert. denied*, 540 U.S. 982 (2003), the Fifth Circuit Court of Appeals recognized such a distinction between businesses providing "adult" media for "on-premises" viewing and those providing "adult" media only for "off-premises" viewing. The court noted that the studies of "secondary effects" presented by

the city in that case "either entirely exclude establishments that provide only take-home videos and books (as is the case with the Seattle study) or include them but do not differentiate the data collected from such businesses from evidence collected from enterprises that provide on-site adult entertainment—as may have been the case with the Austin and Garden Grove studies." *Encore Videos, Inc.*, 330 F.3d at 294-95. The court then observed, "Off-site businesses differ from on-site ones, because it is only reasonable to assume that the former are less likely to create harmful secondary effects. If consumers of pornography cannot view the materials at the sexually oriented establishment, they are less likely to linger in the area and engage in public alcohol consumption and other undesirable activities." *Id.* at 295.

In so holding, the Fifth Circuit Court of Appeals distinguished a decision of the Eighth Circuit Court of Appeals, *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413 (8th Cir.), *cert. denied*, 513 U.S. 1017 (1994), which had rejected the distinction on the basis that "'that simply is not the law,'" because the Fifth Circuit Court of Appeals found that the decision in *ILQ Investments* gave no more than a "cursory" explanation for its ruling. *Encore Videos, Inc.*, 330 F.3d at 295 (citing *ILQ Inv., Inc.*, 25 F.3d at 1418). In *ILQ Investments*, the plaintiff argued that the city was required to disregard various studies, "because none evaluated the secondary effects of a bookstore offering non-adult as well as adult materials and having no facilities for on-premises consumption." *ILQ Inv., Inc.*, 25 F.3d at 1418. As the Fifth Circuit Court of Appeals later noted, the Eighth Circuit Court of Appeals rejected this argument, stating, "That is simply not the law." *Id.* The complete explanation offered by the Eighth Circuit Court of Appeals was as follows:

> "[T]he requirement of narrow tailoring is satisfied 'so long as the ⋯ regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward [v. Rock Against Racism]*, 491 U.S. [781,] 799, 109 S.

Ct. [2746,] 2758 [(1989)], quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906, 86 L. Ed. 2d 536 (1985). Under *City of Renton [v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)], Rochester need not prove that Downtown Book and Video would likely have the exact same adverse effects on its surroundings as the adult businesses studied by Indianapolis, St. Paul, and Phoenix. So long as Ordinance No. 2590 affects only categories of businesses reasonably believed to produce at least some of the unwanted secondary effects, Rochester "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S. Ct. 2440, 2453, 49 L. Ed. 2d 310 (1976) (plurality opinion).

Rochester relied upon studies that identified specific adverse secondary effects attributable to adult bookstores. The City reasonably believed that evidence was relevant to the problems addressed by Ordinance No. 2590. Even if Downtown Book and Video is a new type of adult business, it may not avoid time, place, and manner regulation that has been justified by studies of the secondary effects of reasonably similar businesses. *See Holmberg v. City of Ramsey*, 12 F.3d [140,] 143-44 [(8th Cir. 1993)].

*ILQ Inv., Inc.*, 25 F.3d at 1418 (footnote omitted).

With all due respect to the Eighth Circuit Court of Appeals, this court believes that the decision in *ILQ Investments* is seriously flawed, because it overlooks the possibility that a municipality *cannot* reasonably believe that a business that provides "adult" media only for "off-premises" viewing is likely to produce some of the unwanted secondary effects of a business that provides such media for "on-premises" viewing and, thus, an "off-premises" business *cannot* be considered a "reasonably similar business" to one that provides such media for "on-premises" viewing. *Id.* (purportedly applying these standards). Moreover, the court in *ILQ Investments* appears to have confused "strict" and

"intermediate" scrutiny, by referring to "narrow tailoring" of the ordinance, because the court was purportedly applying only "intermediate scrutiny" to a "content neutral" ordinance; thus, as the court had elsewhere stated, the applicable standard was whether the regulation was "'designed to serve a substantial government interest,'" not whether it was "narrowly tailored" to serve that interest. *Id.* at 1416 (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986)). This court believes that the Fifth Circuit decision in *Encore Video* is the better reasoned decision, because it properly applies the "reasonably believed" standard. Nevertheless, this court is not free, as was the Fifth Circuit Court of Appeals, to reject the decision in *ILQ Investments*, which appears to be controlling law in this circuit to the extent that *ILQ Investments* holds that a municipal ordinance that fails to distinguish businesses that provide "adult" media for "on-premises" viewing from businesses that provide such media only for "off-premises" viewing survives "intermediate scrutiny."

Therefore, albeit reluctantly and with considerable reservations, this court must conclude that the "adult bookstore or adult video store" provisions of the December 2004 Amendments are "constitutional" under "intermediate scrutiny."

That conclusion, however, only begs the question of whether the "adult bookstore or adult video store" provisions are, instead, subject to "strict scrutiny." An ordinance regulating businesses selling "adult" media is only subject to "strict scrutiny" if it is "content based," rather than "content neutral." *Alameda Books, Inc.*, 535 U.S. at 433-34 ("If the regulation were content based, it would be considered presumptively invalid and subject to strict scrutiny," but if the regulation were "content neutral," "intermediate scrutiny" would be appropriate). If the regulation is "content based," and subject to "strict scrutiny," to be constitutional, the regulation must be "*narrowly tailored* to serve a

*compelling* state interest." *See, e.g., Republican Party of Minnesota v. White*, 536 U.S. 765, 775 (2002) (emphasis added).

In its ruling on the first round of summary judgment motions in this case, which addressed the constitutionality of the January 2004 Amendments, this court concluded that the most telling inquiry, for purposes of determining "content neutrality," "is not 'whether the municipality can demonstrate a connection between the speech regulated by the ordinance and secondary effects that motivated the adoption of the ordinance'; rather, the inquiry at this stage 'requires courts to verify that the "predominate concerns" motivating the ordinance "were with the secondary effects of adult [speech], and not with the content of adult [speech]."'" *Doctor John's II*, 389 F. Supp. 2d at 1129 (quoting *Alameda Books, Inc.*, 535 U.S. at 440-41, in turn quoting *Renton*, 475 U.S. at 47). This court then noted that it had "found little guidance on what evidence demonstrates or disproves that the 'predominate concern' of an ordinance was with regulating 'secondary effects' rather than the content of protected expression." *Id.* at 1120. Nevertheless, this court gleaned from a prior decision of the Eighth Circuit Court of Appeals, *Jake's, Ltd., Inc. v. City of Coates*, 284 F.3d 884 (8th Cir. 2002), *cert. denied*, 537 U.S. 948 (2002), a suggestion that "unreasonable" or "discriminatory" conduct of the municipality may undermine "content neutrality." *Doctor John's II*, 389 F. Supp. 2d at 1121 (citing *Jake's, Ltd.*, 284 F.3d at 891).

Here, for much the same reason that the court concluded that there were genuine issues of material fact as to whether or not the January 2004 Amendments were enacted for a discriminatory reason, and hence might be "content based," the court now concludes that Doctor John's has offered evidence that the December 2004 Amendments were also enacted for a discriminatory reason. That evidence is evidence that the December 2004 Amendments, like the January 2004 Amendments, were enacted for the very purpose of

excluding Doctor John's from its chosen location, based on the "adult" content of its merchandise, rather than to address the "secondary effects" of adult entertainment businesses generally, because the City adjusted the ordinances to exclude Doctor John's when Doctor John's professed itself willing to abide by current limitations on "adult" content used to define adult entertainment businesses. In addition, the court finds that some of those adjustments were patently "irrational," as explained in more detail both above and below. This evidence suggests that "the 'predominate concerns' motivating the ordinance" were not "'with the secondary effects of adult [speech],'" but were "'with the content of adult [speech]'" in media sold by Doctor John's. *Alameda Books, Inc.*, 535 U.S. at 440-41 (quoting *Renton*, 475 U.S. at 47). Thus, the court concludes that Doctor John's has generated a genuine issue of material fact as to whether the December 2004 Amendments were "content based."

If Doctor John's ultimately proves that the December 2004 Amendments were "content based," the court concludes that there are also genuine issues of material fact as to whether the "adult bookstore or adult video store" provisions would fail "strict scrutiny." Even assuming, again, that the City has a "compelling interest" in its exercise of police powers to regulate adult entertainment businesses to combat "secondary effects" of such businesses, *see Doctor John's II*, 389 F. Supp. 2d at 1122-23 (making the same assumption), there are genuine issues of material fact as to whether the "adult bookstore or adult video store" provisions of the December 2004 Amendments are "narrowly tailored" to serve that "compelling interest." *See White*, 536 U.S. at 775 (stating the "strict scrutiny" test). The question here is whether it is necessary to subject adult entertainment businesses providing "adult" media only for "off-premises" viewing to the same limitations as businesses providing such media for "on-premises" viewing to combat "secondary effects." *Cf. Encore Videos, Inc.*, 330 F.3d at 295 (finding the distinction

between such businesses critical on "intermediate scrutiny"). While the City's data may have been sufficient to uphold the "adult bookstore or adult video store" provisions under "intermediate scrutiny," at least in light of the holding of the Eighth Circuit Court of Appeals in *ILQ Investments*, 25 F.3d at 1418, there are genuine issues of material fact as to whether that data, including Dr. McCleary's report, is simply too "shoddy" to support the contention that "secondary effects" of adult entertainment businesses can only be effectively controlled if "off-premises" businesses are lumped in with "on-premises" businesses. *Alameda Books, Inc.*, 535 U.S. at 438 (a municipality cannot get away with "shoddy data or reasoning" to connect adult entertainment businesses to "secondary effects").

More specifically still, the only evidence in the record that the court finds reasonably goes to the question of whether businesses that provide "adult" media only for "off-premises" use have some of the same or similar "secondary effects" as businesses that provide such media for "on-premises" use is Dr. McClearly's report concerning the supposed "secondary effects" of the Doctor John's store in Sioux City. Contrary to the City's contentions, however, the flaws that Doctor John's has identified in Dr. McCleary's report are not mere "nitpicking," but flaws that cast reasonable doubt not only on the validity of Dr. McCleary's report, but on whether any municipality could reasonably have believed that his report supported the regulations at issue here. For example, as Doctor John's points out, Dr. McCleary's report completely fails to consider whether any other factors in the vicinity of the Doctor John's store might account for the supposed "doubling" of "ambient crime," which seriously undermines the soundness of his conclusion that the Doctor John's store is the cause, and undermines the reasonableness of any belief that his report is valid, where the area has undergone considerable development during the time that the Doctor John's store has been open, including the

addition of bars and other businesses open for extended hours. Another example pointed out by Doctor John's is Dr. McCleary's "fluid" or "situational" identification of the kinds of crime that constitute "secondary effects" of an "adult entertainment business," depending upon what crimes he finds in the area of the putative "adult entertainment business" he is studying in a particular municipality. In short, there are at least genuine issues of material fact as to whether a "narrowly tailored" ordinance would recognize and account for the differences between businesses offering "on-premises" viewing and those offering only "off-premises" viewing by noting the far greater likelihood that an "on-premises" business will have secondary effects, but an "off-premises" one will not. *Cf. Encore Videos, Inc.*, 330 F.3d at 295.

Therefore, the City is not entitled to summary judgment to the effect that the "adult bookstore or adult video store" provisions of the December 2004 Amendments are "constitutional," but neither is Doctor John's entitled to summary judgment to the effect that those provisions are "unconstitutional."

*ii.* ***"Applicability" of the provisions***. Because the court cannot make a definitive determination of the constitutionality of the "adult bookstore or adult video store" provisions, the court must also consider whether or not there are genuine issues of material fact as to the "applicability" of those provisions to the Doctor John's store in Sioux City. The City argues that there is no dispute—indeed, that Doctor John's has admitted—that the provisions apply, because Doctor John's stocks "adult" videos that exceed one or more of the "triggers" for application of the provision. Doctor John's, however, argues that its stock of "adult" media does not exceed any such trigger, or if its stock has exceeded any trigger while the provisions were not being enforced, it has consistently represented that it would revise its stock to comply with (or to avoid application of) any of the applicable "triggers" in any provisions of the ordinances found to be constitutional.

The court agrees with the City that the record evidence demonstrates, beyond dispute, that the Doctor John's store in Sioux City has, at least from time to time, exceeded one or more of the "triggers" for application of the "adult bookstore or adult video store" provisions. On the other hand, there is *at least* a genuine issue of material fact, based on representations by Doctor John's personnel and based on the modification of the inventory of other Doctor John's stores to comply with local regulations, as to whether Doctor John's would comply with such provisions after notice that they are constitutional and will be enforced. There is also some question as to whether or not Doctor John's was "grandfathered" from application of these provisions, but that is a question that is not squarely before the court at this time. Certainly, to date, there is no evidence that the City has notified Doctor John's that its failure to comply with the provisions will result in enforcement action.

Therefore, the City is not entitled to summary judgment that the "adult bookstore or adult video store" provisions of the December 2004 Amendments are "applicable" to Doctor John's, if those provisions are also "constitutional."

### b.    The "sexual device shop" provisions

Until the City opined that Doctor John's was subject to the December 2004 Amendments under *both* the "adult bookstore or adult video store" provisions and the "sexual device shop" provisions, both Doctor John's and the City had been primarily concerned with the latter provisions. Therefore, the court now turns to consideration of the "sexual device shop" provisions of the December 2004 Amendments.

As mentioned above, under the December 2004 Amendments, a "sexual device shop" is defined as follows:

> "Sexual    Device    Shop"    means    a    commercial
> establishment that regularly features sexual devices. Nothing

74

in this definition shall be construed to include any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services, nor shall this definition be construed to include commercial establishments which do not restrict access to any portion of their premises by reason of age.

SIOUX CITY MUNICIPAL ORDINANCE 2004-1059; SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 (same definition).

The court cannot find any genuine issue of material fact as to whether the "sexual device shop" provisions apply to the Doctor John's store in Sioux City, because the record unquestionably demonstrates that Doctor John's "regularly features" more than one "sexual device," it does exclude minors, and it does not fit any other stated exemption. *See* SIOUX CITY MUNICIPAL ORDINANCE 2004-1059 (defining a "sexual device shop" in this way); SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 (same definition). The parties, however, dispute the constitutionality of the "sexual device shop" provisions.

The City contends that there is no "similarly situated" entity, treated more favorably, to which Doctor John's could point to mount an "equal protection" challenge to these provisions. The City also contends that there is no genuine issue of material fact that these provisions satisfy "rational basis" scrutiny, the only level of scrutiny that the City contends could be applicable to a provision that does not impinge on fundamental rights, and that Doctor John's has admitted that the provisions apply to its Sioux City store. Doctor John's, on the other hand, contends that the provisions are unconstitutional, even if only "rational basis" scrutiny applies, for instance, because the stated exemptions are patently "irrational." Doctor John's also asserts that the provisions are unconstitutional, because they violate equal protection.

75

*i.* ***The "equal protection" challenge***.  As explained above, in reference to the "non-media" provisions of the January 2004 Amendments, in the land use or zoning context, to prove an equal protection violation involving neither a suspect classification nor a fundamental right, the plaintiff "must prove he was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski*, 435 F.3d at 901.  To meet these requirements, Doctor John's "must prove similarity to other individuals or entities receiving favorable treatment." *Id.*  Doctor John's has, again, nominated Spencer Gifts as the "similarly situated, but more favorably treated" entity as to the "sexual device shop" provisions of the December 2004 Amendments.

In contrast to the court's analysis of the issue with reference to the January 2004 Amendments, it is beyond dispute that Spencer Gifts, like Doctor John's, does engage in the "triggering" conduct for application of the "sexual device shop" provisions, because it does "regularly feature" at least one sexual device.  *See* SIOUX CITY MUNICIPAL ORDINANCE 2004-1059; SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 (same definition).  Thus, Spencer Gifts and Doctor John's would both be subject to the ordinance, absent some other limitation, requirement, or exemption.  Clearly, the City cannot rely on its contention that Spencer Gifts sells only a few items that could be categorized as "sex toys" along with its other merchandise, while the "sex toys" inventory at the Doctor John's store is extensive, as a relevant distinction under the "sexual device shop" ordinance, for "equal protection" purposes, because the inventory of both Spencer Gifts and Doctor John's would trigger application of the "sexual device shop" provisions.  Thus, the City's other bases for distinguishing Spencer Gifts from Doctor John's become relatively more important to the determination of whether the two businesses are "similarly situated."

The City also argues that Spencer Gifts is not similarly situated to Doctor John's, because it is in a shop in an enclosed mall, not a stand-alone store; it closes in the evening, instead of remaining open all night or late into the night as does Doctor John's; and it admits children, where Doctor John's does not. Once again, and more specifically, the court is not impressed with the City's attempts to distinguish Spencer Gifts from Doctor John's on the basis of the factors that the City has identified.

First, it would seem that the possibility of exposure of the good citizens of Sioux City to the deleterious "secondary effects" of an adult entertainment business would be exacerbated by the location of such a business in an enclosed mall, frequented by families and unchaperoned minors, rather than a stand-alone store, which necessarily somewhat isolates its impact on surrounding businesses and incidental passers by. Moreover, the "sexual device shop" provisions, and the December 2004 Amendments as a whole, impose no such "place" limitations, although they do limit adult entertainment businesses to more broadly defined "zones." Indeed, the City's argument for the relevance of this factor is "backwards": Zoning ordinances define the places where adult entertainment businesses can locate; they do not define adult entertainment businesses based on their location. The location of Spencer Gifts versus the location of Doctor John's, thus, is not a relevant distinction for purposes of the applicability of the "sexual device shop" provisions.

Various studies of the "secondary effects" of "adult entertainment businesses" in the record may suggest that late-night hours of operation could be a factor in the "secondary effects" of such businesses. However, nowhere in the "sexual device shop" ordinance or, indeed, in any of the December 2004 Amendments, are the hours of operation of "adult entertainment businesses" regulated, so that the hours of operation do not present a relevant distinction under those amendments.

That leaves only the admission or exclusion of minors, which is a factor expressly identified in the "sexual device shop" provisions, as a "relevant" factor distinguishing Spencer Gifts from Doctor John's. That factor, however, is "irrational," both for purposes of the "equal protection" claim and the "substantive due process" claim, discussed below, so that it hardly invalidates the "similarity" of the "situation" of the two businesses, for purposes of the "equal protection" argument asserted by Doctor John's. If the legitimate governmental interest in regulating adult entertainment businesses is public welfare, then it is patently irrational to assume, state, or believe that the public welfare is better protected where a store selling "adult" merchandise is not regulated because it admits minors, whose welfare is recognized everywhere else in the law as entitled to greater protection than the welfare of adults. Instead, it is this very lack of a rational relationship between the admission of minors as an exemption from regulation and the interest in regulating adult entertainment businesses that demonstrates that an otherwise "similarly situated" business is more favorably treated, and that the difference in treatment is not rationally related to the supposed governmental interest in regulating adult entertainment businesses for public welfare reasons, which is the essence of an "equal protection" claim. *Koscielski*, 435 F.3d at 901 (in the land use or zoning context, to prove an equal protection violation involving neither a suspect classification nor a fundamental right, the plaintiff "must prove he was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective"). Where, as here, the City has utterly failed to generate a genuine issue of material fact that this difference in treatment is rationally related to its legitimate governmental objective, Doctor John's is entitled to summary judgment in its favor to the effect that the "sexual device shop" provisions violate equal protection.

***ii.*** ***The "substantive due process" challenge***.  In the alternative, the court will also consider the "substantive due process" challenge to the constitutionality of these provisions also raised by Doctor John's.  As mentioned above, to prove that a land use or zoning regulation that does not touch on a fundamental right or liberty interest violates substantive due process, the plaintiff "must prove the zoning ordinance is not rationally related to a legitimate government interest." *Koscielski*, 435 F.3d at 902.  There does not appear to be any dispute that the City's interest in enacting the December 2004 Amendments (at least if that interest is not simply to discriminate against Doctor John's) is public welfare and there can be no genuine dispute that such an interest is legitimate. *Cf. id.* (it was undisputed that the purpose of the city's zoning ordinance concerning the location of retail sales of firearms was to protect public safety and that such an interest was a legitimate government interest).  Thus, the question is whether the ordinance serves that legitimate interest.  The plaintiff must prove that the government action is "truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law," and is "so egregious or extraordinary as to shock the conscience." *Id.*  The City argues that Doctor John's cannot make such a showing as a matter of law.

The court cannot agree with the City as to the "rationality" of the provision of the December 2004 Amendments that defines a "sexual device shop" on the basis of its exclusion of minors.  There is absolutely no basis on which a reasonable person could believe that excluding minors from all or any part of an adult entertainment business is the factor that endangers public welfare.  Such an absurd notion turns the public welfare justification on its head, and does, indeed, shock the conscience. *Koscielski*, 435 F.3d at 902.  Thus, the "sexual device shop" provisions fail even "rational basis" scrutiny to the extent that they define a "sexual device shop," in part, on the basis that the business excludes minors.  Similarly, the court finds that the premise of the "sexual device shop"

definition that regularly featuring *a single sexual device* has an impact on the public welfare is "irrational," because there is absolutely no basis on which a reasonable person could believe that regularly featuring *a single sexual device* could have such an effect. The linkage of the "irrational" definition, based on regularly featuring a single sexual device, with the "irrational" exemption, based on admission of minors to the premises, geometrically increases the absurdity of this provision to the point where one's conscience must be shocked. *Id.*◻[8]

Therefore, the "sexual device shop" provisions violate substantive due process as a matter of law, just as they violate equal protection as a matter of law. Doctor John's, not the City, is entitled to summary judgment its favor on the question of the "constitutionality" of those provisions.

### c.    The licensing "civil disability" provision

Finally, the court must consider the parties' arguments concerning the constitutionality and applicability of the so-called "civil disability" provisions in the December 2004 Amendments. Those provisions bar certain persons and entities from obtaining licenses to operate "sexually oriented businesses" based, *inter alia*, on the conviction of persons with an "influential interest" in the business of "specified criminal activity." SIOUX CITY MUNICIPAL ORDINANCE 2004-1061 §§ 2-5. The City contends that the provisions permitting the City to withhold a license from an entity where certain "influential persons" have been convicted of certain "specified criminal activity" are

---

[8]The court also concludes that evidence of the targeting of the ordinances to exclude Doctor John's from its chosen location suggests, at a minimum, the "irrationality" of the "sexual device shop" provisions, providing the evidentiary support lacking for similar arguments in *Koscielski*, 435 F.3d at 903, and *Iowa Coal Min. Co., Inc.*, 257 F.3d at 853. The "irrationality" of these provisions, in other respects, which are not dependent upon any genuine issues of material fact, however, make it unnecessary to pursue this argument.

constitutional and applicable to Doctor John's. Doctor John's, on the other hand, argues that the "civil disability" provisions are constitutionally infirm, both facially and as applied to Doctor John's.

      *i.*      ***"Constitutionality" of the provision.*** The City contends that the "civil disability" provision does not ban sexually oriented businesses, but only regulates the manner of their operation by ensuring that persons with an influential interest have not been recently convicted of certain crimes. The City contends that such a provision is content neutral and narrowly tailored to serve the government's interest, and that "myriad" cases have upheld ordinances requiring background checks and licensing of persons who own and operate sexually oriented businesses.

      Doctor John's, on the other hand, argues that withholding a license is an outright ban on future protected expression by both individuals and businesses, so that these provisions invoke "strict scrutiny." Doctor John's then asserts that the provisions are neither narrowly tailored, nor necessary to achieve a compelling governmental interest. Doctor John's contends that denial of a license to engage in protected expression based on past behavior of an individual or business has been routinely condemned by numerous courts as a prior restraint on expression and there is, consequently, a heavy presumption of constitutional invalidity. Doctor John's then cites cases invalidating licensing schemes that imposed such prior restraints on expression.

      In reply, the City argues that the cases cited by Doctor John's are outdated and inapposite. Instead, the City contends that the controlling decision is *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004), in which the Supreme Court rejected "censorship" arguments similar to those Doctor John's asserts here. The City contends that the majority of Circuit Courts of Appeals have also rejected the position asserted by

Doctor John's and the decisions on which Doctor John's relies. Thus, the City asserts that the "civil disability" provisions at issue here are constitutional.

The court must, perforce, agree with the City that the "constitutionality" of the "civil disability" provisions is controlled by the Supreme Court's decision in *City of Littleton*. In that case, the Court held that an ordinance that, *inter alia*, required denial of a license to operate an adult entertainment business where the applicant "has been convicted of certain crimes within the prior five years" was constitutional, because it "does not seek to *censor* material." *City of Littleton*, 541 U.S. at 783 (emphasis in the original). Rather, the Court explained,

> These objective criteria are simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally the presence of any specific item of adult material in the Littleton community. Some license applicants will satisfy the criteria even if others do not; hence the community will likely contain outlets that sell protected adult material. A supplier of that material should be able to find outlets; a potential buyer should be able to find a seller. Nor should zoning requirements suppress that material, for a constitutional zoning system seeks to determine where, not whether, protected adult material can be sold. *See Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The upshot is that Littleton's "adult business" licensing scheme does "not present the grave 'dangers of a censorship system.'" *FW/PBS, [Inc. v. City of Dallas,]* 493 U.S. [215,] 228, 110 S.Ct. 596 [(1990)] (opinion of O'CONNOR, J.) (quoting *Freedman [v. State of Maryland]*, [380 U.S.] 58, 85 S.Ct. 734 [(1965)]). And the simple objective nature of the licensing criteria means that in the ordinary case, judicial review, too, should prove simple, hence expeditious. Where that is not so—where, for example, censorship of material, as well as delay in opening an

> additional outlet, is improperly threatened—the courts are able
> to act to prevent that harm.

*City of Littleton*, 541 U.S. at 783-84.

In light of *City of Littleton*, it is clear that the "censorship" and "prior restraint" arguments by Doctor John's fail. Like the provision upheld in *City of Littleton*, the "civil disability" provision here employs objective criteria that are simple enough to apply and review and that are, consequently, unlikely to suppress totally the presence of any specific item of adult material in Sioux City. *Id.* at 783. Indeed, the "civil disability" provision is not even a prior restraint upon the expression of any *individual*, because it imposes only a reasonable time limitation (five years) upon the individual's expression in a certain forum, operation of an adult entertainment business. Doctor John's has not even attempted to show that the provision is unconstitutional as applied to any individual, because Doctor John's has not shown that any individual who would be prevented from obtaining a license under these provisions would be precluded from pursuing other avenues of expression.

Thus, the court must conclude that the City is entitled to summary judgment in its favor that the licensing "civil disability" provision of the December 2004 Amendments is constitutional.

***ii.*** ***"Applicability" of the provision.*** The City contends that there is no dispute that John Haltom and John Kenneth Coil are both persons with an "influential interest" in the Doctor John's store in Sioux City, and no dispute that both have recently been convicted, pleaded guilty to, or pleaded nolo contendere to "specified criminal activity" within the meaning of the "civil disability" provision. Doctor John's does not even attempt to dispute these contentions. Instead, Doctor John's states that it has not and will not apply for the required license, because Doctor John's asserts that the requirement is unconstitutional. Doctor John's also contends that it has made only a "facial" attack on

the ordinance, so that the court need not decide whether or not Doctor John's could comply with the licensing requirement. Moreover, Doctor John's asserts that the "civil disability" provision makes clear that the City's goal is to force Doctor John's out of business.

The court finds that the City has properly put at issue whether or not the "civil disability" provisions are not only constitutional but applicable to Doctor John's. Doctor John's made both a "facial" and an "as applied" challenge to the constitutionality of the provisions and has put at issue whether any of the ordinances at issue bar it from operating its Sioux City store. Moreover, Doctor John's has completely failed to generate any genuine issues of material fact that those provisions are inapplicable. Of course, it is possible that Doctor John's could qualify for a license, if the "influential persons" currently disabled from obtaining a license divest themselves of their interests in Doctor John's, so that it is possible that Doctor John's will be able to obtain a license, notwithstanding the court's determination that the "civil disability" provisions are constitutional and currently applicable to Doctor John's.

Therefore, the City is also entitled to summary judgment that the "civil disability" provisions are constitutional and currently applicable to Doctor John's.


## III. CONCLUSION

Some provisions of the City's various amendments to its "adult entertainment business" ordinances are constitutional as a matter of law, others are unconstitutional as a matter of law, and still others are subject to genuine issues of material fact on issues relating to constitutionality. Moreover, genuine issues of material fact also remain on the applicability of some of provisions of the amendments to Doctor John's, if those provisions

are, indeed, constitutional, and on the question of damages to Doctor John's from its delay in opening as the result of the City's enforcement of its ordinances.

THEREFORE, upon the foregoing,

1.     The August 22, 2005, Second Motion For Summary Judgment (docket no. 76) filed by Doctor John's is **granted** and the court finds and declares that the "sexual device shop" definition in Ordinance 2004-1061 is unconstitutional, and any enforcement of that provision is permanently enjoined.

2.     The January 12, 2006, Motion To Bifurcate Damages (docket no. 94) filed by Doctor John's is **granted** as follows:

a.     The trial currently set to begin on **September 11, 2006,** will be a **bench trial** on the remaining "constitutionality" issues;

b.     **A jury trial on "damages" issues is now scheduled for Monday, January 22, 2007.** The jury trial on "damages" issues is scheduled for three days.

c.     Doctor John's shall have **to and including November 1, 2006, to designate an expert on damages issues**; and

d.     The parties shall have **to and including December 1, 2006,** to complete discovery on damages issues.

3.     The City's April 12, 2006, Motion To Reconsider Memorandum Opinion And Order Regarding Cross-Motions For Summary Judgment On October 2003 And January 2004 Ordinances (docket no. 115) is **denied**.

4.     The City's April 12, 2006, Second Motion For Summary Judgment Re: Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061 (docket no. 117) is **granted in part and denied in part**. More specifically,

a.     The part of the motion seeking summary judgment on the constitutionality of non-media portions of Ordinance 2004-0004 is **denied**;

85

b.     The part of the motion seeking summary judgment on the constitutionality of Ordinance 2004-1061 is **denied** as to the "adult bookstore or adult video store" provisions, and **denied** as to the "sexual device shop" provisions, but **granted** as to the "civil disability" provisions. The court finds and declares that the "civil disability" provision of Ordinance 2004-1061 is both constitutional and currently applicable to Doctor John's, but reserves for trial questions concerning the constitutionality and applicability of the "adult bookstore or adult video store" provisions.

5.     Defendant Eckert has been voluntarily dismissed from this lawsuit pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA