# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DOCTOR JOHN'S, INC., an Iowa
Corporation,

        Plaintiff,

vs.

CITY OF SIOUX CITY, IOWA,

        Defendant.

No. C 03-4121-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION TO
PRESERVE RIGHT TO TRIAL BY
JURY**

---

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Prior Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   C. Arguments Of The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   A. The City's Assertion Of A Right To Jury Trial . . . . . . . . . . . . . . . . 9
   B. Timeliness Of The Motion To Preserve Right To Jury Trial . . . . . . . . 9
   C. The Scope Of The Seventh Amendment Right To Jury Trial . . . . . . . 12
      1. The Supreme Court's decision in City of Monterey . . . . . . . 12
      2. Analysis under City of Monterey . . . . . . . . . . . . . . . . . . . 17
         a. First prong of the Seventh Amendment inquiry . . . . . 17
         b. Second prong of the Seventh Amendment inquiry . . . . 19

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I n this action for compensatory, declaratory, and injunctive relief pursuant to 42 U.S.C. § 1983, a putative "adult entertainment business" challenges the constitutionality and applicability of a string of amendments to city zoning ordinances regulating the location of "adult entertainment businesses" within the limits of the defendant city. Although the court disposed of numerous issues in rulings on two rounds of summary judgment motions, the court bifurcated the proceedings for ultimate determination of remaining issues by setting remaining "constitutionality" questions for bench trial and remaining "damages" issues for jury trial. The defendant city has now moved "to preserve" its Seventh Amendment right to jury trial on all remaining issues in reliance on the Supreme Court's decision in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999). Thus, the court must revisit the question of what, if any, of the remaining issues are properly the province of the court and what issues are properly the province of the jury.

## I. INTRODUCTION

### A. Factual Background

The court has recounted the factual background to these proceedings in considerable detail in prior rulings.[1] For present purposes, suffice it to say that, at some time in the fall

---

[1] In a prior published ruling, *Doctor John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022 (N.D. Iowa 2004) (*Doctor John's I*), filed on February 26, 2004, the court entered a preliminary injunction enjoining the City from pursuing, instituting, continuing, or completing any and all enforcement actions pursuant to the municipal code
(continued...)

of 2003, Doctor John's leased property in a relatively new and still developing commercial area near the southern edge of Sioux City, Iowa (the City). The location of the store was zoned as General Business-Commercial Planned Development ("BG-C") under the Sioux City Municipal Code. That is, it is in a General Business ("BG") zone, with a Commercial Planned Development Overlay ("-C"). Doctor John's intended to sell a variety of merchandise, including primarily lingerie, swim wear, women's shoes, lotions, and oils, as well as videos (both "adult" and otherwise), games, novelty items, and "marital aids" or "adult toys," including, for example, vibrators, "dildos," "masturbation toys," and blow up dolls (some described as "anatomically correct").

Shortly after Doctor John's representatives contacted the City Attorney concerning zoning requirements for the intended location of that store, and before Doctor John's could complete preparations to open its store in Sioux City, the City Council passed a series of significant amendments to Sioux City's zoning requirements for "adult entertainment businesses," including what has been called in this litigation the October 2003 "Moratorium" Amendment and the January 2004 Amendments. Those amendments prevented Doctor John's from opening its store at its chosen location. The amendments

---

[1](...continued)
employing the definition of "adult entertainment business" in the amendments to city ordinances passed in January 2004 (the January 2004 Amendments). In a lengthy ruling filed on September 28, 2005, *Doctor John's, Inc. v. City of Sioux City, Iowa*, 389 F. Supp. 2d 1096 (N.D. Iowa 2005) (*Doctor John's II*), the court addressed the parties' first round of summary judgment motions. In another lengthy ruling, published on July 21, 2006, *Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005 (N.D. Iowa 2006) (*Doctor John's III*), the court addressed the parties' second round of summary judgment motions. Most recently, in a ruling filed on October 17, 2006, *Doctor John's, Inc. v. City of Sioux City*, ___ F. Supp. 2d ___, 2006 WL 2949289 (N.D. Iowa Oct. 17, 2006) (*Doctor John's IV*), the court addressed the motion by Doctor John's to reconsider or amend the July 21, 2006, summary judgment ruling.

3

also prompted Doctor John's to file this lawsuit and to seek a preliminary injunction on enforcement of the ordinances. After delays caused by the City's enforcement of its amended zoning ordinances, Doctor John's opened its Sioux City store in late February or early March 2004 pursuant to a preliminary injunction from this court enjoining enforcement of the January 2004 Amendments.

In December 2004, some time after the court had enjoined enforcement of the January 2004 Amendments, the City passed additional amendments to the pertinent ordinances regulating "adult entertainment businesses," which are identified in this litigation as the December 2004 Amendments. The December 2004 Amendments expressly superseded the January 2004 Amendments. Doctor John's amended its Complaint to challenge the constitutionality of the December 2004 Amendments, as well as the October 2003 "Moratorium" Amendment and the January 2004 Amendments.

### B. Prior Proceedings

Some ten months after the court's preliminary injunction ruling, on December 20, 2004, Doctor John's filed a Motion For Partial Summary Judgment on the constitutional invalidity of the January 2004 Amendments. On February 22, 2005, the City filed its own Motion For Summary Judgment asserting that challenges to the January 2004 Amendments were "mooted" by enactment of the December 2004 Amendments. In the alternative, the City argued that Doctor John's would have been a "sex shop" under the "sex toys" definitions in the January 2004 Amendments, which did not implicate First Amendment protections, and that the "combination" provision of the January 2004 Amendments involving "adult media" was constitutional under the applicable level of scrutiny for regulation of expression, which the City contended was "intermediate scrutiny." Thus,

the City asserted that Doctor John's could have been lawfully excluded from its chosen location under those provisions.

In a lengthy ruling on those motions, which the court filed on September 28, 2005, *Doctor John's, Inc. v. City of Sioux City, Iowa*, 389 F. Supp. 2d 1096 (N.D. Iowa 2005) (*Doctor John's II*), the court granted in part and denied in part the motion by Doctor John's, expressly finding and declaring the "combination" definition of a "sex shop" in the January 2004 Amendments unconstitutional under the First Amendment, as a matter of law, to the extent that it defined a "sex shop" on the basis of a "combination" of two or more categories of items including "adult media," and permanently enjoining the City from pursuing, instituting, continuing, or completing any and all enforcement actions or otherwise barring business activities of any business on the basis of the definition of a "sex shop" in the January 2004 Amendments to the extent that the definition of a "sex shop" is based on the "combination" of any two or more categories of items including "adult media." The court also denied in its entirety the City's motion. Finally, the court directed that, to the extent that provisions of the court's February 26, 2004, preliminary injunction had not been made permanent by its ruling, that preliminary injunction would continue in full force and effect.

A second round of summary judgment motions commenced with a Second Motion For Summary Judgment filed by Doctor John's on August 22, 2005, but that motion was held in abeyance pending discovery. Upon completion of discovery, Doctor John's filed its January 12, 2006, Motion To Bifurcate Damages, and on April 12, 2006, the City filed a Motion To Reconsider Memorandum Opinion And Order Regarding Cross-Motions For Summary Judgment On October 2003 And January 2004 Ordinances, as well as a Second Motion For Summary Judgment Re:  Non-Media Portions Of Ordinance 2004-0004 And Constitutionality Of Ordinance 2004-1061.  In a Memorandum Opinion And Order, filed

July 21, 2006, regarding the parties' second round of summary judgment motions, the court granted the Second Motion For Summary Judgment filed by Doctor John's by finding and declaring that the "sexual device shop" definition in the December 2004 Amendments is unconstitutional and that any enforcement of that provision is permanently enjoined. The court denied the City's Motion To Reconsider, but granted in part and denied in part the City's Second Motion For Summary Judgment.  Specifically, the court denied the part of the City's summary judgment motion seeking summary judgment on the constitutionality of non-media portions of the January 2004 Amendments, denied the part of the City's summary judgment motion seeking summary judgment on the constitutionality of the December 2004 Amendments pertaining to the "adult bookstore or adult video store" provisions and the "sexual device shop" provisions, but granted the City's summary judgment motion as to the "civil disability" provision of the December 2004 Amendments, finding and declaring that the "civil disability" provision of the December 2004 Amendments is both constitutional and currently applicable to Doctor John's.  However, the court reserved for trial questions concerning the "constitutionality" and "applicability" of the "adult bookstore or adult video store" provisions of the December 2004 Amendments.

In the portion of that ruling that is, perhaps, of greatest immediate interest here, the court set a bench trial on the remaining "constitutionality" issues for September 11, 2006, and a jury trial on "damages" issues for January 22, 2007.  By orders dated August 17, 2006 (docket nos. 142 & 143), the bench trial on "constitutionality" issues was rescheduled to begin on January 22, 2007, and the jury trial on "damages" issues was rescheduled to begin on March 5, 2007.

Some months after apparently acquiescing to this bifurcation of proceedings, the City filed on October 10, 2006, a Motion To Preserve Right Of Trial By Jury (docket no.

143). In its motion, the City seeks an order preserving the City's right to a jury trial on all issues that bear on the City's potential liability in this action, including "constitutionality" of the parts of the January 2004 Amendments to the City's ordinances defining and regulating "adult entertainment businesses," which is an issue currently set for bench trial on January 22, 2007. Plaintiff Doctor John's resisted the motion on October 23, 2006 (docket no. 145), and the City filed a reply in further support of its motion on October 30, 2006 (docket no. 146). The City's motion is now fully submitted.

## C. Arguments Of The Parties

In support of its motion to preserve its jury trial rights, the City argues that it timely demanded a jury trial pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure on any issues that are by rights triable by a jury. Thus, the City contends that it is entitled to a jury trial on any issues amenable to determination by a jury, even though this action also involves some issues that may not be triable by a jury. The City argues, further, that the Seventh Amendment guarantees its right to a jury trial on the § 1983 claims asserted by Doctor John's. The City argues that, in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999), the United States Supreme Court concluded that a § 1983 action for damages for a constitutional violation sought a "legal remedy" that was properly triable to a jury. The City contends that this is such an action, because Doctor John's seeks damages arising from an alleged constitutional violation, and this court has determined that various genuine issues of material fact must be resolved to determine the appropriate level of constitutional scrutiny to be afforded to the ordinances in question. Determination of those fact questions, the City contends, will determine whether or not it is liable for damages, and as such, those questions are for the jury.

In its response, Doctor John's argues that the City's motion is an untimely motion to reconsider the order bifurcating proceedings into a bench trial on "constitutionality" issues and a jury trial on "damages" issues. Doctor John's also argues that the issues reserved by the court for a bench trial are, in any event, constitutional and equitable issues, including prayers for declaratory and injunctive relief, that are not properly triable to a jury. Doctor John's contends that the City is attempting to blur the clear lines between issues triable to a jury and issues triable to the court in an attempt to obtain a factfinder who will agree with the City's contention that all "adult" businesses are bad for the community. Doctor John's contends, however, that this is primarily a "judicial review" action concerning the constitutionality of the ordinances in question, which has little in common with a claim for damages that is triable to a jury. Doctor John's also argues that the court must determine the ultimate standards with which Doctor John's must comply to qualify for a business license to operate in the City, and that those standards are also a question for the court. Thus, Doctor John's contends that the court has done no more than reserve for bench trial issues that are properly the province of the court to decide.

In reply, the City contends that the untimeliness argument asserted by Doctor John's relies on Rule 59, which is not applicable to an order that is not a final judgment. The City also argues that Doctor John's has side-stepped or ignored its argument and analysis based on *City of Monterey*. In the City's view, the "liability" issues in this case *are* the "constitutional" issues, because the City will only be liable in this case if its ordinances are unconstitutional. The City reiterates that this court has recognized that there are genuine issues of material fact concerning the applicable level of scrutiny. Thus, the City reiterates its assertion that, under *City of Monterey*, those issues of fact are triable to a jury.

## II. LEGAL ANALYSIS

### A. The City's Assertion Of A Right To Jury Trial

There is no dispute here that the City timely demanded a jury trial pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 38 (echoing the Seventh Amendment requirement to "preserve" the right to trial by jury and providing that "[a]ny party may demand a trial by jury of any issue triable of right by a jury"); FED. R. CIV. P. 39 (where a jury has been demanded pursuant to Rule 38, "[t]he trial of all issues so demanded shall be by jury," unless the parties stipulate to a trial to the court or the court finds that "a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States"). Thus, the City has properly invoked its right to a jury trial. The questions are whether the City timely reiterated its demand for a jury trial after the court ordered a bench trial on certain issues, and whether a jury trial is required on any, all, or only some of the issues in this case.

### B. Timeliness Of The Motion To Preserve Right To Jury Trial

Doctor John's asserts that the City's motion to preserve its right to a jury trial is untimely, because the City waited several months after the court ordered a bench trial to file its motion. Doctor John's argues that the City's motion is really a motion to reconsider under Rule 54 of the Federal Rules of Civil Procedure, but such a motion to reconsider, Doctor John's argues, is at least "guided by" Rule 59(e), which imposes a ten-day time limit on motions to alter or amend judgment. Doctor John's contends that filing a motion to reconsider months after the ruling in question is not "timely" within the requirements of Rule 59(e), and should not be timely under Rule 54. The City, however, contends that the ten-day time limit in Rule 59(e) clearly is not applicable here, because

the challenged ruling to bifurcate proceedings for a bench trial of "constitutionality" issues and a jury trial of "damages" issues is not a final judgment.

As the court noted in its ruling on the second round of summary judgment motions in this case, which included the City's motion to reconsider parts of the court's ruling on the first round of summary judgment motions, this court has previously found that Rule 54(b) provides authority for a court to reconsider any interlocutory order, including a prior ruling on a motion for summary judgment. *Wells' Dairy, Inc. v. Travelers Indemnity Company of Illinois*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004) (citing cases). Rule 54(b) provides that, unless the court certifies the order for interlocutory appeal, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b) (emphasis added). This court also noted, "The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be [applicable to] a motion under Federal Rule of Civil Procedure 59(e), which is in turn less exacting than the standards enunciated in Federal Rule of Civil Procedure 60(b)." *Wells' Dairy, Inc.*, 336 F. Supp. 2d at 909. Moreover, this court has repeatedly held that it has the inherent power to reconsider and revise any interlocutory order, such as a summary judgment ruling, up until the time that a final judgment is entered. *Id.* (citing *Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 317 F. Supp. 2d 896, 903 ( N.D. Iowa 2004); *Helm Financial Corp. v. Iowa N. Ry. Co.*, 214 F. Supp. 2d 934, 999 (N.D. Iowa 2002); and *Longstreth v. Copple*, 189 F.R.D. 401, 403 (N.D. Iowa 1999)).

This court has also recognized that the standards for reconsideration of interlocutory orders may be less "exacting" than the standards for reconsideration of final orders under Rules 59(e) and 60(b), but this court has nevertheless held that it should look to the general principles under those rules for guidance. *Id.* (citing *Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D. W.Va. 1998)). Under Rule 59(e), a judgment may be amended to correct "clearly" or "manifestly" erroneous findings of fact or conclusions of law. *See, e.g., Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988); *Baker v. John Morrell & Co.*, 266 F. Supp. 2d 909, 919 (N.D. Iowa 2003). It is this standard that the court finds is applicable to a motion to reconsider under Rule 54(b). The court has never suggested, however, that the principles of Rule 59(e) and 60(b) that should guide the court on a Rule 54(b) motion to reconsider include the specific timeliness requirements in Rule 59(e). Indeed, to incorporate the timeliness requirements of Rule 59(e) into Rule 54(b) would be contrary to the plain language of Rule 54(b), which expressly states that "the order or other form of decision *is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b) (emphasis added).

Because the City has raised the question of whether certain issues should be tried to the jury or the court sufficiently in advance of the bench trial to permit reasoned and informed opposition and reasoned and informed adjudication of the matter, the court finds that the City's motion is timely. Nor does the court find that the City's apparent acquiescence in trial of certain matters to the bench at the conclusion of the oral arguments on the second round of summary judgment motions amounts to a waiver of the City's right to reiterate its demand for jury trial on any or all issues. Rather, the court suggested such a procedure at the oral arguments, without prior notice to the parties that the court was considering such a procedure should the court decide that genuine issues of material fact

remained on "constitutionality" issues. Moreover, the manner in which the court bifurcated the proceedings was not precisely that proposed by Doctor John's in its motion to bifurcate, but the City had opposed any bifurcation of the proceedings.

Thus, the court finds that the City's motion to preserve its right to trial by jury on all issues on which the Seventh Amendment guarantees such a right is properly before the court.

### C. The Scope Of The Seventh Amendment Right To Jury Trial

In support of its motion for preservation of its Seventh Amendment right to jury trial, the City principally relies on *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999). This court agrees that the decision in *City of Monterey* is central to the disposition of the questions presented in the City's motion. Therefore, the court will examine that decision in some detail.

#### 1. The Supreme Court's decision in City of Monterey

In *City of Monterey*, a land developer brought an action pursuant to 42 U.S.C. § 1983 against a city asserting that the city's series of repeated rejections of proposals to develop the property in question, each time imposing more rigorous demands on the developer, violated substantive due process and equal protection and constituted a regulatory taking without paying compensation. *City of Monterey*, 526 U.S. at 694 & 699. "[T]he District Court determined, over the city's objections, to submit [the developer's] takings and equal protection claims to a jury but to reserve the substantive due process claim for decision by the court." *Id.* at 699. The city's liability on the takings claim, as submitted to the jury, turned on whether the developer had been denied all economically viable use of the property and whether the city's denial of the developer's proposals failed to substantially advance legitimate public interests. *Id.* at 701 & 704. As to the question

12

of whether the denials substantially advanced legitimate public interests, "the jury was not given free rein to second-guess the city's land-use policies," but was, instead, "instructed, in unmistakable terms, that the various purposes asserted by the city were legitimate public interests." *Id.* at 706. "The jury delivered a general verdict for [the developer] on its takings claim, a separate verdict for [the developer] on its equal protection claim, and a damages award of $1.45 million." *Id.* at 701. The city claimed that the regulatory takings claim should not have been decided by the jury. *Id.* at 694. Thus, the Supreme Court considered whether it was proper for the district court to submit to a jury the question of the liability of the city on the developer's regulatory takings claim. *Id.* at 707.

The Court concluded that the question *ante* to consideration of whether or not the Seventh Amendment required trial by jury was to "'"ascertain whether a construction of the statute [on which the claim was based] is fairly possible by which the [constitutional] question may be avoided."'" *Id.* (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998), in turn quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)). Thus, in *City of Monterey*, as in this case, the first question was whether or not 42 U.S.C. § 1983 confers a right to trial by jury. The Supreme Court concluded that § 1983 does not confer such a right. *Id.*

Thus, in the absence of a statutory right to trial by jury, the Court turned to the question of whether or not the Seventh Amendment guaranteed a right of trial by jury on the § 1983 claim at issue in that case. *Id.* at 708. The Seventh Amendment to the United States Constitution provides as follows:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. AMEND. VII.  In *City of Monterey*, the Supreme Court pursued a two-prong inquiry to determine when the Seventh Amendment requires a jury trial:

> Consistent with the textual mandate that the jury right be preserved, our interpretation of the Amendment has been guided by historical analysis comprising two principal inquiries. "[W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). "If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Ibid*.

*City of Monterey*, 526 U.S. at 708.  The Court's explanation and application of this two-prong inquiry requires careful examination here.

As to the first inquiry, the Court concluded that the Seventh Amendment applies not only to common-law causes of action, but also to statutory causes of action "'"analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."'"  *Id.* at 708-09 (quoting *Feltner*, 523 U.S. at 348, in turn quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).  The Court held "that a § 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment."  *Id.* at 709.  To reach that conclusion, the Court accepted as "settled law" the proposition that "the Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to 'soun[d] basically in tort,' and seek legal relief."  *Id.* at 709 (quoting *Curtis v. Loether*, 415 U.S. 189, 195-96 (1974)).  The Court reasoned, further, that claims brought pursuant to § 1983 "sound in tort" and "that a suit for legal relief brought under the statute is an action at law."  *Id.* at 709-10.  The Court found,

further, that the developer in the case before it sought legal relief, because the constitutional injury in question was not that property was taken, but that it was taken without just compensation, so that the developer was not seeking just compensation *per se*, but "damages for the unconstitutional denial of such compensation." *Id.* at 710. "Damages for a constitutional violation," the Court concluded, "are a legal remedy." *Id.* In the alternative, the Court concluded that, even viewed as a suit for just compensation, the developer's action sought essentially legal relief, because it sought monetary relief, which is "legal" relief. *Id.* In short, as to the first inquiry, the Court held that, "[b]ecause [the developer's] statutory suit sounded in tort and sought legal relief, it was an action at law." *Id.* at 711. Thus, the Court concluded that the first prong of the Seventh Amendment inquiry was satisfied.

Turning to the second inquiry to determine whether the Seventh Amendment requires trial by jury, the Court focused on whether the particular issues were proper for determination by the jury. *Id.* at 718. Such a focus was required, because "[i]n actions at law, issues that are proper for the jury must be submitted to it 'to preserve the right to a jury's resolution of the ultimate dispute,' as guaranteed by the Seventh Amendment." *Id.* (quoting *Markman*, 517 U.S. at 377). The Court instructed that courts must determine whether issues are proper for the jury, when possible, "'by using the historical method, much as [courts] do in characterizing the suits and actions within which [the issues] arise.'" *Id.* (quoting *Markman*, 517 U.S. at 378). Despite the lack of an exact historical analogue, the Court observed that "in suits sounding in tort for money damages, questions of liability were decided by the jury, rather than the judge, in most cases." *Id.* Moreover, the Court noted that "[i]n actions at law predominantly factual issues are in most cases allocated to the jury." *Id.* at 720.

In the case before it, the Court held "that the issue whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question" that "is for the jury." *Id.* 720-21. In contrast, the Court found that "[t]he jury's role in determining whether a land-use decision substantially advances legitimate public interests within the meaning of [the Court's] regulatory takings doctrine presents a more difficult question." *Id.* at 721. Although that question had a factual component, the court found that it was best understood as a mixed question of fact and law. *Id.* In the case before it, the Court found that the question submitted to the jury was properly narrow and fact-bound: "[W]hether, when viewed in light of the context and protracted history of the development application process, the city's decision to reject a particular development plan bore a reasonable relationship to its proffered justifications." *Id.*

The Court specifically limited its holding in several respects. One such limitation, pertinent for present purposes, was the following:

> [The developer] did not bring a broad challenge to the constitutionality of the city's general land-use ordinances or policies, and our holding does not extend to a challenge of that sort. In such a context, the determination whether the statutory purposes were legitimate, or whether the purposes, though legitimate, were furthered by the law or general policy, might well fall within the province of the judge.

*City of Monterey*, 526 U.S. at 722. In contrast to this situation, the Court summarized why the issues involved in the case before it were properly submitted to the jury:

> [T]o the extent [the developer's] challenge was premised on unreasonable governmental action, the theory argued and tried to the jury was that the city's denial of the final development permit was inconsistent not only with the city's general ordinances and policies but even with the shifting ad hoc restrictions previously imposed by the city. [The developer's] argument, in short, was not that the city had followed its zoning ordinances and policies but rather that it had not done

so.  As is often true in § 1983 actions, the disputed questions
were whether the government had denied a constitutional right
in acting outside the bounds of its authority, and, if so, the
extent of any resulting damages.  These were questions for the
jury.

*Id.*

### 2.  *Analysis under* **City of Monterey**

Contrary to the City's contentions, this court concludes that none of the issues that

the court has reserved for bench trial are issues on which the Seventh Amendment requires

a jury trial under the test set forth in *City of Monterey*.  This court has considerable doubt

that the first prong of the *City of Monterey* test is satisfied here, but even assuming that the

first prong is satisfied, the second is not.

### a.  *First prong of the Seventh Amendment inquiry*

As to the first prong of the Seventh Amendment inquiry, whether the cause of action

is or is analogous to one that was tried to a jury as an action at law under the common law,

the City is correct that the Supreme Court concluded in *City of Monterey* that claims

pursuant to § 1983 "sound in tort."  *Id*. at 709.  That is not the end of the inquiry,

however, because the Court made clear that the question is whether a § 1983 claim that

"sounds in tort" is *also* a "suit for legal relief."  *Id*. at 709-10 (claims brought pursuant

to § 1983 "sound in tort" and "*a suit for legal relief* brought under the statute is an action

at law") (emphasis added).  In this case, Doctor John's does seek monetary damages for

a constitutional violation, specifically, monetary damages for the unconstitutional delay in

the opening of its business, and monetary damages are "a legal remedy" on which trial by

jury is ordinarily required.  *See id*. at 710 ("Damages for a constitutional violation are a

legal remedy" on which jury trial is required).  The City argues that, like the developer's

suit in *City of Monterey*, because Doctor John's suit "sounds in tort" and seeks legal relief,

monetary damages, it is an "action at law," and the *City of Monterey* test is satisfied. *Id.* at 711.

In this case, however, Doctor John's *also* seeks declaratory and injunctive relief, and neither the City nor this court has identified any precedents suggesting that such equitable claims are or are analogous to "common-law cause[s] of action ordinarily decided by English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* at 708-09 (internal quotation marks and citations omitted). It is clear under *City of Monterey* that a suit seeking *only* such equitable relief would not fall within the scope of the Seventh Amendment right to trial by jury. *See id.* at 719 (finding that "[i]t is settled law that the Seventh Amendment does not apply" in certain contexts, including "suits seeking only injunctive relief" or "suits seeking only equitable relief"). Moreover, if the only claim asserted by Doctor John's was its "substantive due process" claim or "a broad challenge to the constitutionality of the [C]ity's . . . ordinances," it would be clear that the Supreme Court's holding concerning the right to jury trial "does not extend" to such a case, and that the determination of whether the purposes of the ordinances were legitimate or whether the purposes, though legitimate, were furthered by the ordinances, "might well fall within the province of the judge." *See id.* at 722. Moreover, the claim for damages that Doctor John's asserts in this case is really only incidental to the principal claim it asserts and the principal relief it seeks, which are, respectively, a broad challenge to the constitutionality of the ordinances and a prayer for declaratory and injunctive relief to prohibit enforcement of unconstitutional ordinances. *Id.* (noting that the Court was not addressing the question of the allocation of the various questions to the court or the jury that might arise where the "gravamen" of the claim is that the regulation is unreasonable as applied to the plaintiff).

Thus, the court has considerable doubt that the first prong of the *City of Monterey* inquiry dictates trial by jury in this case. Assuming, for the sake of argument, that the first prong is satisfied here, the court turns to consideration of the second prong.

### b.      Second prong of the Seventh Amendment inquiry

The second inquiry under *City of Monterey* to determine the applicability of the Seventh Amendment "ask[s] whether *the particular trial decision* must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Id.* at 708 (emphasis added). As this second prong is framed, *City of Monterey* clearly contemplates that *some* issues may still be triable to the court, even in the context of a § 1983 case that seeks monetary damages as one kind of relief. Indeed, in *City of Monterey*, the Court gave separate consideration to whether the issues of whether a landowner had been deprived of all economically viable use of his property and whether the land-use decision in question substantially advanced legitimate public interests within the meaning of the regulatory takings doctrine were suitable for jury determination. *See id.* at 526 U.S. at 720-21. This reading of *City of Monterey* as permitting *some* issues to be triable to the court, while others must be tried to a jury, is also consistent with Rule 39(a) of the Federal Rules of Civil Procedure, which provides that, even where demanded, jury trial may be denied *on some issues* if "the court upon motion or of its own initiate finds that a right of trial by jury *of some or all of those issues* does not exist under the Constitution or statutes of the United States." FED. R. CIV. P. 39(a) (emphasis added); *see also City of Monterey*, 526 U.S. at 733 (Souter, J., concurring in part and dissenting in part) ("A federal court commits error by submitting *an issue* to a jury over objection, unless the party seeking the jury determination has a right to a jury trial *on the issue*. Fed. Rule Civ. Proc. 39(a)(2).") (emphasis added).

As in *City of Monterey*, whether the "applicability" and "damages" questions that the court has already preserved for jury determination are, indeed, issues that "must fall to the jury in order to preserve the substance of" the City's Seventh Amendment right to jury trial is clear. *Id.* at 720-21. Like the question of whether the landowner had been deprived of all economically viable use of his property, these questions are "predominantly factual question[s]" to the extent that they are determinative of purely legal relief. *Id.*

The role of the jury, if any, in determining the "constitutionality" question that the court has currently reserved for bench trial is, however, a more difficult question. *Id.* at 721 (finding that the role of the jury in determining whether land-use decisions substantially advanced legitimate public interests was "a more difficult question" than the role of the jury in determining whether the landowner had been deprived of all economically viable use of land). Like the "more difficult question" in *City of Monterey*, the "constitutionality" of the ordinances in question is "best understood as a mixed question of fact and law," *id.* at 721, because, as the City contends, that question does depend, at least in part, on the factual determination of the motivation of the City in passing the ordinances, *i.e.*, whether the ordinances were "content based" or "content neutral," which, in turn, depends in part upon the factual circumstances and the credibility of the City's contentions concerning its motivations. Nevertheless, the court concludes that the "constitutionality" questions that the court has reserved for bench trial in this case are *not* "particular trial decisions [that] must fall to the jury in order preserve the substance of" the City's Seventh Amendment right to jury trial. *See City of Monterey*, 526 U.S. at 708 (so framing the second inquiry). Rather, they are the sort of "broad challenge to the constitutionality of the [C]ity's [adult entertainment business] ordinances," including a "substantive due process" challenge, to which the holding in *City of Monterey* "does not extend." *Id.* at 722. Indeed, in *City of Monterey*, Justice Souter, writing for three other

20

justices, concurring in part and dissenting in part, observed, without challenge from the majority, that "[s]ubstantive due process claims are, of course, routinely reserved without question for the court." *Id.* at 753 (Souter, J., concurring in part and dissenting in part). *City of Monterey*, itself, involved trial of a "substantive due process" claim to the court; only submission to the jury of the issues that determined liability for damages was challenged. *Id.* at 699 (majority opinion) ("On remand, the District Court determined, over the city's objections, to submit [the developer's] takings and equal protection claims to a jury but to reserve the substantive due process claim for decision by the court.").

Consequently, this court concludes that, even though jury trial is required on what the court has defined as "applicability" and "damages" issues, trial decisions on "constitutionality" issues involving the substantive due process claim, are *not* "particular trial decision[s] [that] must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791," *id.* at 708 (emphasis added), and as such, those issues are properly within the province of the court.

Nevertheless, the City argues that the "constitutionality" issues that the court has set for bench trial are, in the context of this case, triable to the jury, because those "constitutionality" issues *are* the "liability" issues that will determine whether or not Doctor John's can recover damages. The City apparently reads *City of Monterey* for the broad proposition that "liability" issues—or, at least, "liability" issues that are primarily factual—must be decided by a jury. This court does not read *City of Monterey* to stand for such a broad proposition, however. Instead, in *City of Monterey*, the Court recognized that, at common law, "in suits sounding in tort for money damages, questions of liability were decided by the jury, rather than the judge, in most cases." *Id.* at 718. The Court also noted, however, that "liability" for injunctive relief in regulatory takings cases did not fall under the Seventh Amendment right to jury trial. *Id.* at 719. The Court did note the

"essentially factual component" or mixed factual and legal components of the "liability" questions submitted to the jury in that case for determination of "legal" relief, and concluded that, *under those circumstances*, it was proper to submit "narrow, fact-bound question[s] to the jury" concerning whether the developer had been deprived of all economically viable use of its property and whether, when viewed in light of the context and protracted history of the development application process, the city's decision to reject a particular development plan bore a reasonable relationship to its proffered justifications. *Id.* at 721. Again, the "constitutionality" of ordinances and policies was not at issue in *City of Monterey*, because, to the extent that the developer premised its challenge on unreasonable governmental action, "the theory argued to the jury was that the city's denial of the final development permit was inconsistent not only with the city's general ordinances and policies but even with the shifting ad hoc restrictions previously imposed by the city," and in short, that the city *had not* followed its ordinances and policies, not that it *had*. *Id.* at 722. In that limited context, "liability" questions that were "essentially factual" were appropriate for jury determination.

The present case is entirely different, because Doctor John's *does* make a broad challenge to the constitutionality of the ordinances. *See id.* at 721 (such a challenge falls outside the scope of the Court's Seventh Amendment holding). Even to the extent that this challenge is fact-driven, involving, for example, the motivation of the City in enacting the ordinances in question (*i.e.*, whether they were "content neutral" or "content based"), and the credibility of the City's representatives on that issue, those determinations fall within the context of a substantive due process challenge that, "of course, [is] routinely reserved without question for the court." *Id.* at 753 (Souter, J., concurring in part and dissenting in part); *see also id.* at 722 (majority opinion) (in the context of a "broad challenge to the constitutionality" of city ordinances, "determination whether the statutory purposes were

legitimate, or whether the purposes, though legitimate, were furthered by the law or general policy, might well fall within the province of the judge"). Thus, even to the extent that the "constitutionality" questions here are the "liability" questions to determine the City's liability for damages, those "constitutionality" questions are not proper for jury determination.

Finally, the City contends that it will only be liable in this case if its ordinances are unconstitutional. The City is correct that it will be liable for damages if the ordinances in question are determined to be "unconstitutional," but the City will *also* be liable for damages, if the ordinances are "constitutional," but were "inapplicable" to Doctor John's, for example, because Doctor John's would have complied with a constitutional ordinance, yet was denied a permit, or because the City improperly determined that Doctor John's exceeded constitutional thresholds for "adult" products based on incorrect counts of the inventory of the Doctor John's store. While the latter "liability" questions, those dependent upon "applicability," are appropriate for jury determination, the "liability" questions based on the "constitutionality" of the ordinances are for the court. Similarly, the amount of damages that should be awarded to Doctor John's if the ordinances are found to be unconstitutional by the court, or if the ordinances are found to be "inapplicable" by the jury, are for a jury to decide.

### III.  CONCLUSION

The court concludes that submission of "constitutionality" issues to the court, and only "applicability" and "damages" issues to the jury, is actually consistent with, not contrary to, the parties' Seventh Amendment rights to jury trial, as defined by the two-prong inquiry in *City of Monterey*.

THEREFORE, the City's October 10, 2006, Motion To Preserve Right Of Trial By Jury (docket no. 143) is **denied**. The court will determine "constitutionality" issues that fall within its province, but consistent with the parties' Seventh Amendment rights to jury trial, the court has preserved for jury determination "applicability" and "damages" issues.

**IT IS SO ORDERED.**

**DATED** this 20th day of December, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA