# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| DOCTOR JOHN'S, INC., an Iowa corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF SIOUX CITY, IOWA,<br><br>        Defendant. | No. C03-4121-MWB<br><br>**ORDER ON PENDING MOTIONS** |

The following four matters have been filed, and are pending before the court: the plaintiff's motion in limine **(Doc. No. 150)**; the defendant's motion in limine to exclude certain of the plaintiff's exhibits and witnesses from trial **(Doc. No. 154)**; the plaintiff's objections to appearance of counsel on behalf of the defendant **(Doc. No. 155)**; and the plaintiff's motion in limine regarding certain of the defendant's witnesses and exhibits **(Doc. No. 156)**. The motions all are resisted.

The motions came on for hearing before the undersigned on December 29, 2006. Brian Vakulskas and Andrew McCullough appeared on behalf of the plaintiff. Jeff Wright, Scott Bergthold, and James Stuchell appeared on behalf of the defendant.

Judge Mark W. Bennett has summarized the facts giving rise to this case as follows:

> At some time in the fall of 2003, Doctor John's leased property with approximately 6,000 square feet of retail space located at 3507 Singing Hills Boulevard, Sioux City, Iowa, for one of its stores, its first such store in Iowa. The property leased by Doctor John's for its Sioux City store is in a relatively new and still developing commercial area across from a Wal-Mart, adjacent to a strip mall, a chiropractor's office, and a nail salon, and near various restaurants, bars, and motels, a new car dealership, a minor league baseball stadium, a park with little league or softball fields, a bowling alley, and

an ice-skating rink. The store is located in an area zoned as General Business-Commercial Planned Development ("BG-C") under the Sioux City Municipal Code. That is, it is in a General Business ("BG") zone, with a Commercial Planned Development Overlay ("-C").

As in its stores in other states, Doctor John's intended to sell at its Sioux City store a variety of merchandise, including primarily lingerie, swim wear, women's shoes, lotions, and oils, as well as videos (both "adult" and otherwise), games, novelty items, and "marital aids" or "adult toys," including, for example, vibrators, "dildos," "masturbation toys," and blow up dolls (some described as "anatomically correct"). Doctor John's has maintained throughout this litigation that its stores, in Sioux City and elsewhere, sell a variety of products designed to appeal to couples who wish to enhance their love lives. Consequently, Doctor John's has opined that it is more properly described as a "romance shop" than a "sex shop," and has asserted that, unlike what is typically identified as an "adult entertainment business," it caters primarily to women rather than to men. Nevertheless, Doctor John's has admitted that a majority of the customers of its Sioux City store have still been male, ranging from as high as 65% to as low as 53% of the store's customers, depending upon who is doing the counting and during what time frame.

Prior to setting up its store in Sioux City, Doctor John's representatives had some contact with the City Attorney concerning zoning requirements for the intended location of that store, in the course of which Doctor John's representatives indicated a willingness to adhere to (or to avoid application of) then-existing ordinances defining and limiting the location of "adult entertainment businesses" by modifying or limiting its inventory. Before Doctor John's could complete preparations to open its store in Sioux City, however, Sioux City's zoning requirements for "adult entertainment businesses" underwent significant amendment. . . . Those amendments prevented Doctor John's from opening its store at its chosen location. The amendments also prompted Doctor John's to file this lawsuit and to seek [a] preliminary injunction. . . . After

delays caused by the City's enforcement of its amended zoning ordinances, Doctor John's opened its Sioux City store in late February or early March 2004 pursuant to the court's preliminary injunction enjoining enforcement of the January 2004 Amendments.

The court has observed in its prior published rulings in this case that the Doctor John's store in Sioux City is in a handsome freestanding building with an interior display of swimsuits and lingerie that dominates the first impression of the store. This merchandise is presented very much in the same manner that it would be in most national brand name clothing stores, which have become ubiquitous at malls across urban and suburban America. Thus, the first impression of the store is a far cry from the first image that most people would likely have of an "adult book store" or "sex shop." There is nothing seedy about the neighborhood, store building, or store front. In fact, from a quick drive-by, one would likely assume that the business was a rather upscale retail store for women's clothing and accessories. There are no "adult" signs or banners proclaiming "peep shows," "live entertainment booths," "XXX movies," "live models," "adult massage," or any of the other tasteless come-ons all too familiar from adult entertainment stores that exist in virtually every American city of any size and which one may find scattered along interstates and highways even in rural America.

Minors are not admitted to any Doctor John's stores, because as a representative of Doctor John's testified at the preliminary injunction hearing, Doctor John's "d[oesn't] believe that children should be in a store that carries adult material." The parties do not dispute that Doctor John's has actually enforced the "no minors" rule at the Sioux City store.

*Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005, 1014-15 (N.D. Iowa 2006).

In ruling on cross-motions for summary judgment, Judge Bennett considered the constitutionality of a January 2004 amendment to Sioux City's zoning ordinances

governing adult entertainment businesses. Among other things, Ordinance 2004-004 redefined a "sex shop" as follows:

> "Sex Shop" means an establishment offering goods for sale or rent and that meets any of the following[] tests:
>
> (1) The establishment offers for sale items from any two of the following categories:
>
>     (i) adult media
>     (ii) lingerie, or
>     (iii) leather goods marketed or presented in a context to suggest their use for sadomasochistic practices;
>
> and the combination of such items constitutes more than 10 percent of its stock in trade or occupies more than 10 percent of its floor area.
>
> (2) More than 5 percent of its stock in trade consists of sexually oriented toys or novelties.
>
> (3) More than 5 percent of its gross public floor area is devoted to the display of sexually oriented toys or novelties.

*Doctor John's, Inc. v. City of Sioux City*, 389 F. Supp. 2d 1096, 1108-09 (N.D. Iowa 2005) (quoting Sioux City Municipal Ordinance 2004-0004). Judge Bennett held "the 'combination' definition of a 'sex shop' in [the above-quoted ordinance] was unconstitutional under the First Amendment, as a matter of law, to the extent that it defined a 'sex shop' on the basis of a 'combination' of two or more categories of items including 'adult media[.]'" *Id.*, 389 F. Supp. 2d at 1130.

In ruling on Doctor John's second motion for summary judgment, Judge Bennett considered the constitutionality of December 2004 amendments to the Sioux City Municipal Code, establishing licensing requirements and regulations for "adult oriented businesses" within in the City. Among other things, the amendments defined a "sexual device shop" as follows:

4

> "'Sexual Device Shop' means a commercial establishment that regularly features sexual devices. Nothing in this definition shall be construed to include any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services, nor shall this definition be construed to include commercial establishments which do not restrict access to any portion of their premises by reason of age."

*Doctor John's*, 438 F. Supp. 2d at 1050 (quoting Sioux City Municipal Ordinance 2004-1061). Judge Bennett held this definition of a "sexual device shop" was unconstitutional as a matter of law. *Id.*, 438 F. Supp. 2d at 1055. Judge Bennett also considered so-called "civil disability" provisions of the December 2004 amendments that would "bar certain persons and entities from obtaining licenses to operate 'sexually oriented businesses' based, *inter alia*, on the conviction of persons with an 'influential interest' in the business of 'specified criminal activity.'" *Id.*, 438 F. Supp. 2d at 1053. Judge Bennett held the "civil disability" provisions were "both constitutional and currently applicable to Doctor John's." *Id.*, 438 F. Supp. 2d at 1056.

Judge Bennett has scheduled a bench trial on remaining "constitutionality" issues for January 22, 2007, and a jury trial on "damages issues" for March 5, 2007.[1]

**DOCKET NUMBER 150**

In its first motion in limine, Doctor John's asks the court to determine whether the attorney-client privilege should be applied to testimony by City Attorney James Abshier and to certain documents listed on the defendant's privilege log; whether the privilege has been waived with respect to Mr. Abshier and the documents; and whether the enforcement of the privilege in this case would further a fraudulent scheme.

---

[1] See *Doctor John's, Inc. v. City of Sioux City*, ___ F. Supp. 2d ___, 2006 WL 3742174 (N.D. Iowa Dec. 20, 2006).

This motion is, at least in part, a motion to compel discovery on the "constitutionality" issues. Doctor John's is seeking discovery of documents listed on a privilege log produced by the City on or about January 7, 2006. The privilege log was produced in response to a document production request Doctor John's served on the City in November 2005.

The discovery deadline in this case expired January 31, 2006, nearly eleven months ago.[2] Local Rule 37.1.c provides, "Motions to compel must be filed as soon as practicable. In any event, except for good cause shown, motions to compel must be filed within 14 days after the discovery deadline." No good cause has been shown for the delay in the filing on this motion, and mislabeling the motion as a "motion in limine" does not excuse its untimeliness. Doctor John's should have filed a motion to compel more than a year ago, when it received the privilege log in November 2005.

At the hearing, Doctor John's explained its tardiness in seeking production of these documents by arguing it only became aware recently of the fact that the City's motives in passing new ordinances in 2004 was an issue in the case. The court does not accept this explanation. Doctor John's was well aware that the City's motives in passing these ordinances was a central issue in this case at least by the time Judge Bennett granted its request for a preliminary injunction on February 26, 2004. (*See* Doc. No. 36)

To the extent the motion seeks discovery of documents identified on the privilege log but not produced, the motion is **denied**.

Doctor John's also asks the court for a preliminary ruling on the extent to which City Attorney James Abshier can claim attorney-client privilege during his testimony at trial. (*See* Doc. No. 148.) Because Mr. Abshier will be testifying before the court and not before a jury, Judge Bennett will be in the best position to rule on any assertions of the

---

[2]The deadline for the completion of discovery on damages issues was extended to December 1, 2006. (*See* Doc. No. 136) The documents sought relate to the "unconstitutionality" issues rather than to damages.

privilege during Mr. Abshier's testimony. *See Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 635 (6th Cir. 2000) ("district courts conducting bench trials have substantial flexibility in admitting proffered . . . testimony at the front end, and then deciding for themselves during the course of trial whether the evidence . . . deserves to be credited") (citing *Ekotek Site PRP Comm. v. Self*, 1 F. Supp. 2d 1282, 1296 n.5 (D. Utah 1998) ("concluding that district courts presiding over bench trials can decide questions of admissibility and reliability after the proffered evidence is presented at trial")); 1 McCormick on Evidence § 60, *Admission and exclusion of evidence in trials without a jury*. This request also is **denied**. The parties are directed to file a trial brief on the issue raised in this request by **January 15, 2007**.

Doctor John's also asks the court to examine the materials identified on the City's privilege log and to interview Mr. Abshier *in camera*, and to "rule on what material Plaintiff may have access to in its attempts to show 'personal and political animus' as motivations for the Ordinances." In support of its request, Doctor John's cites *In re Grand Jury Subpoena as to C97-216*, 187 F.3d. 996 (8th Cir. 1999). In that case, the government subpoenaed the appellant's criminal defense attorney to testify and to produce evidence before a grand jury that was investigating the appellant's role in the disappearance of certain witnesses. The attorney moved to quash the subpoena on the basis of the attorney-client privilege. The government resisted the motion on the basis of the crime-fraud exception to the privilege. The district court found "the government had made a threshold showing to justify an in camera examination of the attorney to determine if the crime-fraud exception applied." *Id.*, 187 F.3d at 997 (citing *Untied States v. Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989), for the proposition that before the court will conduct such an *in camera* review, "'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that

7

the crime-fraud exception applies.'") The attorneys for the appellant and the government were excluded from the *in camera* examination, but the defense attorney's own counsel was allowed to be present.

The court does not find the case to be applicable in the present case, where there has been no adequate showing that the attorney-client privilege might be overcome by the crime-fraud exception or some other extraordinary exception to the privilege. Doctor John's has cited no other authority to the court in support of its request, and the court declines to engage in the requested exercise.

Thus, Doctor John's first motion in limine (Doc. No. 150) is **denied** in its entirety.

### DOCKET NUMBERS 154 AND 156

In its motion in limine (Doc. No. 154), the City asks the court to preclude Doctor John's from offering into evidence certain exhibits and from calling certain witnesses to testify at trial because they were not included in Doctor John's initial disclosures and the disclosures were never supplemented as required by Federal Rule of Civil Procedure 26(e). In its second motion in limine (Doc. No. 156), Doctor John's asks the court to preclude the City from offering into evidence certain exhibits and from calling certain witnesses to testify at trial because they were not timely disclosed to Doctor John's.

The court finds that any omission by Doctor John's in supplementing its initial disclosures was harmless, and has not prejudiced the City. The motion in limine is **denied**. However, to the extent not previously produced, Doctor John's is ordered to produce to the City copies of the exhibits listed on pages 2 and 3 of the City's brief in support of its motion (Doc. No. 154-2, pp. 2-3), with the exception of Exhibit 5, which Doctor John's withdrew at the hearing. The exhibits must be provided to the City by **January 3, 2007**.

8

In addition, the City is authorized to conduct discovery of the following witnesses, if desired, by **January 15, 2007**: Josh Henson, Biplop Chowdury, Tedd LaCroix, Jim Riewe, Melissa Moody, and Dolf Ivener. Doctor John's must agree to any reasonable proposal regarding discovery of any of these witnesses, including depositions (whether in person, by telephone, or by other means) or written discovery, at the City's discretion. The discovery deadline is continued to **January 15, 2007**, for the sole purpose of permitting the City to conduct these depositions.[3]

In its motion in limine, the City also asks the court to rule that certain of Doctor John's witnesses and exhibits are not relevant to the issues to be tried in this case, and certain of Doctor John's exhibits are inadmissable as hearsay or privileged. As noted above, as the sole trier of fact, Judge Bennett will be in the best position to rule on the admissibility of this evidence during the course of the trial.

In its motion in limine (Doc. No. 156), Doctor John's similarly asks the court to preclude the City from offering certain exhibits and calling certain witnesses to testify at trial, contending the witnesses and exhibits were not included in the City's initial disclosures or any supplement thereto. At the hearing, Doctor John's acknowledged that most of the exhibits in question have been provided. In any event, the court finds that any omission by the City in supplementing its initial disclosures was harmless, and has not prejudiced Doctor John's. By **January 3, 2007**, the City is directed to produce to Doctor John's copies of any exhibits listed on its witness list that have not been produced previously.

For the foregoing reasons, both motions in limine (Doc Nos. 154 and 156) are **denied**. To the extent either part is seeking fees and expenses in pursuing these motions, those requests also are denied.

---

[3] The parties are encouraged to agree promptly to any additional discovery that may become necessary as a result of the City's discovery of these witnesses, and to bring the matter to the court's attention immediately should such an agreement not be forthcoming.

**DOCKET NUMBER 155**

Doctor John's asks the court to consider whether to disqualify attorney Jeff W. Wright from representing the City in this action.[4] The request was made when Doctor John's learned that during the course of this lawsuit, an associate of Mr. Wright's, Thomas Plaza, represented Doctor John's in a worker's compensation matter. At the hearing, the parties agreed that the extent of Mr. Plaza's representation was limited,[5] and neither Mr. Plaza nor Mr. Wright had, in fact, learned of any financial or other confidential information from Doctor John's during the course of Mr. Plaza's representation.

The decision whether to grant or deny a motion to disqualify an attorney rests in the sound discretion of the court. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (citing *Harker v. Comm'r of Internal Rev.*, 82 F.3d 806, 808 (8th Cir. 1996)). Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny. *Midwest Motor Sports v. Arctic Sales, Inc.*, 347 F.3d 693, 700 (8th Cir. 2003) (also citing *Harker*, *supra*). "'Doubts should be resolved in favor of disqualification, *Griffen by Freeland v. East Prairie, Missouri Reorg. Sch. Dist. No. 2*, 945 F. Supp. 1251, 1253 (E.D. Mo. 1996) (Perry, J.), but it is the burden of the party arguing for disqualification to demonstrate clearly that 'continuing representation would be impermissible.' *Shade v. Great Lakes Dock & Dredge Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999)." *Goss Graphics Systems, Inc. v. Man Roland Druckmaschinein Aktiengesellschaft*, 2000 WL 34031492, at *4 (N.D. Iowa, May 25,

---

[4] At the hearing, Doctor John's clarified that it was not actually seeking the disqualification of Mr. Wright from representing the City in this case, but was simply bringing his potential conflict of interest to the court's attention.

[5] Mr. Plaza was retained by Doctor John's to file papers before the Iowa Industrial Commissioner to prevent the entry of a default judgment in the matter. Doctor John's provided Mr. Plaza with the paperwork filed to initiate the claim, and Mr. Plaza filed papers to prevent the entry of default. Doctor John's insurance carrier then retained other counsel, and Mr. Plaza withdrew his appearance.

2000) (Melloy, J.); *see also U.S. v. Johnson*, 131 F. Supp. 2d 1088, 1093-944 (8th Cir. 2001) (Bennett, J.)

In ruling on a motion to disqualify counsel, the court must look to both Iowa law and the ethical rules announced by the national legal profession. *Goss Graphics Systems*, *supra*, at *5 (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (8th Cir. 1992)). While local rules and state standards are relevant, motions to disqualify are substantive motions affecting the rights of the parties, and are to be determined applying standards developed under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (8th Cir. 1992).

Under Iowa law, "[i]n general, an attorney must be disqualified from representing a party against a former client if the two representations bear a 'substantial relationship' to each other." *Doe v. Perry Cmty. School Dist.*, 650 N.W.2d 594, 597 (Iowa 2002) (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters*, 603 N.W.2d 772, 777 (Iowa 1999)); *accord Sorci v. Iowa Dist. Ct. for Polk County*, 671 N.W.2d 482, 494 (Iowa 2003). Confidential disclosures, actual or presumed, necessitate disqualification of the attorney when the attorney represents an adverse interest in a related matter. Moreover, confidences imputed to the attorney are presumed to be shared among the partners and employees associated with the attorney at that time. *Goodlett v. The Paul Revere Life Ins. Co.*, 2000 WL 34027916, *4 (N.D. Iowa, Jan. 15, 2000) (Jarvey, J.)

The leading case in the Eighth Circuit on this subject is *State of Arkansas v. Dean Foods Products Co.*, 605 F.2d 380 (8th Cir. 1979) ("*Dean Foods*"), *overruled on other grounds*, *In Re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377 (8th Cir. 1980) (overruled on the issue of appealability of attorney disqualification orders). In *Dean Foods*, the court rejected any "bright line" rules, holding as follows:

> Disqualification of counsel, like other reaches for perfection, is tempered by a need to balance a variety of competing considerations and complex concepts. Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify

> in blind disregard of flagrant conflicts of interest. Between those ethical extremes lie less obvious influences on the interest of society in the orderly administration of justice, on the interest of clients in candid consultation and choice of counsel, and on the interest of the legal profession in its reputational soul. So too, the judicial effort to light a disqualification path is unlikely to result in an early formulation of rules universally applicable to the Canons of the Code of Professional Responsibility. Rigid rules can be sterile and lacking in universal application. At the same time, an "every case on its own facts" approach can be facile and unhelpful. Ethical experience is the key. Until more is gained, rigidity may be feasible at the far ends of the ethics spectrum, while flexibility governed by facts must reign in a gradually diminishing area between those extremes.

*Dean Foods*, 605 F.2d at 383; *accord Steele v. Lacey*, 1997 WL 138974, at *3 (D. Neb., Mar. 26, 1997).

Since *Dean Foods*, the law in the Eighth Circuit has not been clarified significantly. In *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461 (Fed. Cir. 1984), the Federal Circuit, applying Eighth Circuit law, held as follows

> The precise rule in disqualification applied in the Eighth Circuit . . . is not clear [footnote omitted], but we are satisfied that Circuit would not be less solicitous of client confidentiality than the general weight of authority which is that -- where a substantial relationship is found to exist between two adverse matters (and sides) in which the challenged attorney or his firm has participated and will participate -- there is a presumption (in the situation of a private lawyer's 'changing sides') that confidential disclosures passed to the challenged lawyer, but that presumption is rebuttable.

*Id. See Cook v. City of Columbia Heights*, 945 F. Supp. 183, 186-87 (D. Minn. 1996).

The Iowa Rules of Professional Conduct ("Iowa RPC") apply to the conduct of the legal profession in this court. *See* Local Rule 83.2.g.1.[6] The Iowa rules prohibit a lawyer who formerly represented a client in a matter from representing another person "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client," absent the former client's written consent. Iowa RPC 32:1.9. Further, when a lawyer acquired confidential information in the prior representation that is material to the current matter, the lawyer is prohibited from representing the current client or from using the confidential information to the former client's disadvantage. *Id.* These prohibitions apply equally to another lawyer who is a member of the same firm as the lawyer with the conflict. Iowa RPC 32:1.10. In *Harker v. Commissioner of Internal Revenue*, 82 F.3d 806 (8th Cir. 1996), the court held that where, as in Iowa, the ABA's *Model Rules of Professional Conduct* (the "Model Rules") have replaced the Model Code, the presumption that confidential disclosures passed to the challenged lawyer is rebuttable because the Model Rules do not incorporate the "appearance of impropriety" standard from Canon 9 of the Model Code. *Id.*, 82 F.3d at 808-09.

In the present case, there is no evidence to suggest the current matter is even remotely related to Mr. Plaza's prior representation of Doctor John's, or that Mr. Plaza acquired confidential information that could be used to Doctor John's disadvantage in this matter. The objection of Doctor John's to Mr. Wright's representation of the City is this matter is **overruled**.

---

[6] Local Rule 83.2.g.1 provides, in pertinent part, "The Iowa Rules of Professional Conduct, or any successor code adopted by the Iowa Supreme Court, govern all members of the bar of this court."

## CONCLUSION

Consistent with the above rulings, plaintiff's first motion in limine **(Doc. No. 150)** is **denied**; defendant's motion in limine **(Doc. No. 154)** is **denied**; plaintiff's objection to appearance of counsel on behalf of defendant **(Doc. No. 155)** is **overruled**; and the plaintiff's second motion in limine **(Doc. No. 156)** is **denied**.

Any party appealing this order must do so by **January 5, 2007**, and must, contemporaneously with the filing of the appeal, order a transcript of the hearing. The transcript must be ordered regardless of whether the party or its lawyer believes a transcript is necessary to argue the appeal.

**IT IS SO ORDERED.**

**DATED** this 2nd day of January, 2007.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT